1 VENABLE LLP
Douglas C. Emhoff (Cal. Bar No. 151049)
2 Jeffrey M. Tanzer (Cal. Bar No. 129437)
2049 Century Park East, Suite 2100
3 Los Angeles, California 90067
Telephone: (310) 229-9900
4 Facsimile: (310) 229-9901
E-mail: demhoff@venable.com
5 E-mail: jtanzer@venable.com

6 Attorneys for Defendant
Merck & Co., Inc.

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        FOR THE COUNTY OF LOS ANGELES

10 CARRIE SMITH, CORO PAXTON and          CASE NO.: BC374219
TOM PAXTON, NILDA STRANGE,
11 ELLEN MASSENGILL, PEGGY CREECH,
MARY BENTLEY, MARY FRIEDMAN,            **NOTICE TO SUPERIOR COURT AND**
12 ELLA LUZIER, ANGELINA GRBAC,           **TO PLAINTIFFS OF REMOVAL TO**
EILEEN RICHARDSON, ANN NELSON,          **FEDERAL COURT**
13 PATRICE BALLUM, MARY ANN
GUEMELATA, LAURETTA TEDFORD,
14 LEE ANN OLSON, MARGARET                [Assigned to the Hon. Ernest M. Hiroshige,
SCHUELLER, MARILYN RUBENZER,            Dept. 54]
15

16

17                Plaintiffs,

18 vs.

19 MERCK & CO., INC. and McKESSON
CORPORATION,
20

21                Defendants.

22

23

24        TO THE CLERK OF THE SUPERIOR COURT AND TO ALL PARTIES AND

25 THEIR ATTORNEYS OF RECORD:

26        PLEASE TAKE NOTICE that a Notice of Removal of this action was filed in the

27

28                                        1
                        NOTICE OF REMOVAL TO FEDERAL COURT

**EXHIBIT**

1

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

1  United States District Court for the Central District of California on July 18, 2007, Case

2  No. CV 07-4655 R (CWx).

3      A copy of the Notice of Removal and all other related documents are attached hereto

4  and are served herewith.

5  Dated: July 19, 2007

                            VENABLE LLP
                            DOUGLAS C. EMHOFF
                            JEFFREY M. TANZER

                            By: _____
                            Jeffrey M. Tanzer
                            Attorneys for Defendant
                            Merck & Co., Inc.

6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

**VENABLE LLP**
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

VENABLE LLP
Douglas C. Emhoff (Cal. Bar No. 151049)
Jeffrey M. Tanzer (Cal. Bar No. 129437)
2049 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 229-9900
Facsimile:   (310) 229-9901
E-mail: demhoff@venable.com
E-mail: jtanzer@venable.com

Attorneys for Defendant
Merck & Co., Inc.

CLERK, U.S. DISTRICT COURT

JUL 1 8 2007
3:22 AM

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

## UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

**CV 07 4655R(cwx)**

| | |
|---|---|
| CARRIE SMITH, CORO PAXTON and TOM PAXTON, NILDA STRANGE, ELLEN MASSENGILL, PEGGY CREECH, MARY BENTLEY, MARY FRIEDMAN, ELLA LUZIER, ANGELINA GRBAC, EILEEN RICHARDSON, ANN NELSON, PATRICE BALLUM, MARY ANN GUEMELATA, LAURETTA TEDFORD, LEE ANN OLSON, MARGARET SCHUELLER, MARILYN RUBENZER, <br><br> Plaintiffs, <br><br> vs. <br><br> MERCK & CO., INC. and McKESSON CORPORATION, <br><br> Defendants. | CASE NO.: <br><br> **DEFENDANT MERCK & CO., INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)** |

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

1

MERCK'S NOTICE OF REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant Merck & Co., Inc. ("Merck") hereby removes this action pursuant to 28 U.S.C. § 1441 from the Superior Court for the State of California for the County of Los Angeles to the United States District Court for the Central District of California, and respectfully states to the Court the following:

### The Fosamax MDL Litigation

1.    This action involves allegations regarding the prescription medication FOSAMAX®.[1]  On August 16, 2006, the Judicial Panel on Multidistrict Litigation ("MDL Panel") issued an order transferring 18 FOSAMAX® products liability cases to the United States District Court for the Southern District of New York (Keenan, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407. *In re Fosamax Products Liability Litigation*, MDL No. 1789.  Processes for quickly sending additional related cases to Judge Keenan have been set in place.  To date, the MDL Panel has issued 27 Conditional Transfer Orders, at least 71 cases involving FOSAMAX® have been transferred to MDL-1789, and there are a total of 176 cases pending in the MDL, including cases filed directly in the Southern District of New York.  Merck will seek the transfer of this action to MDL-1789, and will in the next week provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

2.    Six Fosamax actions have already been transferred from this District to the MDL.  In three of those cases, the Court stayed proceedings in this District while the

---

[1]    Merck notes here, and is providing notice to the Court pursuant to Local Rule 83-1.3 and 83-1.4, that six related cases have been transferred from this District to the Southern District of New York for consolidated pretrial proceedings. These cases, all of which were before Hon. Florence-Marie Cooper, are entitled *Karen Johnson v. Merck & Co., Inc.*, Case No. CV 06-5378 FMC (PJWx), *Edward A. Morris, et al. v. Merck & Co., Inc. et al.*, Case No. CV 06-5587 FMC (PJWx), *Anne E. Clayton v. Merck & Co., Inc., et al.*, Case No. CV 06-6398 FMC (PJWx), *Valiente v. Merck & Co., Inc., et al.*, Case No. CV 06-7027 FMC (PJWx), *Hammond v. Merck & Co., Inc.*, Case No. CV 06-7343 FMC (FFMx), and *Ferraro, et al. v. Merck & Co., et al.*, No. CV 06-7733 (FMC) (PJWx)  These cases also involve allegations regarding the prescription medication FOSAMAX® and will therefore call for the determination of the same or substantially related or similar questions of law and fact.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

1  MDL Panel decided whether to transfer the cases to the MDL Proceedings, and the

2  plaintiffs filed briefs before the MDL Panel opposing transfer. *See* Order filed 2/2/07 in

3  *Ferraro, et al. v. Merck & Co., et al.*, Case No. CV 06-7733 (FMC) (PJWx) (Exhibit 1

4  hereto); Order filed 12/7/06 in *Clayton v. Merck & Co., Inc., et al.*, Case No. CV 06-

5  6398 FMC (PJWx) (C.D. Cal.); Order filed 12/6/06 in *Morris, et al. v. Merck & Co.,*

6  *Inc., et al.*, Case No. CV 06-5587 FMC (PJWx) (C.D. Cal.); *see also* Order filed

7  6/14/2007 in *Demsky, et al., v. Merck & Co., Inc.*, Case No. CV 07-2839 FMC

8  (PJWx).[2]  In each case, the MDL Panel rejected the plaintiffs' objections to transfer to

9  the MDL proceedings, and all three cases have now been transferred. *See* Order of

10  4/19/2007 in *In re Fosamax Prods. Liab. Litig.*, No. 1789 (J.P.M.L.) (requiring transfer

11  of *Ferraro*) (Exhibit 2 hereto); Order of 2/15/2007 in *In re Fosamax Prods. Liab. Litig.*,

12  No. 1789 (J.P.M.L.) (requiring transfer of *Clayton* and *Morris*) (Exhibit 3 hereto).

13      3.    The other three Fosamax cases filed in or removed to this District and

14  transferred were *Karen Johnson v. Merck & Co., Inc.*, Case No. CV 06-5378 FMC

15  (PJWx) (C.D. Cal.), *Valiente v. Merck & Co., Inc., et al.*, Case No. CV 06-7027 FMC

16  (PJWx) (C.D. Cal.), and *Hammond v. Merck & Co., Inc.*, Case No. CV 06-7343 FMC

17  (FFMx) (C.D. Cal.).  Each of those cases has been transferred to the MDL proceedings

18  without objection.[3]

19

20

21

22  [2]  Because the stay orders filed in *Demsky, Ferraro, Clayton,* and *Morris* are identical in all
    material respects, only the *Ferraro* order has been attached as an exhibit.

23  [3]  In addition to the Fosamax cases that have already been transferred, six other cases
    removed by Merck are pending before Judge Cooper and have been stayed pending

24  transfer. *See Bujdoso, et al., v. Merck & Co., et al.*, Case No. CV 07-3490 (FMC) (PJWx);
    *Finch, et al., v. Merck & Co., et al.*, Case No. CV 07-3492 (FMC) (PJWx); *Horton, et al.,*

25  *v. Merck & Co., et al.*, Case No. CV 07-3493 (FMC) (PJWx); *Martin, et al., v. Merck &
    Co., et al.*, Case No. CV 07-3495 (FMC) (PJWx); *Smith, et al., v. Merck & Co., et al.*,

26  Case No. CV 07-3497 (FMC) (PJWx); and *Demsky, et al., v. Merck & Co., Inc.*, Case No.
    CV 07-2839 FMC (PJWx).  Merck anticipates that these actions will also be transferred to

27  the Fosamax MDL Proceedings.

28

## The Plaintiffs' Claims

4.      On or about July 13, 2007, Plaintiffs commenced this action entitled *Smith, et al. v. Merck & Co., Inc., et al.*, Case No.: BC374219, against Merck in the Superior Court of the State of California for the County of Los Angeles.

5.      For the reasons set forth in more detail below, this Court should assume jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this matter is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states, when the improperly joined, misjoined, and fraudulently joined parties are excluded.

6.      In this case, there are eighteen (18) distinct plaintiffs, whose claims are separate and distinct from one another and who are citizens of twelve (12) different jurisdictions, including Arizona, Arkansas, California, Georgia, Michigan, Minnesota, New York, North Carolina, Ohio, Texas, West Virginia, and Wisconsin. (Complaint ¶ 2).

7.      Merck is a resident of the State of New Jersey, as it is incorporated in the State of New Jersey and has its principal place of business there.  Upon information and belief, McKesson Corporation ("McKesson"), which is not a proper party to this case, is a Delaware corporation with its principal place of business in San Francisco, California.

8.      As more fully set forth below, this case is properly removed to this Court because Plaintiffs have fraudulently joined McKesson as a party to this case, in an effort to defeat this Court's proper jurisdiction.  There is complete diversity of citizenship between the proper parties and no defendant properly joined is a citizen of California.

## I.     MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

9.      Plaintiffs filed their Complaint in the Superior Court for the State of California for the County of Los Angeles on or about July 13, 2007.  Merck has not yet

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

4

been served in this case. Upon information and believe, McKesson also has not been served. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

10. No further proceedings have been had in this action.

11. Venue is proper in this Court because it is "the district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a). Therefore, this action is properly removed to the Central District of California pursuant to 28 U.S.C. § 84(c).

12. All properly joined and served defendants consent to this removal.[4]

13. No previous application has been made for the relief requested herein.

14. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders received by Merck, which include the Complaint, are attached hereto at Exhibit 4.

15. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and on McKesson and a copy is being filed with the Clerk of the Superior Court for the State of California for the County of Los Angeles.

## II.   REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

---

[4] It is well-settled that a co-defendant who is fraudulently joined need not consent to removal. *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) (fraudulently joined defendants need not consent to removal petition); *Hewitt v. City of Stanton*, 798 F.2d 1230, 1233 (9th Cir. 1986) (co-defendants who are fraudulently joined need not join in a removal); *See also Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) (same); *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983) (same).

MERCK'S NOTICE OF REMOVAL

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

A.     **The amount in controversy requirement is satisfied.**

17.     It is apparent from the face of the Complaint that each Plaintiff seeks recovery of an amount in excess of $75,000, exclusive of costs and interest. Plaintiffs allege that, as a result of ingesting FOSAMAX®, they or their spouses have suffered severe and permanent personal injuries, including osteonecrosis of the jaw. (Complaint ¶ 8, 30). Plaintiffs further assert that "[o]steonecrosis . . . of the jaw is a serious medical event and can result in severe disability and death." (Complaint ¶ 21).

18.     Plaintiffs claim that, as a result of using FOSAMAX®, they "have been permanently and severely injured," "require ongoing medical care and treatment," and "have suffered mental anguish from the knowledge that [they] will have life-long complications as a result of the injuries [they] sustained." (Complaint ¶¶ 27-28). Plaintiffs seek compensatory damages, disgorgement, restitution, refunds, medical monitoring, loss of consortium, and exemplary and punitive damages. (Complaint ¶¶ 30-31, and Prayer for Relief (a)-(i)).

19.     While there is not a record of prior cases that specifically involve osteonecrosis of the jaw – a fact which may be attributable to the fact that osteonecrosis of the jaw is a rare disorder and cases alleging liability against pharmaceutical manufacturers for allegedly causing the same had, prior to very recently, been non-existent – there are:

- numerous reported cases in which jaw or similar facial injury led to jury or court awards far in excess of $75,000. *See, e.g., Howie v. Walsh*, 609 S.E.2d 249 (N.C. App. 2005) (addressing jury award of $300,000 against dentist who fractured patient's jaw during procedure); *Becker v. Woods*, 806 N.Y.S.2d 704 (N.Y. App. Div. 2005) (affirming jury award of $840,000 in damages where dental patient suffered from permanent paresthesia); *Preston v. Dupont*, 35 P.3d 433 (Colo. 2001) (addressing jury award of more than $250,000 for damage to alveolar nerve in jaw); *Bowers v. Liuzza*, 769 So.2d 88 (La. App.),

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

6

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

*writ. denied*, 776 So.2d 468 (La. 2000) (finding that minimum adequate damage award for nerve damage in jaw was an amount that exceeded $175,000); *Becker v. Halliday*, 554 N.W. 2d 67 (Mich. App. 1996) (jury award of $200,000 in damages, where syringe lodged in upper jaw); *Herpin v. Witherspoon*, 664 So.2d 515 (La. App. 1995) (plaintiff entitled to receive more than $75,000 as a result of temporomandibular joint (TMJ) dysfunction); *Washburn v. Holbrook*, 806 P.2d 702 (Or. App. 1991) (affirming jury finding of $400,000 in damages as a result of damage to jaw during root canal); and

- numerous prior cases that reveal that potential awards based on osteonecrosis or avascular necrosis of the hip, knee, or other joint, exceed the $75,000 jurisdictional amount. *See, e.g., Barbee v. United States*, 2005 W.L. 3336504, at *1-2 (W.D. Wis. 2006) (finding that plaintiff suffered nearly $700,000 in damages for hip injuries that included avascular necrosis); *Shaver v. United States*, 319 F.Supp. 2d 649 (M.D.N.C. 2004) (awarding more than $75,000 in damages for osteonecrosis in knee caused by automobile accident); *Piselli v. 75th Street Medical*, 808 A.2d 508 (Md. 2002) (addressing jury award of $410,000 for medical malpractice that led to avascular necrosis of the hip); *Collier v. Cawthon*, 570 S.E.2d 53 (Ga. App. 2002) (affirming jury award of $170,000 for avascular necrosis of the hip).

20.     The Plaintiffs' claims of "permanent and severe injury" as a result of osteonecrosis, and the compensatory and punitive damages that they seek, thus far exceed this Court's minimum $75,000 jurisdictional limit.

**B.      There Is Complete Diversity Jurisdiction Between Those Parties Properly Joined In This Case.**

21.     There is complete diversity between the properly joined Plaintiffs and properly joined Defendants.

22.    According to the Complaint, the eighteen (18) named Plaintiffs were at the time of the filing of the Complaint and are now citizens of twelve (12) different jurisdictions, including Arizona, Arkansas, California, Georgia, Michigan, Minnesota, New York, North Carolina, Ohio, Texas, West Virginia, and Wisconsin. (Complaint ¶ 2).

23.    Merck is now, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

24.    For the reasons set forth in § II.C, below, the remaining named defendant – McKesson – is fraudulently joined. Therefore, its citizenship must be ignored for the purposes of determining the propriety of removal.[5]

25.    The Complaint includes fictitious defendants, whose citizenship is ignored for removal purposes. 28 U.S.C. § 1441(a).

## C.    McKesson has been fraudulently joined and, therefore, its citizenship can be ignored for the purposes of removal.

26.    There is complete diversity between Plaintiffs and Defendants for the additional reason that Defendant McKesson is not a proper party to this case.

27.    A defendant is fraudulently joined and the defendant's presence in the lawsuit is ignored for purposes of determining diversity where no viable cause of action has been stated against the resident defendant. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19

VENABLE L.L.P
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

---

[5]    Even if McKesson were not properly joined, upon information and belief it has not been properly served at the time of removal of this case, and thus there is no properly joined and served in-state defendant as of the date of removal. Only one of the Plaintiffs is a resident of California, and that Plaintiffs claims to not arise from the same transaction or occurrence as the separate products liability claims brought by the other, separate Plaintiffs. Thus, even if McKesson were properly joined, which it is not, the California Plaintiff's claim should be severed and dismissed without prejudice, while the claims of the non-California Plaintiffs are properly before this Court regardless of whether McKesson is a party.

MERCK'S NOTICE OF REMOVAL

1  (9th Cir. 1998); *TPS Utilicom Services, Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089,

2  1100 (C.D.Cal. 2002). Stated differently, a defendant is fraudulently joined "if the

3  plaintiff fails to state a cause of action against the resident defendant, and the failure is

4  obvious according to the settled rules of the state." *Morris*, 236 F.3d at 1067 (citations

5  omitted).

6       28.    The fraudulent joinder of McKesson is obvious under well-settled state law

7  because (i) Plaintiffs have failed to make sufficient allegations as to any tortious

8  conduct on the part of McKesson and have failed to allege any causal link between

9  McKesson's distribution and their alleged injuries; and (ii) there is no duty to warn by

10  McKesson under the circumstances alleged in the Amended Complaint.

    **1. Plaintiffs Do Not State a Claim Against McKesson Because Their**

       **Complaint Lacks Any Specific Allegations Against McKesson and**

       **Does Not Allege Any Causation.**

14       29.    There is no allegation in the Complaint sufficient to hold McKesson liable

15  under any legal theory. There are no specific and nonconclusory allegations made

16  against McKesson in the entire complaint that relate to the Plaintiffs in any way. It is

17  well-settled that Plaintiffs cannot rely on their general allegations against "Defendants"

18  as a substitute for the specific allegations needed to state a cause of action against one

19  of the defendants. *See In re Phenylpropanolamine (PPA) Products Liab. Litig.*, MDL

20  No. 1047, relating to Civ. No. C02-423R, Slip Op. at 5 (W.D. Wash. Nov. 27 2002)

21  (stating that allegations directed toward "defendants" or "all defendants" are

22  insufficient) (Exhibit 5 hereto).

23       30.    Courts have recognized that a failure to make any material allegations

24  against a defendant is a significant indication that the joinder of that defendant is

25  fraudulent. *See, e.g., Brown v. Allstate Insur.*, 17 F. Sup. 1134, 1137 (S.D.Cal. 1998)

26  (finding in-state defendants fraudulently joined where "no material allegations against

27  [the in-state defendants] were made"); *Lyons v. American Tobacco Co.*, No. Civ. A. 96-

28

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

9

1  0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is

2  "no better admission of fraudulent joinder of [the resident defendants]" than the failure

3  of the plaintiff "to set forth any specific factual allegations" against them).

4      31.    The crux of the Plaintiffs' Complaint is an alleged failure to adequately

5  warn of the alleged side effects associated with the use of FOSAMAX®.  Notably

6  absent from the Complaint are any specific allegations that McKesson made any

7  specific representations or warranties to Plaintiffs or Plaintiffs' prescribing physicians,

8  or that Plaintiff or their prescribing physicians relied on any such specific representation

9  or warranty by McKesson.  Accordingly, Plaintiffs have failed to meet the minimal

10  pleading requirements to state a claim against McKesson.  *See, e.g., Taylor AG*

11  *Industries v. Pure-Gro*, 54 F.3d 555, 558 (9th Cir. 1995) (dismissing breach of express

12  warranty claim against distributor due to plaintiff's failure to identify any statements

13  made by the distributor that were inconsistent with or went beyond either the product

14  labels or the product guide provided by the manufacturer); *see also Keith v. Buchanan*,

15  173 Cal. App. 3d 13, 25 (1985) (actual reliance is an element of implied warranty

16  claim); *B.L.M. v. Savo & Deitsch*, 55 Cal.App.4th 823, 834 (1997) (to state a claim of

17  negligent misrepresentation, plaintiff must at least identify the alleged

18  misrepresentation).

19      32.    The general allegations that "Defendants" knew of the alleged risks

20  associated with the use of FOSAMAX® are particularly deficient because the wholly

21  conclusory claims are undermined and contradicted by the more specific allegations of

22  Merck's purported concealment and misrepresentation of the same information.  *See,*

23  *e.g., In re Phenylpropanolamine (PPA) Prods. Liab. Litig., supra*, at 7 (allegations that

24  "manufacturer defendants concealed material facts regarding PPA through product

25  packaging, labeling, advertising, promotional campaigns and materials, and other

26  methods... directly undermines and contradicts the idea that [the resident retail

27  defendant] had knowledge or reason to know of alleged defects") (Ex. 8 hereto).  The

28

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 00067
(310) 229-9900

10

allegations of Merck's purported concealment and misrepresentation of the alleged risks of FOSAMAX® belie any inference that McKesson, a wholesale distributor, had knowledge of that which was allegedly concealed.

33.    Plaintiffs' various claims against McKesson include claims for strict liability, and breach of express and implied warranty.  It is axiomatic that in order to sustain any such claims, Plaintiffs need to prove that some action on the part of the defendant *caused* Plaintiffs' alleged injuries.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (to state a claim against a defendant, a plaintiff must allege a causal connection between the injury and the conduct of the defendant); *Aronis v. Merck & Co., Inc.*, 2006 WL 2161731, *1 (E.D.Cal. May 5, 2006); *Cox v. Depuy Motech, Inc.*, 2000 WL 1160486, at *5 (S.D. Cal. 2000) (causation is an essential element of strict liability and negligence claims).

34.    Plaintiffs' complaint is completely devoid of any good-faith allegations of fact to show that the FOSAMAX® that each individual plaintiff received in Arizona, Arkansas, California, Georgia, Michigan, Minnesota, New York, North Carolina, Ohio, Texas, West Virginia, or Wisconsin was, in fact, distributed by McKesson.  The only paragraph which even mentions McKesson by name is Paragraph 4, and that paragraph contains a mere conclusory assertion that "[u]pon information and belief, Defendant McKesson marketed sold and distributed the Fosamax ingested by Plaintiffs by distributing Fosamax to the pharmacy or drugstore where each Plaintiff purchased their Fosamax."  This conclusory allegation is not supported by any factual allegation, however, and it has obviously been pled for the sole purpose of keeping this case, brought almost entirely by non-California plaintiffs , in California state court.

35.    Lacking any proper allegations of a causal connection between Plaintiffs' alleged injuries and McKesson's distribution of FOSAMAX®, Plaintiffs cannot maintain their claims against McKesson.  *See Aronis*, 2006 WL 2161731 at *1 (holding that because "Plaintiff makes no allegation that McKesson ever handled the specific

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

11

pills that were allegedly the cause of her injuries," McKesson was fraudulently joined in the action and denying motion for remand); *see also Becraft v. Ethicon*, 2000 WL 1721056, at*3 (N.D.Cal. Nov. 2, 2000) (court may find that a distributor is fraudulently joined for purposes of removal unless the plaintiff can produce evidence or establish a good faith basis for believing that the product plaintiff received came from the defendant distributor).

36.    Plaintiffs cannot maintain an action against McKesson because they have failed to plead any facts to show that McKesson engaged in any conduct that would create liability and/or to show that McKesson distributed the product they allege caused them injury. Indeed, there is no good faith basis upon which Plaintiffs could plead any such facts. It is proper for the Court to find, under these circumstances, that McKesson has been fraudulently joined.

## 2. Plaintiffs Fail to State A Claim Against McKesson Because The Learned Intermediary Doctrine Serves to Bar Plaintiffs' Claims.

37.    Even if Plaintiffs had directed specific allegations at McKesson, there remains no legal basis for such causes of action because Plaintiffs' claims are based on an alleged failure to warn and premised – for McKesson – on a non-existent duty. The rationale for the "learned intermediary" doctrine is that it is the physician who is in the best position to determine whether a patient should take a prescription medication and that imposing a duty on others to warn patients would threaten to undermine reliance on the physician's informed judgment. For this reason, courts have rejected imposing liability on distributors like McKesson for failure to warn of the risk of a prescribed medication. *See, e.g., Barlow v. Warner-Lambert Co.*, Case No. CV 03 1647 R (RZx), Slip Op. at 2 (C.D. Cal. April 28, 2003) ("The Court finds that there is no possibility that plaintiffs could prove a cause of action against McKesson, an entity which distributed this FDA-approved medication [Rezulin] to pharmacists in California;" motion to remand denied) (Exhibit 6 hereto); *Skinner v. Warner-Lambert Co.*, Case No.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

12

1  CV 03 1643-R (RZx), Slip Op. at 2 (C.D.Cal. April 28, 2003) (same) (Exhibit 7 hereto);

2  *In re Baycol Prods. Litig.*, MDL No. 1431, Case No. 139, Slip Op. at 3-4 (D.Minn. May

3  24, 2002) (retail distributor of prescription drugs fraudulently joined) (Exhibit 8 hereto);

4  *Schaerrer v. Stewart's Plaza Pharmacy*, 79 P.3d 922, 929 (Utah 2003) (declining to

5  extend duty to warn to retail distributor of prescription diet drug as their "ability to

6  distribute prescription drugs is limited by the highly restricted FDA-regulated drug

7  distribution system in this country").

8      38.    Moreover, it is undisputed that through a collaborative process, Merck and

9  the FDA prepared the information to be included with the prescription medication

10  FOSAMAX®, with the FDA having final approval of the information that could be

11  presented.  Once the FDA had determined the form and content of the information, it is

12  a violation of federal law to augment the information.  *See* 21 U.S.C. § 331(k)

13  (prohibiting drug manufacturers and distributors from causing the "alternation,

14  mutilation, destruction, obliteration, or removal of the whole or any part of the labeling"

15  of an FDA-approved drug held for sale); *Brown v. Superior Court*, 44 Cal. 3d 1049,

16  1069 n. 12 (FDA regulates the testing, manufacturing, and marketing of drugs,

17  including the content of their warning labels).  Thus, McKesson could not change the

18  information it was given by Merck as approved by the FDA without violating federal

19  law.  No duty can be found where it requires a party to violate the law to fulfill it.

20      39.    Because no duty runs from a prescription drug distributor to a consumer

21  and because a prescription drug distributor has no ability to alter the warning of a

22  prescription drug, no claim can be stated by Plaintiffs against McKesson based on an

23  alleged failure to warn.

24      40.    Under the clear language of 28 U.S.C. § 1441(b), this action is properly

25  removed to this Court by Merck.

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

13

**EXHIBIT "1"**



P Send

DOCKETED ON CM
Entered
FEB - 2 2007
BY _am_    085

FILED
CLERK, U S DISTRICT COURT
FEB - 2 2007
CENTRAL DISTRICT OF CALIFORNIA
BY __ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

NANCY FERRARO, a single woman;
LILLIE H. AUGERSON, a single
woman; LUIGA MORRA, a single
woman; EVELYN LACEY, a single
woman; JERRY W. GRAHAM, a
single woman; MINA A. HOLCOMB,
a single woman,

               Plaintiffs,

vs.

MERCK & CO., INC., a New Jersey
Corporation; McKESSON
CORPORATION, a Delaware
corporation; DOES 1-50

               Defendants.

CV 06-7733 FMC (PJWx)

ORDER GRANTING DEFENDANT'S
MOTION TO STAY AND DENYING
PLAINTIFFS' MOTION TO REMAND

#21

     This matter is before the Court on Plaintiffs' Motion to Remand to State Court
(docket no. 11), and Defendant Merck & Co., Inc.'s Motion to Stay Proceedings
(docket no. 14), filed on January 4, 2007, and January 11, 2007, respectively. The
Court has considered the moving and opposition documents submitted in connection
with the motions. The Court deems this matter appropriate for decision without oral
argument. *See* Fed. R. Civ. P. 78, Local Rule 7-15. Accordingly, the hearing set for

1   February 5, 2007, is removed from the Court's calendar. For the reasons and in the

2   manner set forth below, the Court **GRANTS** Defendant's Motion to Stay and

3   **DENIES** Plaintiffs' Motion to Remand without prejudice to the filing of a renewed

4   motion in the event that the Judicial Panel on Multidistrict Litigation ("JPML") does

5   not transfer this case to Mutlidistrict Litigation ("MDL") No. 1789, *In Re: Fosamax*

6   *Prods. Liab. Litig.*

7         **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

8         Plaintiffs Nancy Ferraro, Lillie H. Augerson, Luiga Morra, Evelyn Lacey,

9   Jerry W. Graham, and Mina A. Holcomb took the prescription drug Fosamax, which

10  is manufactured and sold by Defendant Merck & Co., Inc. ("Merck") and distributed

11  by Defendant McKesson Corporation ("McKesson"). Plaintiffs filed their Complaint

12  in the Superior Court for the State of California, County of Los Angeles, on

13  December 1, 2006. Plaintiffs allege, *inter alia*, that Defendants misrepresented

14  (affirmatively and through a failure to warn) that Fosamax was a safe and effective

15  treatment for osteoporosis, Paget's Disease, and other conditions. Plaintiffs further

16  allege that, as a proximate result of ingesting Fosamax, they have been permanently

17  and severely injured.

18        On December 6, 2006, Defendant Merck removed the action to this Court on

19  the basis of diversity under 28 U.S.C. § 1332, alleging that Defendant McKesson,

20  a California citizen, is fraudulently joined. In their motion to remand, Plaintiffs

21  argue that joinder was proper. In its Opposition to the motion and in its separate

22  Motion for Stay, Merck maintains that resolution of the question of the propriety of

23  Plaintiffs' joinder of McKesson should be deferred pending transfer of this action

24  to the MDL proceedings in *In Re Fosamax Prods. Liab. Litig.*, and that all other

25

26

27

1   proceedings in this action should be stayed until such time.[1]  McKesson joins in

2   Merck's Opposition to the motion to remand and in the Motion to Stay in all

3   respects.

4                                 **STANDARD OF LAW**

5            "A trial court may, with propriety, find it is efficient for its own docket and the

6   fairest course for the parties to enter a stay of an action before it, pending resolution

7   of independent proceedings which bear upon the case." *Leyva v. Certified Grocers*

8   *of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *see also Landis v. North*

9   *American Co.*, 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163 (1936) ("[T]he power

10  to stay proceedings is incidental to the power inherent in every court to control the

11  disposition of the causes on its docket with economy of time and effort for itself, for

12  counsel, and for litigants.").

13                                 **DISCUSSION**

14           A stay of all proceedings until such time as the JPML renders its final

15  decision regarding transfer is in the interest of judicial economy.  A steady succession

16  of cases involving the drug Fosamax are being filed in this district and other districts

17  throughout the country and are awaiting transfer to the MDL proceedings.[2]  Given

18  the similarity of this litigation to other recent pharmaceutical products liability

19  litigation, the Court finds that there are likely to be many more cases (in this district

20  or otherwise) which present the precise question of the propriety of joinder of

21  _____

22       [1]Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict
     Litigation, the JMPL issued a Conditional Transfer Order on December 27, 2006.  Plaintiffs were
23   required to file a  Motion to Vacate that Order on or before January 25, 2007. *See* Request for
     Judicial Notice in Support of Merck & Co., Inc.'s Opposition to Plaintiff's Motion to Remand,
24   Exhibits 3-4.

25       [2] According to the JPML website, there are now 77 actions pending in MDL No. 1789, *In Re:*
26   *Fosamax Prods. Liab. Litig.  See*  http://www.jpml.uscourts.gov/Pending_MDLs/pending_mdls.
     html (follow "Distribution of Pending MDL Dockets").

27

                                         3

1   Defendant McKesson and/or other "distributor" defendants.[3]  Consideration of

2   Plaintiffs' remand motion by this Court at this juncture would therefore run the risk

3   of inconsistent rulings between different judges in different districts and/or would

4   constitute an inefficient use of judicial resources.  *Cf. Stempien v. Eli Lilly & Co.*,

5   2006 U.S. Dist. LEXIS 28408 *4 (N.D. Cal. 2006) ("[E]ven if the Court were to grant

6   Plaintiffs' motion to relate all Zyprexa cases naming McKesson Corporation in this

7   district, judges in other California districts would nonetheless have to decide the

8   issue, thus resulting in unnecessarily duplicative litigation, an inefficient use of

9   judicial resources, and the risk of inconsistent results.").

## CONCLUSION

11      Based on the foregoing, Defendant Merck & Co., Inc.'s Motion to Stay

12  Proceedings (docket no. 14) is **GRANTED**.  Proceedings in this case are STAYED

13  until issuance of a final decision by the JPML regarding transfer or for sixty (60)

14  days, whichever is earlier.

15  //

16  //

17  //

18  //

19  //

20

21      [3]As Defendants point out, two Fosamax cases which name both Merck and McKesson as

22  Defendants were recently removed (by Merck) to the district courts for the Northern and Southern
    Districts of California. *See* Request for Judicial Notice in Support of Defendant Merck & Co., Inc.'s

23  Reply Memorandum in Support of Motion to Stay Proceedings, Exhibit 3. The Court takes judicial
    notice of the fact that Merck is raising the same issues of fraudulent joinder in those cases and has

24  filed a similar motion to stay proceedings pending possible transfer to the MDL action in the
    Northern District case. *See* Fed. R. Civ. P. 201; *United States ex. rel. Robinson Rancheria Citizens*

25  *Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (court may take judicial notice of

26  "proceedings in other courts, both within and without the federal judicial system, if those
    proceedings have a direct relation to matters at issue.").

27

4

1          Plaintiffs' Motion to Remand (docket no. 11) is **DENIED** without prejudice

2   to the filing of a renewed motion if transfer is denied.

3

4   **IT IS SO ORDERED.**

5   Dated: February  1 , 2006

6

7

8                                        FLORENCE-MARIE COOPER, JUDGE

9                                        UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

5

**EXHIBIT "2"**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 19 2007

FILED
CLERK'S OFFICE

### DOCKET NO. 1789

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE FOSAMAX PRODUCTS LIABILITY LITIGATION

*Nancy Ferraro, et al. v. Merck & Co., Inc., et al.*, C.D. California, C.A. No. 2:06-7733
*Jennifer Bogard, et al. v. Merck & Co., Inc., et al.*, N.D. California, C.A. No. 3:06-6917
*Edna Goya v. Merck & Co., Inc., et al.*, S.D. California, C.A. No. 3:06-2574

## BEFORE WM. TERRELL HODGES, CHAIRMAN, D. LOWELL JENSEN, J. FREDERICK MOTZ,* ROBERT L. MILLER, JR., KATHRYN H. VRATIL, DAVID R. HANSEN* AND ANTHONY J. SCIRICA,* JUDGES OF THE PANEL

### TRANSFER ORDER

Before the Panel are motions brought, respectively, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in a Central District of California action, a Northern District of California action, and a Southern District of California action. These plaintiffs ask the Panel to vacate its orders conditionally transferring the actions to the Southern District of New York for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket. Common defendant Merck & Co., Inc., opposes the motions to vacate and urges inclusion of the actions in the MDL-1789 proceedings.

On the basis of the papers filed and hearing session held (without oral argument), the Panel finds that these actions involve common questions of fact with the actions in this litigation previously transferred to the Southern District of New York, and that transfer of these three actions to the Southern District of New York for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. The Panel further finds that transfer of these actions is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket. In that order, the Panel held that the Southern District of New York was a proper Section 1407 forum for actions involving allegations that ingestion of Fosamax, a prescription medication used in the treatment of osteoporosis, caused adverse effects, in particular, osteonecrosis of the jaw. *See In re Fosamax Products Liability Litigation*, 444 F.Supp.2d 1347 (J.P.M.L. 2006). Should plaintiffs wish to pursue or renew their motions for remand to state court, they can do so in the transferee court. *See, e.g.*, *In re Ivy*, 901 F.2d 7 (2nd Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation*, 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001).

---

\* Judges Motz, Hansen and Scirica took no part in the decision of this matter.

- 2 -

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these actions are transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable John F. Keenan for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

**EXHIBIT "3"**



**CERTIFIED TRUE COPY**

FEB 15 2007

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDGE KEENAN

07 CV 1321

FILED
CLERK U S DISTRICT COURT

FEB 2 2007

CEN. DISTRICT OF CALIFORNIA
DEPUTY

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 15 2007

FILED
CLERK'S OFFICE

*DOCKET NO. 1789*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE FOSAMAX PRODUCTS LIABILITY LITIGATION

*Edward A. Morris, et al. v. Merck & Co., Inc., et al.*, C.D. California, C.A. No. 2:06-5587
*Anne E. Clayton v. Merck & Co., Inc., et al.*, C.D. California, C.A. No. 2:06-6398

**BEFORE WM. TERRELL HODGES, CHAIRMAN, D. LOWELL JENSEN,* J. FREDERICK MOTZ,* ROBERT L. MILLER, JR., KATHRYN H. VRATIL, DAVID R. HANSEN* AND ANTHONY J. SCIRICA, JUDGES OF THE PANEL**

### TRANSFER ORDER

Before the Panel are motions brought, respectively, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in two Central District of California actions. These plaintiffs ask the Panel to vacate its orders conditionally transferring the actions to the Southern District of New York for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket. Common defendant Merck & Co., Inc., opposes the motions to vacate and urges inclusion of the actions in the MDL-1789 proceedings.

On the basis of the papers filed and hearing session held (without oral argument), the Panel finds that these actions involve common questions of fact with the actions in this litigation previously transferred to the Southern District of New York, and that transfer of these two actions to the Southern District of New York for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. The Panel further finds that transfer of these actions is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket. In that order, the Panel held that the Southern District of New York was a proper Section 1407 forum for actions involving allegations that ingestion of Fosamax, a prescription medication used in the treatment of osteoporosis, caused adverse effects, in particular, osteonecrosis of the jaw. *See In re Fosamax Products Liability Litigation*, 444 F.Supp.2d 1347 (J.P.M.L. 2006). Should plaintiffs wish to renew their motions for remand to state court, they can do so in the transferee court. *See, e.g., In re Ivy*, 901 F.2d 7 (2nd Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation*, 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001).

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

Docketed

Copies / NTC/ Clerk

___ JS - 5 / JS - 6

___ JS - 2 / JS - 3

___ CLSD

ENTERED
CLERK, U.S. DISTRICT COURT

MAR - 6 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

*Judges Motz and Hansen took no part in the decision of this matter.

**CERTIFIED COPY**
J. MICHAEL McMAHON,          CLERK

BY _____
DEPUTY CLERK

- 2 -

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these actions are transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable John F. Keenan for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman



Docketed ———
Copy(ies)/JPC Sent ———
Mag ———
———
GLSD ———

UNITED STATES DISTRICT COURT
Southern District of New York
Office of the Clerk
500 Pearl Street
New York, N.Y. 10007
(212)805-0136

J. Michael McMahon
Clerk

USDC CD OF CALIFORNIA                              Date: 2/22/07

                                          In Re: FOSAMAX

                                          MDL    1789

              Your Docket #                S.D. OF N.Y.

              2:06-6398                     07 CV 1321


Dear Sir:

       Enclosed is a certified copy of the order of the Judicial Panel on Multidistrict Litigation,
transferring the above entitled action presently pending in your court, to the Southern District
of New York and assigned to Judge KEENAN for coordinated or consolidated pretrial
processing pursuant to 28 USC 1407.

       Please return the copy of this letter when transmitting YOUR FILE and a CERTIFIED
COPY OF THE DOCKET SHEET.

Sincerely,
J.Michael McMahon

By:
MDL Unit

**UNITED STATES DISTRICT COURT**
Southern District of New York
Office of the Clerk
500 Pearl Street
New York, N.Y. 10007
(212)805-0136

J. Michael McMahon
Clerk

USDC CD OF CALIFORNIA                           Date: 2/22/07

In Re: FOSAMAX

MDL    1789

Your Docket #                    S.D. OF N.Y.

2:06-6398                         07 CV 1321

Dear Sir:

    Enclosed is a certified copy of the order of the Judicial Panel on Multidistrict Litigation, transferring the above entitled action presently pending in your court, to the Southern District of New York and assigned to Judge KEENAN for coordinated or consolidated pretrial processing pursuant to 28 USC 1407.

    Please return the copy of this letter when transmitting YOUR FILE and a CERTIFIED COPY OF THE DOCKET SHEET.

Sincerely,
J.Michael McMahon

By:
MDL Unit

**EXHIBIT "4"**

90047

1  Ross W. Feinberg, Esq. SBN 117940
   Bruce G. Mayfield, Esq. SBN 57730
2  Joseph Kaneda, Esq. SBN 160336
   FEINBERG GRANT MAYFIELD KANEDA & LITT, LLP
3  2 San Joaquin Plaza, Suite 180
   Newport Beach, California 92660
4  Phone: (949) 554-0700
   Facsimile: (949) 554-0707
5
6  Of Counsel:
   William B. Curtis, Esq. TX SBN 00783918
   Alexandra V. Boone, Esq. TX SBN 00795259
7  MILLER CURTIS & WEISBROD
   11551 Forest Central Drive, Suite 300
8  Dallas, TX  75243
   Telephone: (214) 987-0005
9  Facsimile:  (214) 739-4732

10  Attorneys for Plaintiffs

**FILED**
LOS ANGELES SUPERIOR COURT
JUL 13 2007
JOHN A. CLARKE, CLERK
BY_____
EDUARDO CHANES, DEPUTY

Case assigned D.54
to Judge ERNEST HIROSHIGE

11            SUPERIOR COURT OF THE STATE OF CALIFORNIA

12               IN AND FOR THE COUNTY OF LOS ANGELES

13

14  CARRIE SMITH, CORO PAXTON AND TOM      )  Case No.  BC374219
    PAXTON, NILDA STRANCE, ELLEN          )
15  MASSENGILL, PEGGY CREECH, MARY        )  PERSONAL INJURY COMPLAINT
    BENTLEY, MARY FRIEDMAN, ELLA LUZIER,  )  FOR:
16  ANGELINA GRBAC, EILEEN RICHARDSON,    )
    ANN NELSON, PATRICE BALLUM, MARY ANN  )  1.  PRODUCT LIABILITY
17  GUEMELATA, LAURETTA TEDFORD, LEE      )      FAILURE TO WARN;
    ANN OLSON, MARGARET SCHUELLER,        )  2.  PRODUCT LIABILITY
18  MARILYN RUBENZER,                     )      DANGEROUS PRODUCT;
                                          )  3.  NEGLIGENCE;
19            PLAINTIFFS,                 )  4.  BREACH OF IMPLIED
                                          )      WARRANTY;
20                                        )  5.  BREACH OF EXPRESS
                                          )      WARRANTY;
21  MERCK & CO., INC. and McKESSON        )  6.  FRAUD;
    CORPORATION,                          )  7.  FRAUD BY CONCEALMENT;
22                                        )      AND
              DEFENDANTS.                 )  8.  UNJUST ENRICHMENT.
23                                        )
                                          )  DEMAND FOR JURY TRIAL
24                                        )
                                          )
25                                        )

26

27

28      PLAINTIFFS' ORIGINAL PERSONAL INJURY COMPLAINT

            AND DEMAND FOR JURY TRIAL


PERSONAL INJURY COMPLAINT                          Page 1 of 29

COME NOW the Plaintiffs, and for their Original Personal Injury Complaint and Demand for Jury Trial against Defendants Merck & Co., Inc. and McKesson Corporation, allege and aver as follows:

## PRELIMINARY STATEMENT

1.     This is a proceeding brought by Plaintiffs seeking damages for personal injuries suffered as a result of the Plaintiffs' ingestion of a dangerous pharmaceutical product "Fosamax"®  [1]   (alendronate sodium; hereinafter "Fosamax"), which was continuously manufactured, marketed, advertised, and distributed to the general public by Defendant Merck & Co., Inc. and which was distributed through the actions and conduct of Defendant McKesson Corporation.

## PARTIES

**PLAINTIFFS:**

2.     Each Plaintiff, listed in the chart below, was prescribed and ingested Fosamax and thereafter suffered personal injury thereby.  Plaintiffs are proper parties for a single action under California's permissive joinder statute (CAL. CODE CIV. PRO. § 378) in that each was injured through the same transactions, occurrences or series of transactions or occurrences – the manufacture, marketing, distribution and sale of Fosamax – and common questions of law or fact exist as to all Plaintiffs.  See Anaya v. Superior Court, 160 Cal. App. 3d 228 (Cal. App. Div. 3 1984) (allowing permissive joinder of 200 injured employees of Dow Chemical Company).

| First Name | Last Name | Hometown | State |
|---|---|---|---|
| Carrie | Smith | Los Angeles | CA |

[1]  Fosamax is the registered trademark of Defendant Merck & Co., Inc.

PERSONAL INJURY COMPLAINT

Page 2 of 28

| Cora | Paxton | San Antonio | TX |
|---|---|---|---|
| Tom | Paxton | San Antonio | TX |
| Nilda | Strange | Kaufman | TX |
| Ellen | Massengill | Goldsboro | NC |
| Peggy | Creech | Whiteville | NC |
| Mary | Bentley | Reynolds | GA |
| Mary | Friedman | Sound Beach | NY |
| Ella | Luzier | Davis | WV |
| Angelina | Grbac | Princeton | WV |
| Eileen | Richardson | Janesville | WI |
| Ann | Nelson | Midland | MI |
| Patrice | Ballum | Ft. Mohave | AZ |
| Mary Ann | Guemelata | Bellevue | OH |
| Lauretta | Tedford | Conway | AR |
| Lee Ann | Olson | Minneapolis | MN |
| Margaret | Schueler | Rushford | MN |
| Marilyn | Rubenzer | Boomer | WI |

**DEFENDANTS**

3.    At all times mentioned, Defendant Merck & Co., Inc., (hereinafter "Merck")

was and is a corporation incorporated, operating and existing under the laws of incorporation, of the

State of New Jersey, with its principal place of business in Whitehouse Station, New Jersey,

continuously doing business in the State of California for monetary profit, and within this judicial

district. At all times herein mentioned, Defendant Merck, in interstate commerce and in this

judicial district, purposefully marketed, designed, manufactured, tested, analyzed, distributed,

recommended, merchandised, advertised, promoted, supplied and sold to distributors, and retailers

for resale to physicians, hospitals, medical practitioners and the general public, a certain

pharmaceutical product, hereinafter referred to as Fosamax. At all times herein mentioned, the

Defendant Merck was the actor engaged in the acts herein alleged, acting through its agents and

employees, and at all times, the actions and omissions asserted in this pleading were committed by

PERSONAL INJURY COMPLAINT

Page 3 of 29

agents or employees acting within the purpose and scope of said agency and/or employment, and/or

all of said acts and conduct were ratified and approved by said Defendant.

According to records on file with the California Secretary of State, **Defendant**

**Merck may be served with process by and through its registered agent:**

> **CT Corporation System**
> **818 West Seventh Street**
> **Los Angeles, California 90017**

4.      Defendant McKesson Corporation is a pharmaceutical company that exists as

a corporation, partnership or other business entity licensed to do business in the State of California.

Incorporated under the laws of Delaware, Defendant McKesson is a California corporation in that it

has its principal place of business in California.  By Defendant McKesson's admission, its corporate

headquarters are located at One Post Street, San Francisco, California 94104-5296.  Additionally,

Defendant McKesson is otherwise subject to general jurisdiction in California in that it is engaged

in the business of distributing, selling, assembling, inspecting, marketing, promoting, packing

and/or advertising numerous pharmaceutical products.  The 16th largest industrial corporation in

America, with over $800 billion in revenue every year, McKesson's own website states that

"McKesson is everywhere" in healthcare.      McKesson is the sole supplier of branded

pharmaceuticals – including Fosamax – to many of the largest pharmacies and drug suppliers in the

nation including pharmacies such as Wal-Mart, Safeway, and Valu-Rite, and numerous others.

Upon information and belief, Defendant McKesson marketed, sold and distributed the Fosamax

ingested by Plaintiffs by distributing Fosamax to the pharmacy or drug store where each Plaintiff

purchased their Fosamax.  At all times herein mentioned, the Defendant McKesson was the actor

engaged in the acts herein alleged, acting through its agents and employees, and at all times, the

**PERSONAL INJURY COMPLAINT**                                          Page 4 of 28

1    actions and omissions asserted in this pleading were committed by agents or employees acting

2    within the purpose and scope of said agency and/or employment, and/or all of said acts and conduct

3    were ratified and approved by said Defendant.

4           According to records on file with the California Secretary of State, Defendant

5

6    McKesson may be served with process by and through its registered agent:

7           The Prentice-Hall Corporation System, Inc.
           P.O. Box 526036
8          Sacramento, CA 95852-6036

9                 JURISDICTION AND VENUE

10       5.    This Court has subject matter jurisdiction pursuant to California State Law,

11

12   because the amount in controversy exceeds the minimum jurisdiction of this Court, which is the

13   Court of primary trial jurisdiction in California.

14       6.    Venue is further proper in this Superior Court pursuant to California Law in

15   that Defendant McKesson Corporation is a corporate citizen of California. Further, Defendant

16

17   Merck operates in this District, has employed persons in this District, has advertised within this

18   District, has received substantial compensation and profits from sales for the drug Fosamax within

19   this District and has made material omissions and misrepresentations and breached warranties in

20   this District. Venue is particularly proper in Los Angeles County in that Plaintiff Smith resides in

21   Los Angeles County.

22

23               SUMMARY OF THE CASE

24       7.    Defendants, either directly or through its agents, apparent agents, servants or

25   employees designed, manufactured, marketed, advertised, distributed and/or sold Fosamax for the

26   treatment of osteoporosis, prevention of bone loss, Paget's Disease, among other uses.

27       8.    As a result of the defective nature of Fosamax, persons who were prescribed

28

and ingested Fosamax, including Plaintiffs, have suffered and may continue to suffer severe and permanent personal injuries, including without limitation, one or more of the following: osteonecrosis and/or osteochemonecrosis of the jaw.

9.    Defendants concealed their knowledge of Fosamax's unreasonably dangerous risks from Plaintiffs, other consumers, and the medical community. Defendants failed to conduct adequate and sufficient post-marketing surveillance of Fosamax after it began marketing, advertising, distributing, and selling the drug.

10.    As a result of Defendants' actions and inaction, Plaintiffs were injured due to ingestion of Fosamax, which has caused and will continue to cause Plaintiffs' various injuries and damages. Plaintiffs accordingly seek compensatory damages and other damages.

## FACTUAL ALLEGATIONS

11.    At all relevant times, Defendant Merck was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing and selling Fosamax, as detailed below, and Defendant McKesson was responsible for the distribution of Fosamax as detailed below.

12.    In September 1995, the United States Food and Drug Administration ("FDA") approved Merck's compound alendronate for various uses, including the treatment of osteoporosis and Paget's Disease. Alendronate is marketed by Defendant Merck as Fosamax.

13.    Fosamax falls within a class of drugs known as bisphosphonates. Bisphosphonates are used for treating bone conditions such as osteoporosis and Paget's Disease. Other drugs within this class, such as Aredia and Zometa, are used as chemotherapy and as adjunct chemotherapy but are not indicated for use in non-cancerous conditions such as osteoporosis.

14.    There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphosphonates include the

PERSONAL INJURY COMPLAINT                                    Page 6 of 28

following: pamidronate (Aredia); ibandronate (Bondronat); and alendronate (Fosamax). The non-nitrogenous bisphosphonates include the following: etridonate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid). Alendronate contains a nitrogen atom. The Physicians Desk Reference ("PDR") for Fosamax confirms that the molecule contains a nitrogen atom.

15.    Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis and/or osteochemonecrosis of the jaw within the nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects concerning irritation, erosion and inflammation of the upper gastrointestinal tract, Merck knew or should have known that Fosamax, as a nitrogenous bisphosphonate, shared a similar adverse event profile to the other drugs within this specific subclass of bisphosphonates (i.e., those containing nitrogen).

16.    Merck also knew or should have known[2] that bisphosphonates, including Fosamax, inhibit endothelial cell function. Similarly, Merck knew or should have known that bisphosphonates also inhibit vascularization of the affected area and induce ischemic changes specific to patients' mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature.

17.    Merck also knew or should have known that these factors combine to create a compromised vascular supply in the affected area. As a result, a minor injury or disease can turn into a non-healing wound. That, in turn, can progress to widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow).

18.    Dentists are now being advised by dental associations to refrain from using

---

[2] Throughout this Complaint, whenever Plaintiffs assert Merck "should have known", Plaintiffs are asserting that the dangerous propensity of Forsamax was knowable to one or both Defendants given the accepted scientific knowledge at the time of manufacturing and distribution.

PERSONAL INJURY COMPLAINT                                                    Page 7 of 28

any invasive procedure (such as drilling a cavity) for any patient on Fosamax.

19.   Once the osteonecrosis begins and becomes symptomatic, it is very difficult to treat and typically is not reversible.

20.   Shortly after Defendants began selling and distributing Fosamax, reports of osteonecrosis and/or osteochemonecrosis of the jaw and other dental complications among users began surfacing, indicating that Fosamax shared the class effects of the other nitrogenous bisphosphonates. Despite this knowledge, Merck failed to implement further study of osteonecrosis and/or osteochemonecrosis of the jaw relative to Fosamax. Rather than evaluating and verifying the safety of Fosamax with respect to osteonecrosis and/or osteochemonecrosis of the jaw, Defendant proposed further uses of Fosamax, such as Fosamax-D, and sought to extend the exclusivity period of Fosamax through 2018.

21.   Osteonecrosis and/or osteochemonecrosis of the jaw is a serious medical event and can result in severe disability and death.

22.   Rather than warn patients, and despite knowledge of an increased risk of osteonecrosis and/or osteochemonecrosis of the jaw on patients using Fosamax, Merck continued to defend Fosamax, mislead physicians and the public, and minimize unfavorable findings.

23.   Fosamax is one of Defendants' top selling drugs, averaging more than $3 billion a year in sales.

24.   Consumers, including Plaintiffs, who have used Fosamax for the treatment of osteoporosis, have several alternative safer products available to treat the conditions.

25.   Defendants knew of the significant risk of dental and oral complications caused by ingestion of Fosamax, but did not adequately and sufficiently warn consumers, including

PERSONAL INJURY COMPLAINT

Page 8 of 28

Plaintiffs, or the medical community, of such risks.

26.    In an elaborate and sophisticated manner, Merck aggressively marketed Fosamax in the United States and in this judicial district. This marketing was directed to consumers and medical professionals (including physicians and leading medical scholars) in order to leverage pressure on third party payers, medical care organizations, and large institutional buyers (e.g., hospitals) to include Fosamax on their formularies. Faced with the increased demand for the drug by consumers and health care professionals that resulted from Merck's successful advertising and marketing blitz, third party payers were compelled to add Fosamax to their formularies. Merck's marketing campaign specifically targeted third party payers, physicians, and consumers, and was designed to convince them of both the therapeutic and economic value of Fosamax.

27.    As a direct result, Plaintiffs were prescribed Fosamax and have been permanently and severely injured, having suffered serious consequences from the ingestion of Fosamax. Plaintiffs require and will in the future require on-going medical care and treatment.

28.    Plaintiffs have suffered from mental anguish from the knowledge that Plaintiffs will have life-long complications as a result of the injuries they sustained from the use of Fosamax.

29.    Plaintiffs used Fosamax as prescribed and in a foreseeable manner.

30.    As a direct and proximate result of using Fosamax, Plaintiffs suffered severe osteonecrosis and/or osteochemonecrosis of the jaw.

31.    Plaintiffs, as a direct and proximate result of using Fosamax, suffered severe and physical pain and suffering and have sustained permanent injuries and emotional distress. Plaintiffs' injuries and damages exceed the jurisdictional amount required by this Court.

32.    Plaintiffs used Fosamax, which had been provided to them in a condition that

PERSONAL INJURY COMPLAINT                                    Page 9 of 28

was substantially the same as the condition in which it was manufactured and sold.

33.    Based upon information and belief, the physicians who supplied Fosamax to Plaintiffs reasonably relied on the representations made to them by Merck prior to the date of prescribing Fosamax for use.  Based upon information and belief, the physicians reasonably relied on the representations regarding the safety of Fosamax and would have altered their prescription habits by considering alternative treatments, altering their informed consent, and/or would not have recommended Fosamax if he or she had known the true facts regarding the safety of Fosamax.  Thus, based on information and belief, had Plaintiffs' physicians known the true facts, the drug would not have been prescribed to Plaintiffs because of one or more of the following: the physicians would not have recommended Fosamax to Plaintiffs and would have prescribed an alternative product; the Plaintiffs would have used the information provided by the physicians and chosen an alternative medicine.  In either event, Defendants' failure to provide true and accurate information to Plaintiffs' physicians, by omission and/or commission, was the proximate cause of each of the Plaintiffs' injuries.

34.    Plaintiffs would not have used Fosamax had Defendants properly disclosed the risks associated with the drug.  Alternatively, Plaintiffs would have known the precursor events of osteonecrosis and/or osteochemonecrosis of the jaw and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

35.    Prior to the dates upon which the aforesaid product was prescribed to Plaintiffs, Merck knew, or should have known, that Fosamax was extremely dangerous and unsafe for use by the general public for the treatment and prevention of osteoporosis.  Yet, Merck, through its affirmative misrepresentations and omissions, failed to take appropriate action to cure the nature of its defects and actively concealed from Plaintiffs and their physicians the true and significant

risks associated with taking Fosamax. The running of any applicable statute of limitations has been tolled by reason of Merck's fraudulent concealment.

36.    As a result of Defendants' actions, Plaintiffs and their prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendants' acts, omissions and misrepresentations.

## FIRST CAUSE OF ACTION

### [Strict Products Liability Failure to Warn – Both Defendants]

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every allegation in paragraphs 1 through 36, inclusive, of this Original Complaint, and for cause of action state that Defendants' conduct makes them strictly liable in tort for failure to adequately warn.

37.    Defendants have engaged in the business of selling, distributing, supplying, manufacturing, marketing and/or promoting Fosamax, and through that conduct have knowingly and intentionally placed Fosamax into the stream of commerce with full knowledge that it would arrive in the judicial district where the Plaintiffs ingested it. Defendants did in fact sell, distribute, supply, manufacture, and/or promote Fosamax to Plaintiffs' pharmacies, Plaintiffs' prescribing physicians and ultimately, Plaintiffs. Additionally, Defendants expected the Fosamax it was selling, distributing and supplying, manufacturing and/or promoting to reach, and Fosamax did in fact reach, prescribing physicians and consumers in the State and throughout the United States, including Plaintiffs, and Plaintiffs' prescribing physicians, without substantial change in the condition of the product.

38.    At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture, and was so at the time it was distributed by Defendant and ingested by Plaintiffs.

Specifically, the Fosamax ingested by Plaintiffs was in a defective condition because Defendants distributed the product without adequate warning, failed to properly package the product and/or failed to label the product to give reasonable warnings of danger about the product. Given the severity of the adverse effects of Fosamax, the aforesaid product was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of Fosamax. Thus, Defendants failed to warn of a substantial danger not readily recognizable to an ordinary consumer, and the danger was known or knowable to Defendants given the accepted scientific knowledge at the time of manufacture and distribution. These defects caused serious injuries to the user when Fosamax was used in its intended and foreseeable manner, i.e., when it was ingested as prescribed by Plaintiffs' physicians and in the manner recommended and/or marketed by Defendants.

39.    Defendants knew that the aforesaid product was to be used by the user without inspection for defects therein, and that the Plaintiffs were among the class of persons that might foreseeably be harmed by the product Fosamax after its prescription, purchase and ingestion.

40.    The Plaintiffs used the product for its intended purpose.

41.    The aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product, i.e., ingestion to aid in the treatment of osteoporosis, involved substantial dangers not readily recognizable by the ordinary, reasonably foreseeable user of the product. Defendants failed to warn of the known or knowable likelihood of injury including, but not limited to the likelihood the user would develop osteonecrosis and/or osteochemonecrosis.

42.    Plaintiffs did not know, nor did Plaintiffs have reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing

PERSONAL INJURY COMPLAINT                                      Page 12 of 28

1   described defects.   These defects and/or the failure to warn of these defects caused the herein

2   described injuries to Plaintiffs and the injuries from which the Plaintiffs continue to suffer.

3          43.     Defendants knew that the aforesaid product was to be used by the user

4   without inspection for defects therein and that the aforesaid product was unaccompanied by

5   adequate warnings of its dangerous propensities that were known or reasonably scientifically

6   knowable at the time of distribution.

7

8          44.     Plaintiffs neither knew, nor had reason to know, at the time of the use of the

9   aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects.

10  Thus, Defendants' failure to adequately warn Plaintiffs and/or Plaintiffs' physicians proximately

11  caused Plaintiffs' injuries.

12

13         WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs'

14  favor and against Defendants for damages in a sum in excess of the jurisdictional requirement of

15  this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems

16  just and proper; and demands that the issues herein contained be tried by a jury.

17

18                            SECOND CAUSE OF ACTION

19                 [Strict Products Liability/Defective Product – Merck]

20         Plaintiffs hereby incorporate by reference as if fully set forth herein each and every

21  allegation in paragraphs 1 through 44, inclusive, of this Original Complaint, and for cause of action

22  state that Defendant Merck's conduct creates strict liability in tort because the Fosamax purchased

23

24  and ingested by Plaintiffs was a defective product.

25         45.     Defendant Merck has engaged in the business of selling, distributing,

26  supplying, manufacturing, marketing and/or promoting Fosamax, and through that conduct has

27  knowingly and intentionally placed Fosamax into the stream of commerce with full knowledge that

28

PERSONAL INJURY COMPLAINT                                            Page 13 of 28

it would arrive where the Plaintiffs purchased and ingested it. Merck did in fact sell, distribute, supply, manufacture, and/or promote Fosamax to Plaintiffs and Plaintiffs' prescribing physicians. Additionally, Merck expected the Fosamax it was selling, distributing and supplying, manufacturing and/or promoting to reach, and did in fact reach, prescribing physicians and consumers in this State and within each of the Plaintiffs' home states, including Plaintiffs, and his or her prescribing physicians, without substantial change in the condition of the product.

46.    The Fosamax manufactured and/or supplied by Merck was placed into the stream of commerce in a defective condition in that the foreseeable risks exceeded the benefits associated with the design or formulation and/or that the Fosamax was in a condition (a) that failed to perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner, or (b) the risk of danger inherent in the design of Fosamax outweighed the benefit of its design.

47.    Alternatively, the Fosamax manufactured and/or supplied by Merck was defective in design or formulation in that when it was placed in the stream of commerce, it was more dangerous than an ordinary consumer would expect, and it was more dangerous than other forms of treatment.

48.    The Fosamax manufactured and/or supplied by Merck was defective because Merck knew or should have known that the product created a risk of harm to consumers and that Merck failed to adequately warn of said risks.

49.    The Fosamax manufactured and/or supplied by Defendant Merck was defective due to one or more of the following reasons:

a.    The product was not safe for ingestion as designed in that it caused permanent and/or progressive physical injury and other physical injuries;

PERSONAL INJURY COMPLAINT

Page 14 of 28

b.    The product as designed and/or sold by Merck did not properly protect users from harm;

c.    The product caused Plaintiffs to be exposed to harmful substances;

d.    The product was not safe for its intended use;

e.    The product as designed and/or distributed did not properly address various safety issues;

f.    The product was not tested properly or adequately;

g.    The risk of product usage for known and/or intended uses was outweighed by the risk of usage;

h.    The product had an inadequate warning;

i.    Merck failed its post-sale duty to warn of newly discovered harm;

j.    The product failed to perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner;

k.    The risk of danger inherent in the design of Fosamax outweighed the benefit of its design; and/or,

l.    The product was otherwise in a defective condition under California law.

50.    As designed, the Fosamax contained dangerous design defects and was not reasonably safe as intended -- making the risks of Fosamax outweigh its benefits and subjecting Plaintiffs to risks which exceeded any alleged benefits of Fosamax.

51.    The Fosamax manufactured and/or supplied by Merck was defective due, inter alia, to inadequate post-marketing warning or instruction because after Merck knew or should have known of the risk of injury from Fosamax, it failed to provide adequate warnings to users or consumers of the product and continued to promote the product improperly.

PERSONAL INJURY COMPLAINT                                    Page 15 of 28

52.    The Plaintiffs used the product for its intended and/or reasonably expected usage or purpose.

53.    As a proximate and legal result of the defective condition of this product manufactured and/or supplied by Merck, Plaintiffs were caused to suffer harm and the herein described injuries from which the Plaintiffs continue to suffer. Thus, Merck's conduct proximately caused Plaintiffs' injuries.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant Merck for damages in a sum in excess of the jurisdictional requirement of this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

### THIRD CAUSE OF ACTION

### [Negligence - Merck]

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every allegation in paragraphs 1 through 53, inclusive, of this Original Complaint.

54.    At all times herein mentioned, Merck had a duty to properly design, manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings, and take such steps to assure that the product Fosamax did not cause users to suffer from unreasonable and dangerous side effects. Merck owed Plaintiffs this duty. Merck breached this duty by:

a.    failing to properly and thoroughly test Fosamax before releasing the drug to market;

b.    failing to properly and thoroughly analyze the data resulting from the pre-marketing tests of Fosamax;

PERSONAL INJURY COMPLAINT

Page 16 of 28