c.      failing to conduct sufficient post-market testing and surveillance of Fosamax;

d.      designing, manufacturing, marketing, advertising, distributing and selling Fosamax to consumers, including Plaintiffs, without adequate warning of the significant and dangerous risks of Fosamax and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug;

e.      failing to exercise due care when advertising and promoting Fosamax; and

f.      negligently continuing to manufacture, market, advertise, and distribute Fosamax after Merck knew or should have known of its adverse effects without providing an adequate warning of the known or knowable side-effects of Fosamax.

55.     At all times herein mentioned, Merck knew, or in the exercise of reasonable care should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was likely to injure the product's user.

56.     Defendant Merck so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, and supplied the aforesaid product that it was dangerous and unsafe for the use and purpose for which it was intended.

57.     Defendant Merck negligently failed to warn of the nature and scope of dangers associated with Fosamax.

58.     Defendant Merck was aware of the probable consequences of the aforesaid conduct. Despite the fact that Merck knew or should have known that Fosamax caused serious injuries, it failed to disclose the known or knowable risks associated with the product as set forth

PERSONAL INJURY COMPLAINT

above. Defendant Merck willfully and deliberately failed to avoid those consequences, and in doing so, Merck acted with a conscious disregard of the safety of Plaintiffs.

59.    In all the above actions, Merck had a duty to act as a reasonable and prudent pharmaceutical manufacturer of a prescription drug, breached this duty by failing to act as a reasonable and prudent pharmaceutical manufacturer of a prescription drug, and by breaching the standard of care proximately caused the Plaintiffs to suffer physical injuries and other damages. As a result of the carelessness and negligence of Defendant Merck alleged herein and in such other ways to be later shown, the aforesaid product caused Plaintiffs to sustain injuries as herein alleged. WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant Merck for damages in a sum in excess of the jurisdictional requirement of this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

### FOURTH CAUSE OF ACTION

#### [Breach of Implied Warranty -- Both Defendants]

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every allegation in paragraphs 1 through 59, inclusive, of this Original Complaint.

60.    At all times mentioned herein, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold the aforesaid product, and prior to the time it was provided to Plaintiffs, Defendants impliedly warranted to Plaintiffs that the product was of merchantable quality and safe for the use for which it was intended.

61.    Plaintiffs reasonably relied on the skill and judgment of the Defendants in using the aforesaid product.

PERSONAL INJURY COMPLAINT

62.    The product was unsafe for its intended use and was not of merchantable quality, as warranted by Defendants in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. As a direct and proximate result of the Defendants' breach of warranty, the Plaintiffs sustained damages as alleged herein.

63.    The aforesaid product did cause Plaintiffs to sustain injuries and caused Plaintiffs to sustain damages as herein alleged.

64.    After Plaintiffs were made aware that Plaintiffs' injuries were a result of the aforesaid product, notice was impractical due to the nature of the injuries and thus, the filing of suit gives notice.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendants for damages in a sum in excess of the jurisdictional requirement of this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

## FIFTH CAUSE OF ACTION

### [Breach of Express Warranty - Merck]

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every allegation in paragraphs 1 through 64, inclusive, of this Original Complaint.

65.    The aforementioned manufacturing, compounding, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandizing, advertising, promoting, supplying and selling of the aforesaid product was expressly warranted to be safe for use by Plaintiffs and other members of the general public.

PERSONAL INJURY COMPLAINT                                    Page 19 of 28

66.    Defendant Merck expressly warranted that Fosamax was safe. Upon information and belief, these warranties were included in numerous advertisements to the public, documents prepared for physicians, documents prepared for the public and were also spoken directly to physicians by agents of Defendant Merck. Upon information and belief, Defendant Merck knew or reasonably should have known that consumers would have directly reasonably relied on these representations and/or that consumers would have indirectly reasonably relied on these representations in that their physicians would reasonably rely on these representations, and that consumers would rely on the prescription advice of their physicians acting as either their agent, fiduciary or intermediary and who were directly acting based on these fraudulent representations.

67.    Fosamax failed to conform to the Defendant's warranties because Fosamax was not safe.

68.    At the time of the making of the express warranties, Defendant Merck had knowledge of the purpose for which the aforesaid product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

69.    Upon information and belief, Plaintiffs and Plaintiffs' physicians reasonably relied upon the skill and judgment of Defendant Merck, and upon said express warranty, in using the aforesaid product. The warranty and representations were untrue in that the product caused severe injury to Plaintiffs and was unsafe and, therefore, unsuited for the use for which it was intended. The aforesaid product could and did thereby cause Plaintiffs to sustain injuries and Plaintiffs sustained damages as herein alleged.

70.    As soon as the true nature of the product, and the fact that the warranty and

Defendant misrepresented the safety of the product, represented that the product marketed was safe for treating osteoporosis, and concealed warnings of the known or knowable risks of injury in using the product.

74.    When Defendant Merck made these representations – about material facts - it knew that they were false.  Defendant made said representations with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to act in the manner herein alleged.  Upon information and belief, Defendant Merck knew or reasonably should have known that consumers would have directly reasonably relied on these representations and/or that consumers would have indirectly reasonably relied on these representations in that their physicians would reasonably rely on these representations, and that consumers would rely on the prescription advice of their physicians acting as either their agent, fiduciary or intermediary and who were directly acting based on these fraudulent representations.

75.    At the time Merck made the aforesaid representations, and at the time Plaintiffs took the actions alleged herein, upon information and belief, Plaintiffs and Plaintiffs' physicians were ignorant of the falsity of these representations, reasonably believed them to be true, and relied upon them.  Upon information and belief, in reliance upon said representations, Plaintiffs were induced to, and did, use the aforesaid product as herein described.  Plaintiffs' reasonable reliance on the deceptive statements resulted in Plaintiffs' injuries.

76.    If Plaintiffs had known the actual facts, Plaintiffs would not have taken such action.

77.    The reliance of Plaintiffs and Plaintiffs' physicians on Defendant Merck's representations was justified and reasonable because said representations were made by individuals and entities that appeared to be in a position to know the true facts.

**PERSONAL INJURY COMPLAINT**                                        Page 22 of 28

78.    As a result of Merck's fraud and deceit, Plaintiffs were caused to sustain the herein described injuries.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant Merck for damages in a sum in excess of the jurisdictional requirement of this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

## SEVENTH CAUSE OF ACTION

### [Fraud by Concealment – Merck]

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every allegation in paragraphs 1 through 78, inclusive, of this Original Complaint, and for cause of action alleges as follows:

79.    At all times mentioned herein, Defendant Merck had the duty and obligation to disclose to Plaintiffs and to Plaintiffs' physicians, the true facts concerning the aforesaid product, specifically that said product was dangerous and defective and how likely it was to cause serious consequences to users, including injuries and death, and how unnecessary it was to use said product for the purposes indicated when considering alternative methods of treatment.  Defendant made affirmative representations as set forth herein to Plaintiffs, Plaintiffs' physicians and the general public prior to the date Fosamax was provided to Plaintiffs, while concealing material facts mentioned herein.

80.    At all times mentioned herein, Defendant had the duty and obligation to disclose to Plaintiffs and Plaintiffs' physicians the true facts concerning the aforesaid product; that is, that use would cause injuries including but not limited to osteonecrosis and/or osteochemonecrosis.

PERSONAL INJURY COMPLAINT                                              Page 23 of 28

81.   At all times herein mentioned, Defendant Merck intentionally, willfully and maliciously concealed or suppressed the facts set forth herein from Plaintiffs and Plaintiffs' physicians with the intent to defraud as herein alleged.

82.   At all times herein mentioned, neither Plaintiffs nor Plaintiffs' physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have used the product.

83.   As a result of the concealment or suppression of the facts set forth above, Plaintiffs suffered injuries as set forth herein.

84.   That at all times herein mentioned, Defendant intentionally and willfully concealed or suppressed the facts set forth herein from Plaintiffs' physicians and therefore from Plaintiffs, with the intent to defraud Plaintiffs as herein alleged.

85.   At all times herein mentioned, neither Plaintiffs nor Plaintiffs' physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, Plaintiffs would not have ingested Fosamax.

86.   As a result of the concealment or suppression of the facts set forth above, Plaintiffs suffered injuries as set forth herein.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant Merck for damages in a sum in excess of the jurisdictional requirement of this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

## EIGHTH CAUSE OF ACTION

### [Unjust Enrichment – Both Defendants]

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every

PERSONAL INJURY COMPLAINT

allegation in paragraphs 1 through 86, inclusive, of this Original Complaint, and for cause of action

allege as follows:

87.    As a direct, proximate, and foreseeable result of Defendants' acts and

otherwise wrongful conduct, Plaintiffs were gravely harmed.  Defendants profited and benefited

from the sale of Fosamax, even as it injured Plaintiffs.

88.    Defendants have voluntarily accepted and retained these profits and benefits

derived from consumers, including Plaintiffs, with full knowledge and awareness that, as a result of

its unconscionable and intentional wrongdoing, consumers, including Plaintiffs, were not receiving

products of the quality, nature, fitness or value that had been represented by Defendants or that

reasonable consumers expected.  Plaintiffs purchased and ingested medicine that they expected

would improve their health, and instead found their health destroyed.

89.    By virtue of the conscious wrongdoing alleged in this Complaint, Defendants

have been unjustly enriched at the expense of Plaintiffs, who are entitled to in equity, and hereby

seek, the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the

extent, and in the amount deemed appropriate by the Court; and such other relief as the Court deems

just and proper to remedy Defendants' unjust enrichment.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs'

favor and against Defendants for damages in a sum in excess of the jurisdictional requirement of

this Court; for Plaintiffs' costs herein incurred; for such other and further relief as this Court deems

just and proper; and demands that the issues herein contained be tried by a jury.

## PUNITIVE AND/OR EXEMPLARY DAMAGES

90.    Clear and convincing evidence exists that the above described actions of

Defendant Merck was committed oppressively, fraudulently or with malice or oppression.  The

**PERSONAL INJURY COMPLAINT**                                          Page 25 of 28

wrongful conduct for which Plaintiffs seek punitive damages was committed knowingly and/or authorized or ratified by an officer, director or managing agent of the Corporation. Therefore, Plaintiffs specifically request that the Court submit jury questions on issues of Defendant Merck's conduct to support punitive and/or exemplary damages in the maximum amount allowed by California law.

## COMPENSATORY DAMAGES

91.     As a direct and proximate result of the actions of Defendants, Plaintiffs have suffered the following damages in excess of the jurisdictional requirements of this court:

a.     Medical expenses incurred in the past and those reasonable and necessary expenses to be incurred in the future;

b.     Lost wages and earnings, past and future;

c.     Physical pain and suffering endured in the past and that likely to be suffered in the future;

d.     Mental anguish and emotional distress suffered in the past and that likely to be suffered in the future;

e.     Physical impairment suffered in the past and that likely to be suffered in the future;

f.     Disfigurement, past and future;

g.     Purchase costs;

h.     Such other damages to which Plaintiffs are entitled in law or equity.

## LOSS OF CONSORTIUM

92.     At all times relevant hereto, Plaintiff Tom Paxton was married to Plaintiff Cora Paxton and were and are now husband and wife.

PERSONAL INJURY COMPLAINT                                       Page 26 of 28

93.    Prior to the negligence and wrongful conduct of Defendants, and each of them as set forth above, Plaintiff Cora Paxton was able to and did perform her normal and typical duties as a wife. Subsequent to the severe and disabling injuries suffered by Plaintiff Cora Paxton as a result of said negligence and wrongful conduct, and as a direct and legal result of the injuries caused thereby, she has been unable to perform her normal and typical duties as wife. As a direct and legal result of Cora Paxton's inability to perform her duties, Plaintiff Tom Paxton has suffered a loss of consortium as defined by law, including the loss of his wife's physical assistance in the operation and maintenance of their home, and he has further been deprived of and will in the future be deprived of his wife's comfort, society, solace and support. By reason thereof, Plaintiff Tom Paxton has been deprived of Plaintiff Cora Paxton's necessary duties as a wife, all to his further damage in a sum in excess of the jurisdictional limits of this Court. Plaintiff Tom Paxton is informed and believes, and based thereon alleges, that the injuries sustained by Plaintiff Cora Paxton will result in some permanent deprivation of her work and services as a wife, all to his further damage.

94.    As an actual, legal and direct result of the negligence of the Defendant, Plaintiff Tom Paxton has suffered damage.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief from Defendant as follows:

95.    In support of said damages, Plaintiffs incorporate by reference all preceding and following paragraphs as if fully set forth herein and further allege as follows:

a)    For general damages in a sum in excess of the jurisdictional minimum of this Court;

b)    For special damages in a sum in excess of the jurisdictional minimum of this

Court;

c)   For compensatory damages in excess of the jurisdictional minimum of this

Court;

d)   For consequential damages in excess of the jurisdictional minimum of this

Court, according to proof;

e)   Medical, incidental, and hospital expenses according to proof;

f)   Future medical, incidental and hospital expenses according to proof;

g)   Prejudgment and post judgment interest as provided by law;

h)   Full refund of all purchase costs Plaintiffs paid for Fosamax;

i)   Punitive damages;

j)   Attorneys' fees, expenses and costs of this action; and

k)   Such further relief as this Court deems necessary, just and proper

**DEMAND FOR JURY TRIAL**

96.   Plaintiffs demand a jury trial in this action.

DATED: July 11, 2007

FEINBERG GRANT MAYFIELD KANEDA & LITT, LLP

By:   _____

Joseph Kaneda, Esq. SBN 160336
2 San Joaquin Plaza, Suite 180
Newport Beach, CA 92660

*Of Counsel:*

William B. Curtis, Esq., TX SBN 00783918
Alexandra V. Boone, Esq., TX SBN 00795259
MILLER CURTIS & WEISBROD, L.L.P.
11551 Forest Central Dr., Suite 300
Dallas, TX 75243

**EXHIBIT "5"**

FILED        ENTERED
LODGED        RECEIVED

NOV 27 2002

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE
(PPA) PRODUCTS LIABILITY
LITIGATION,

MDL NO. 1407

ORDER DENYING PLAINTIFF'S
MOTION TO REMAND

This document relates to:

Barnett, et al. v. American
Home Products Corp., et al.,
(NO. C02-423R)

THIS MATTER comes before the court on the motion of plain-
tiffs to remand the case to state court in Mississippi. Having
reviewed the papers filed in support of and in opposition to this
motion, the court rules as follows:

I.  BACKGROUND

Plaintiffs purchased a variety of over-the-counter drugs
including, but not limited to, products sold under the trade
names "Robitussin," "Alka-Seltzer Plus," "Dimetapp," "Tavist D,"
"BC," "Triaminic," "Contac," "Comtrex," and "Equate Tussin CF."
All of these products contained the ingredient phenylpro-
panolamine ("PPA"). The individuals later consumed the medica-
tion and suffered unidentified types of injuries. In June 2001,
plaintiffs filed an amended complaint in Mississippi state court
linking the PPA in the medicine with the injuries sustained.

ORDER
Page - 1 -

1  The complaint alleges numerous causes of action against both
2  manufacturers and distributors of PPA-containing products, as
3  well as several retail stores that sold those products.  One of
4  the stores named as a defendant, Bill's Dollar Stores, Inc.,
5  d/b/a Bill's Dollar Store ("Bill's Dollar Store"), is a Missis-
6  sippi corporation.  Two of the six total plaintiffs purchased
7  PPA-containing products from Bill's Dollar Store.[1]
8      Defendants removed the complaint to federal court alleging
9  that plaintiffs fraudulently joined Bill's Dollar Store.  Plain-
10 tiffs moved to remand to state court.  The case was later trans-
11 ferred to this court as part of a multi-district litigation
12 ("MDL").
13              II.  ANALYSIS
14     A plaintiff cannot defeat federal jurisdiction by fraudu-
15 lently joining a non-diverse party.  As an MDL court sitting in
16 the Ninth Circuit, this court applies the Ninth Circuit's fraudu-
17 lent joinder standard to the motion to remand.  See, e.g., In re
18 Diet Drugs Prods. Liab. Litig., 220 F. Supp. 2d 414, 423 (E.D.
19 Pa. 2002); In re Bridgestone/Firestone, 294 F. Supp. 2d 1169,
20 1182 n.2 (S.D. Ind. 2002); In re Tobacco/Gov'tal Health Care
21 Costs Litig., 100 F. Supp. 2d 31, 38 n.1 (D. D.C. 2000); In re

22 ─────────────────────
23      [1] Defendants assert the misjoinder of these plaintiffs'
24 claims and request that the court sever and deny remand as to the
    four plaintiffs who did not purchase any products from Bill's
    Dollar Store, or from any other Mississippi store.  However,
25 because, as discussed below, the court denies remand as to all
    plaintiffs named in this action, the court need not address the
26 question of misjoinder at this time.

ORDER
Page - 2 -

1  Ford Motor Co. Bronco II Prods. Liab. Litig., MDL-991, 1996 U.S.
2  Dist. LEXIS 6769, at *2-4 (E.D. La. May 16, 1996).[3] Under this
3  standard, joinder of a non-diverse party is deemed fraudulent
4  "'[i]f the plaintiff fails to state a cause of action against a
5  resident defendant, and the failure is obvious according to the
6  settled rules of the state.'" Morris v. Princess Cruises, Inc.,
7  236 F.3d 1061, 1067 (9th Cir. 2001) (quoting McCabe v. General
8  Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)).[2]
9       The propriety of removal to federal court is determined from
10 the allegations in the complaint at the time of removal. See
11 Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998)
12 However, in the case of fraudulent joinder, the defendant "'is
13 entitled to present the facts showing the joinder to be fraudu-
14 lent.'" Id. (quoting McCabe, 811 F.2d at 1339). See also Morris
15
16     [1] See generally Mankowitz v. Brown, 991 F.2d 36, 40-41 (2d
17     Cir. 1993); In Re Korean Airlines Disaster, 829 F.2d 1171, 1174-
       76 (D.C. Cir. 1987).
18     [2] However, as a practical matter, application of the Fifth
19     Circuit's fraudulent joinder standard would not alter the court's
       conclusions. See Hacko v. RJR Nabisco, Inc., 224 F.3d 382, 383
20     (5th Cir. 2000) (remand is denied where there is "no reasonable
       basis for predicting that plaintiffs might establish liability .
21     . . against the in-state defendants.") For example, recent MDL
       courts utilized fraudulent joinder standards similar, and in one
22     case identical, to the Fifth Circuit's standard in deeming
       Mississippi pharmacies and their employees fraudulently joined
23     for reasons similar to those expressed in this opinion. See In
       re Diet Drugs Prods. Liab. Litig., 220 F. Supp. at 423-24
24     (noting that there had been "a pattern of pharmacies being named
       in complaints, but never pursued to judgment, typically being
25     voluntarily dismissed at some point after the defendants' ability
       to remove the case has expired"); In re Rezulin Prods. Liab.
26     Litig., 133 F. Supp. 2d 272, 279 & n.9, 290-92 (S.D.N.Y. 2001).

   ORDER
   Page - 3 -

1  236 F.3d at 1067-68 (citing Cavallini v. State Farm Mut. Auto.

2  Ins. Co., 44 F.3d 256, 263 (5th Cir. 1995) for the proposition

3  that the court may "'pierc[e] the pleadings'" and consider

4  "summary judgment-type evidence.")

5      Defendants allege that plaintiffs fraudulently joined Bill's

6  Dollar Store, while plaintiffs claim the existence of legitimate

7  causes of action against Bill's Dollar Store, including products

8  liability, negligence, misrepresentation, and implied warranty

9  claims.  The parties also argue as to the relevance of a bank-

10  ruptcy petition filed by Bill's Dollar Store prior to the filing

11  of this suit.

12  A.   Products Liability

13      The complaint contains failure to warn and design defect

14  allegations pursuant to the Mississippi Products Liability Act.

15  Miss. Code Ann. § 11-1-63.  Under the Products Liability Act,

16  plaintiff must show that at the time the product left the control

17  of the manufacturer or seller, it was defective in failing to

18  contain adequate warnings or instructions, and/or was designed in

19  a defective manner.  Miss. Code Ann. § 11-1-63 (a)(i)(2)-(3).

20  Plaintiff must also show that the manufacturers and sellers knew,

21  or in light of reasonably available knowledge or the exercise of

22  reasonable care should have known, about the danger that caused

23  the alleged damage.  Miss. Code Ann. § 11-1-63 (c)(i), (f)(i).[4]

24  _____

25  [4] See also Huff v. Shopsmith, Inc., 786 So.2d 383, 387 (Miss.
   2001) ("With the adoption of 11-1-63, common law strict liability,
26  as laid out in State Stove Mfg. Co. v. Hodges, 189 So.2d 113

ORDER
Page - 4 -

1    Plaintiffs allege in the complaint that "defendants" or "all

2  defendants" knew or should have known of dangers associated with

3  PPA. Moreover, plaintiffs specifically aver this knowledge or

4  reason to know on the part of the retailer defendants, including

5  Bill's Dollar Store. However, the court finds that no factual

6  basis can be drawn from the complaint that Bill's Dollar Store

7  had knowledge or reason to know of any dangers allegedly associ-

8  ated with PPA.

9    First, the complaint utilizes the plural "defendants" in a

10  number of allegations that one could not reasonably interpret to

11  include Bill's Dollar Store. See, e.g., Louis v. Wyeth-Ayerst

12  Pharm., Inc., No. 5:00CV102LN, slip op. at 5-9 (S.D. Miss. Sep.

13  25, 2000) (finding products liability allegations lodged against

14  "defendants" conclusory where there was no factual support for

15  conclusion that Mississippi pharmacies had knowledge or reason to

16  know of alleged dangers associated with various diet drugs)."

17  ————————————————————————————————

18  (Miss, 1956), is no longer the authority on the necessary
   elements of a products liability action.")

19    'See also In re Diet Drugs Prods. Liab. Litig., 220 F. Supp.

20  2d at 424 (finding complaints, including failure to warn,
   negligence, breach of warranty, and strict liability claims,

21  devoid of specific allegations against Mississippi pharmacies and
   "filled instead with general statements levied against all

22  defendants, which most properly can be read as stating claims
   against drug manufacturers."); In re Rezulin Products Liab.

23  Litig., 133 F. Supp. 2d at 291 (finding improper joinder in case

24  where Mississippi pharmacies were lumped in with manufacturers
   and acts alleged, including failure to warn, breach of warranty,

25  and fraud, were attributed to "'defendants' generally", but
   never connected to the pharmacies); accord Aaron, 224 F.3d at

26  391-93 ("While the amended complaint does often use the word

DKDFR
Page - 5 -

1  For example, the complaint describes "defendants" as members of

2  the Non-Prescription Drug Manufacturers Association ("NDMA").

3  Through this association, "defendants" purportedly participated

4  in numerous discussions relating to the safety of PPA over the

5  past two decades, had representatives sit on the NDMA PPA task

6  force, and funded relevant studies.  In other words, plaintiffs,

7  in significant part, demonstrate "defendants'" knowledge as to

8  risks allegedly posed by PPA through activities engaged in by

9  manufacturer defendants alone.

10      Indeed, while "defendants" are alleged to have been aware of

11  to have had responsibility for awareness of numerous scientific

12  journal articles, incident reports, medical textbooks, and other

13  reports containing information as to risks of PPA consumption,

14  general medical practitioners are excluded from this awareness

15  and described as being not "fully informed."  The complaint

16  supplies no factual support for a conclusion that a dollar store

17  possessed medical and scientific knowledge beyond that possessed

18  by medical practitioners.

19      Second, the complaint specifically lays the responsibility

20  for allegedly concealing dangers posed by PPA on the manufacturer

21  defendants.  For example, the complaint alleges that the manufac-

22  turer defendants concealed material facts regarding PPA through

23  product packaging, labeling, advertising, promotional campaigns

24  _____

25  'defendants,' frequently it is evident that such usage could not

26  be referring to the 'Tobacco Wholesalers.'"; finding conspiracy
    allegations against Louisiana defendants entirely general).

ORDER
Page - 6 -

1  and materials, and other methods.  This allegation directly
2  undermines and contradicts the idea that Bill's Dollar Store had
3  knowledge or reason to know of alleged defects.  See, e.g.,
4  Lewis, slip op. at 4-5 (finding complaint's "major theme" to
5  consist of the "manufacturers' intentional concealment of the
6  true risks of the drug(s), coupled with dissemination through
7  various media of false and misleading information of the safety
8  of the drug(s) at issue, [which belied] any suggestion of knowl-
9  edge, or reason to know by [the] resident defendants."); Cf. In re
10  Rezulin Products Liab. Litig., 133 F. Supp. 2d 272, 290 (S.D.N.Y.
11  2001) (finding Mississippi pharmacies facing failure to warn
12  claims fraudulently joined where "the theory underlying the
13  complaints [was] that the manufacturer defendants hid the dangers
14  of Rezulin from plaintiffs, the public, physicians, distributors
15  and pharmacists -- indeed from everyone.")
16      In sum, the court concludes that one could not reasonably
17  read the complaint to support the idea that the retailer defen-
18  dants had knowledge or reason to know of any dangers allegedly
19  associated with PPA.  Indeed, reading the complaint as a whole,
20  this allegation reveals itself as directed towards the manufac-
21  turer defendants alone.  As such, the court finds that plaintiffs
22  fail to state a products liability cause of action against Bill's
23  Dollar Store.[6]
24  _____
25      [6] The complaint once alludes to an "alternative" breach of
26  express warranty claim under the Products Liability Act.  See
    Miss. Code Ann. § 11-1-63 (a)(1)(d) (requiring a showing that the

ORDER
Page - 7 -

B.  **Negligence and Misrepresentation**

The complaint alleges negligence and misrepresentation by Bill's Dollar Store.  A negligence cause of action also requires a showing of knowledge or reason to know on the part of the seller.  See, e.g., R. Clinton Constr. Co. v. Bryant & Reaves, Inc., 442 F. Supp. 838, 861 (N.D. Miss. 1977) ("The rule is well settled that in order to fasten liability upon a party for negligence, it must be shown by a preponderance of the evidence that he knew or through the exercise of reasonable care should have known that his selection of a [product] would cause damage to his customer.")[7]  A misrepresentation cause of action requires

_____

seller breached an express warranty or failed to conform to other express factual representations upon which the claimant relied. However, the products liability allegations go on to touch solely upon failure to warn and design defect claims.  Because the complaint lacks any factual basis for support of a breach of express warranty claim against Bill's Dollar Store, the court also finds this bare allegation insufficient to support remand.

[7] Accord Louis, slip op. at 3-4 & n.3 ("[K]nowledge, or a reason to know, is also a necessary requisite for any claim of failure to warn or negligence that a plaintiff might undertake to assert extraneous to a claim under the Products Liability Act itself (assuming solely for the sake of argument that such a claim could exist).")  Cadillac Corp. v. Moore, 320 So.2d 361, 365 (Miss. 1975) (discussing negligence in "vendor/purchaser" context and stating that "fault on the part of a defendant so as to render him liable is to be found in action or connection, accompanied by knowledge, actual or implied, of the probable result of his conduct.")  Cf. Moore v. Memorial Hosp. of Gulfport, 825 So.2d 658, 664-65 (Miss. 2002) (extending "learned intermediary" doctrine to pharmacists in case involving prescription drug, and holding no actionable negligence claim could exist against a pharmacy unless a plaintiff indisputably informed the pharmacy of health problems which contraindicated the use of the drug in question, or the pharmacist filled

ORDER
Page - 8 -

1   a plaintiff to show:

2      (1) a representation; (2) its falsity; (3) its materi-
      ality; (4) the speaker's knowledge of its falsity or
3     ignorance of its truth; (5) the speaker's intent that
      the representation should be acted upon by the hearer
4     and in the manner reasonably contemplated; (6) the
      hearer's ignorance of its falsity; (7) the hearer's
5     reliance on its truth; (8) the hearer's right to rely
      thereon; and (9) the hearer's consequent and proximate
6     injury.

7   Johnson v. Parke-Davis, 114 F. Supp. 2d 522, 525 (S.D. Miss.

8   2000) (citing Allen v. Mac Tools, Inc., 671 So.2d 636, 642 (Miss.

9   1996)).

10      Again, the court finds that the general and contradictory

11   allegations in the complaint do not support the existence of any

12   knowledge or reason to know on the part of Bill's Dollar Store to

13   support a negligence cause of action.  The court finds the

14   complaint similarly bereft of any factual support for the idea

15   that Bill's Dollar Store made any misrepresentations whatsoever

16   to plaintiffs regarding the PPA-containing products.  See, e.g.,

17   Johnson, 114 F. Supp. 2d at 525 ("Suffice it to say that Plain-

18   tiffs have no proof . . . that any of the named [Mississippi]

19   representatives made any representations directly to any of the

20   Plaintiffs.  Thus, none of the Plaintiffs saw the 'hearer' of any

21   of the sales representatives' alleged misrepresentations.";

22   finding plaintiffs had no cause of action for misrepresentation).

23   Instead, as discussed above, the complaint attributes this

24

25
    prescriptions in quantities inconsistent with the recommended
26   dosage guidelines].

  ORDER
  Page - 9 -

1  behavior to the manufacturing defendants alone.  As such, the

2  court also finds that plaintiffs fail to state negligence and

3  misrepresentation causes of action against Bill's Dollar Store.

4  C.  Implied Warranty

5      The complaint also alleges that Bill's Dollar Store breached

6  implied warranties of merchantability and fitness for particular

7  purpose.  See Miss. Code Ann. §§ 75-2-314, 315.  The complaint

8  accuses "defendants" of breaching the implied warranty of mer-

9  chantability in failing to adequately label containers and

10  packages containing PPA, and because the products sold failed to

11  conform to promises or affirmations of facts made on the contain-

12  ers or labels.  See Miss. Code Ann. § 75-2-314 (2)(e)-(f).  The

13  complaint accuses both manufacturers and sellers of breaching the

14  implied warranty of fitness for particular purpose where they had

15  reason to know of the particular use of the products, and the

16  purchasers relied on the sellers' skill or judgment in selecting

17  and furnishing suitable and safe products.  See Miss. Code Ann. §

18  75-2-315.

19      In order to recover for breach of implied warranty, a buyer

20  "must within a reasonable time after he discovers or should have

21  discovered any breach notify the seller of breach or be barred

22  from any remedy."  Miss. Code Ann. § 75-2-607 (3)(a); accord C.R.

23  Daniels, Inc. v. Yazoo Mfg. Co., 641 F. Supp. 205, 210-11 (S.D.

24  Miss. 1986); Hart v. Rogers-Dingus Chevrolet, 585 So. 2d 725,

25  730-31 (Miss. 1991).  Here, the complaint contains no indication

26  that plaintiffs provided Bill's Dollar Store with any notice as

ORDER
Page - 10 -

1   to an alleged breach of warranty prior to the institution of this
2   lawsuit.
3       Additionally, with respect to the merchantability claim, the
4   complaint contains no factual support for a conclusion that
5   Bill's Dollar Store was in any way involved with the labeling
6   and/or packaging of the products at issue.  Instead, the com-
7   plaint alleges that the manufacturer defendants concealed mate-
8   rial facts regarding PPA through product packaging and labeling.
9       The court likewise finds plaintiffs' fitness for particular
10  purpose allegation insufficient.  "Mississippi does not recognize
11  an implied warranty of fitness for a particular purpose when the
12  good is purchased for the ordinary purpose of a good of that
13  kind."  Farris v. Coleman Co., 121 F. Supp. 2d 1014, 1018 (N.D.
14  Miss. 2000) (fitness for particular purpose claim failed where
15  plaintiff purchased cooler to keep food and beverages cold - the
16  ordinary purpose for which a cooler is used).  Here, plaintiffs
17  attested that they purchased PPA-containing products to remedy
18  their "cold, flu, sinus and/or allergy symptoms" - the ordinary
19  purpose of these medications.
20      Therefore, for the reasons stated above, the court finds
21  that plaintiffs fail to state implied warranty causes of action
22  against Bill's Dollar Store.
23  D.   Bankruptcy
24      Bill's Dollar Store filed a bankruptcy petition in February
25  2001, several months prior to the filing of plaintiffs' com-
26  plaint.  The filing of the bankruptcy petition operates as a stay

ORDER
Page - 11 -

1  on judicial or other proceedings brought against Bill's Dollar
2  store that were or could have commenced prior to the commencement
3  of the bankruptcy proceeding.  See 11 U.S.C. § 362(a); In re
4  Cajun Elec. Power Co-Op, Inc., 185 F.3d 446, 457 (5th Cir. 1999).

5     Plaintiffs argue that the automatic stay poses no barrier to
6  relief given that they were unaware of the bankruptcy petition at
7  the time they filed their complaint, and because they anticipate
8  that the Bankruptcy Court will agree to their pending request to
9  lift the stay.  However, whether or not plaintiffs knew of the
10  petition and whether or not the stay may later be lifted, the
11  fact remains that, at the time plaintiffs filed their complaint,
12  the stay operated to prohibit their lawsuit.  As noted above, the
13  court determines jurisdiction based on the claims as stated at
14  the time of removal.  As such, the court finds the existence of
15  the stay at the time of filing serves as an additional reason to
16  deny remand of this matter to state court.  Cf. Ritchey, 139 F.3d
17  at 1319-20 (denying remand where the statute of limitations had
18  expired at the time plaintiff filed the complaint).[4]

19               III.  CONCLUSION
20     The court concludes that plaintiffs fail to state a cause of
21  action against the only non-diverse defendant, and that the

22

23     [4]Unlike in a number of other cases transferred to this MDL,
24  the defendants here did not supply the court with any summary
     judgment-type evidence to establish the retailer defendant's
25  fraudulent joinder.  However, the court nonetheless finds that a
     plain reading of the complaint does not allow a conclusion that
26  plaintiffs state a cause of action against Bill's Dollar Store.

ORDER
Page - 12 -

1  failure is obvious according to the settled rules of Mississippi.

2  As such, the court finds Bill's Dollar Store fraudulently joined

3  and DENIES plaintiff's motion to remand the case to the state

4  courts of Mississippi.

5       DATED at Seattle, Washington this 26th day of November,

6  2002.

7                                    _____
                                     BARBARA JACOBS ROTHSTEIN
8                                    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
Page - 13 -

**EXHIBIT "6"**

APR 28 2003

CENTRAL DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| In re REZULIN LITIGATION | CASE NO. CV 03-1647-R(RZx) |
| JACKIE BARLOW; CARMA DEKOVEN; ERNESTINE DELAPONT; ZOE BUGER-MUKARVTZ; and SAMUEL GODBOULDT, | [PROPOSED] ORDER DENYING PLAINTIFFS' MOTION FOR REMAND |
| Plaintiffs, | |
| v. | |
| WARNER-LAMBERT CO.; PFIZER INC.; JERROLD OLEFSKY; McKESSON CORP., et al. | |
| Defendants. | |

Defendants removed this action from state court to this Court alleging diversity jurisdiction. Defendants asserted that Jerrold Olefsky and McKesson Corp., both of whom are California residents, were fraudulently joined. Plaintiffs moved to remand to state court. The motions came on for hearing by the Court on April 21, 2003.

Having considered the motions and other documents in support of and in opposition to the motions, having heard the arguments of counsel, and being fully advised in the matter, the Court denies the motion.

The Court finds that Dr. Jerrold Olefsky ("Dr. Olefsky"), a patent-holder and clinical investigator, owed no legal duty to any of the plaintiffs, and, therefore, there is no possibility that the plaintiffs can prove a cause of action against Dr. Olefsky. Thus, Dr. Olefsky must be disregarded for purposes of determining federal diversity

[PROPOSED] ORDER

Exhibit B  Page 16

1   jurisdiction.

2        The Court further finds that there is no possibility that plaintiffs could prove a

3   cause of action against McKesson, an entity which distributed this FDA-approved

4   medication to pharmacists in California. Pursuant to comment k of the Restatement

5   (Second) of Torts Section 402A and California law following comment k, a

6   distributor of a prescription drug is not subject to strict liability.

7        Accordingly, this Court has diversity jurisdiction over each of these actions.

8   The motion to remand is denied.

9        IT IS SO ORDERED.

10  Dated: April 28, 2003

                                    MANUEL L. REAL
11
12                                  MANUEL L. REAL
                                    UNITED STATES DISTRICT JUDGE
13

14  Submitted by:

15  O'DONNELL & SHAEFFER LLP
    633 West Fifth Street, Suite 1700
16  Los Angeles, California 90071
    Telephone: (213) 532-2000
17  Facsimile: (213) 532-2020

18  KAYE SCHOLER LLP
    1999 Avenue of the Stars
19  Los Angeles, California 90067
    Telephone: (310) 788-1000
20  Facsimile: (310) 788-1200

21  By: _____
        Robert Barnes
22  Attorneys for Defendants
    WARNER-LAMBERT COMPANY and PFIZER INC.

23

24

25

26

27

28

                                    2

Exhibit 8 Page 19

EXHIBIT "7"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re REZULIN LITIGATION | CASE NO. CV 03-1643-R(RZx) |
| DIANE SKINNER; and DIANE YBARRA,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER-LAMBERT CO.; PFIZER INC.;<br>JERROLD OLEFSKY; McKESSON CORP.,<br>et al.<br><br>Defendants. | [PROPOSED] ORDER<br>DENYING PLAINTIFFS'<br>MOTION FOR REMAND |

Defendants removed this action from state court to this Court alleging diversity jurisdiction. Defendants asserted that Jerrold Olefsky and McKesson Corp., both of whom are California residents, were fraudulently joined. Plaintiffs moved to remand to state court. The motions came on for hearing by the Court on April 21, 2003.

Having considered the motions and other documents in support of and in opposition to the motions, having heard the arguments of counsel, and being fully advised in the matter, the Court denies the motion.

The Court finds that Dr. Jerrold Olefsky ("Dr. Olefsky"), a patent-holder and clinical investigator, owed no legal duty to any of the plaintiffs, and, therefore, there is no possibility that the plaintiffs can prove a cause of action against Dr. Olefsky. Thus, Dr. Olefsky must be disregarded for purposes of determining federal diversity jurisdiction.

1

1      The Court further finds that there is no possibility that plaintiffs could prove a

2  cause of action against McKesson, an entity which distributed this FDA-approved

3  medication to pharmacists in California. Pursuant to comment k of the Restatement

4  (Second) of Torts Section 402A and California law following comment k, a

5  distributor of a prescription drug is not subject to strict liability.

6      Accordingly, this Court has diversity jurisdiction over each of these actions.

7  The motion to remand is denied.

8      IT IS SO ORDERED.

9  Dated: April 21, 2003

10

                           MANUEL L. REAL

11                           MANUEL L. REAL

12                       UNITED STATES DISTRICT JUDGE

13  Submitted by:

14  O'DONNELL & SHAEFFER LLP
     633 West Fifth Street, Suite 1700
15  Los Angeles, California 90071
     Telephone:  (213) 532-2000
16  Facsimile:  (213) 532-2020

17  KAYE SCHOLER LLP
     1999 Avenue of the Stars
18  Los Angeles, California 90067
     Telephone:  (310) 788-1000
19  Facsimile:  (310) 788-1200

20  By: _____
       Robert Barnes
21  Attorneys for Defendants
     WARNER-LAMBERT COMPANY and PFIZER INC.

22

23

24

25

26

27

28

**EXHIBIT "8"**

with the United States District Court, Northern District of California. In its removal

petition, Bayer asserts that Plaintiff failed to state a cause of action against Longs Drug,

and that the court therefore had jurisdiction over Plaintiff's Complaint, based on

diversity of citizenship under 28 U.S.C. § 1332(a). Bayer contends that fraudulently

joined defendants will not defeat diversity jurisdiction.

On October 12, 2001, Plaintiff filed a First Amended Complaint in California state

court. In the Amended Complaint, Plaintiff withdrew her products liability claim

against Longs Drug, adding a professional negligence claim in its place.

Standard

Remand to state court is proper if the district court lacks subject matter

jurisdiction over the asserted claims. 28 U.S.C. § 1447(c). In reviewing a motion to

remand, the court must resolve all doubts in favor of a remand to state court, and the

party opposing remand has the burden of establishing federal jurisdiction by a

preponderance of the evidence. In re Business Men's Assurance Co. of America, 992

F.2d 181, 183 (8th Cir. 1993)(citing Steel Valley Auth. v. Union Switch & Signal Div., 809

F.2d 1006, 1010 (3rd Cir. 1987) cert. dismissed 484 U.S. 1021 (1988)).

Fraudulently joined defendants will not defeat diversity jurisdiction. Ritchey v.

Upjohn Drug Company, 139 F.3d 1313, 1318 (9th Cir. 1998). "Fraudulent joinder exists

if, on the face of plaintiff's state court pleadings, no cause of action lies against the

resident defendant." Anderson v. Home Insurance Company, 724 F.2d 82, 84 (9th Cir.

1983). Dismissal of fraudulently joined non-diverse defendants is appropriate. Wilco v.

Capitol Indemnity Corp., 280 F.3d 866, 871 (8th Cir. 2002).

Initially, in determining the propriety of remand, the Court must review

plaintiff's pleading at the time of the petition for removal. Pullman Co. v. Jenkins, 305

2

U.S. 534, 537 (1938). In addition, a plaintiff may not amend her complaint in order to state a claim against a nondiverse defendant in order to divest the federal court of jurisdiction. Cavallini v. State Farm Mutual Auto Insurance Co., 44 F.3d 256, 265 (Fed. Cir. 1995). See also, Henderson v. Shell Oil Co., 173 F.2d 840, 842 (8th Cir. 1949)(federal court has power to amend petition after removal, but such power does not extend to elimination of jurisdictional defects present in the state court action). The Court will thus look to the original Complaint to determine whether Longs Drug has been fraudulently joined.[1]

If a plaintiff fails to state a cause of action against a non-diverse defendant, and the failure is obvious according to settled rules of law of the state in which the action was brought, the joinder of the non-diverse defendant is deemed to be fraudulent. Ritchey v. Upjohn Drug Company, 139 F.3d 1313, 1318 (9th Cir. 1998). Bayer argues that a retail pharmacy cannot be held strictly liable for injuries caused by a defective drug pursuant to California law. Murphy v. E.R. Squibb & Sons, Inc., 40 Cal.3rd 672, 676-681 (1985). It appears that Plaintiff does not dispute this principle, as is evidenced by the fact that Plaintiff attempted to amend her Complaint to withdraw this cause of action against Longs Drug. In addition, Bayer argues that Plaintiff's negligence claim against Longs Drug also fails to state a claim. The Complaint alleges that Longs Drug was negligent in failing to provide adequate warnings of the dangers posed by Baycol and that Longs Drug concealed specific knowledge concerning Baycol from Plaintiff. Complaint ¶ 35. However, the Complaint further states that Longs Drug dispensed

---

[1] Plaintiff provides the Court no authority for her argument that the Court should look to pleadings filed in state court after the case has been removed. Because Plaintiff attempted to file the First Amended Complaint in state court, after the case was removed to federal court, the filing was ineffective. Also, as an answer has been filed, Plaintiff must now seek leave of the Court to file the First Amended Complaint. Plaintiff has not done so, however.

3

Baycol to Plaintiff on March 24, 2001. Id. ¶¶ 15 and 16. The Complaint further alleges that prior to May 21, 2001, Bayer did not advise physicians and drugstores of the problems it encountered with Baycol, and did not advise physicians or drugstores that the 0.8 mg. dosage of Baycol was potentially dangerous, even fatal. Id. ¶ 13. Thus, the allegations in the Complaint defeat her negligence claim against Longs Drug, as a defendant cannot be held liable for failing to warn of unknown risks. Merrill v. Navegar, Inc., 26 Cal.4th 465, 485 (2001).

Based on the above, the Court finds that Bayer has met its burden of showing that Longs Drug was fraudulently joined, as it is obvious based on the face of the Complaint, that no cause of action was alleged against Longs Drug.[3]

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiffs' Motion to Remand is DENIED.

2.    Defendant Longs Drug Stores, Inc. is DISMISSED.

Date: May 24, 2002

_____
              /s/
        Michael J. Davis
    United States District Court

---

[3] Because the Court finds that Longs Drug was fraudulently joined, Longs Drug's failure to consent to removal does not render the petition to remove ineffective. Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193, n. 1 (9th Cir. 1988); Sonate Technology LLC v. Delle Chine Export Int'l Corp., Ltd., 199 F.Supp. 2d 1146, 1152, (N.D. Cal. 2000).

4

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, #2100, Los Angeles, California 90067.

     On July 18, 2007, I served the foregoing document(s) described as **DEFENDANT MERCK & CO., INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)** on the interested parties in this action addressed as follows:

SEE ATTACHED SERVICE LIST

☒    By placing true copies thereof enclosed in a sealed envelope(s) addressed as stated above.

    ☐    **BY PERSONAL SERVICE (CCP §1011)**:  I delivered such envelope(s) by hand to the addressee(s) as stated above.

    ☒    **BY MAIL (CCP §1013(a)&(b))**:  I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service. Under that practice such envelope(s) is deposited with the U.S. postal service on the same day this declaration was executed, with postage thereon fully prepaid at 2049 Century Park East, #2100 Los Angeles, California, in the ordinary course of business.

    ☐    **BY OVERNIGHT DELIVERY  (CCP §1013(c)&(d))**:  I am readily familiar with the firm's practice of collection and processing items for delivery with Overnight Delivery. Under that practice such envelope(s) is deposited at a facility regularly maintained by Overnight Delivery or delivered to an authorized courier or driver authorized by Overnight Delivery to receive such envelope(s), on the same day this declaration was executed, with delivery fees fully provided for at 2049 Century Park East, #2100 Los Angeles, California, in the ordinary course of business.

Executed on July 18, 2007, at Los Angeles, California

☐    **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒    **(FEDERAL)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

_Jesse Rodriguez_

15

MERCK'S NOTICE OF REMOVAL

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

# ATTACHED SERVICE LIST

Ross W. Feinberg                                    *Attorneys for Plaintiffs*
Bruce G. Mayfield
Joseph Kaneda
Feinberg Grant Mayfield Kaneda & Litt
LLP
2 San Joaquin Plaza, Suite 180
Newport Beach, California 92660

William B. Curtis
Alexandra V. Boone
Miller Curtis & Weisbrod
11551 Forest Central Drive, Suite 300
Dallas, TX 75243

Anthony G. Brazil, Esq.                             *Attorneys for Defendant McKesson*
MORRIS POLICH & PURDY                               *Corporation*
1055 W. Seventh Street, Suite 2400
Los Angeles, CA 90017
Tel:  213 891-9100
Fax: 213 488-1178

**PROOF OF SERVICE**

1

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

2

3

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, #2100, Los Angeles, California 90067.

4

5

On July 19, 2007, I served the foregoing document(s) described as **NOTICE TO SUPERIOR COURT AND TO PLAINTIFFS OF REMOVAL TO FEDERAL COURT** on the interested parties in this action addressed as follows:

6

7

SEE ATTACHED SERVICE LIST

8

9      ☒    By placing true copies thereof enclosed in a sealed envelope(s) addressed as stated above.

10

11     ☐    **BY PERSONAL SERVICE (CCP §1011):**  I delivered such envelope(s) by hand to the addressee(s) as stated above.

12     ☒    **BY MAIL (CCP §1013(a)&(b)):**  I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service.  Under that practice such envelope(s) is deposited with the U.S. postal service on the same day this declaration was executed, with postage thereon fully prepaid at 2049 Century Park East, #2100 Los Angeles, California, in the ordinary course of business.

13

14

15

16     ☐    **BY OVERNIGHT DELIVERY  (CCP §1013(c)&(d)):**  I am readily familiar with the firm's practice of collection and processing items for delivery with Overnight Delivery.  Under that practice such envelope(s) is deposited at a facility regularly maintained by Overnight Delivery or delivered to an authorized courier or driver authorized by Overnight Delivery to receive such envelope(s), on the same day this declaration was executed, with delivery fees fully provided for at 2049 Century Park East, #2100 Los Angeles, California, in the ordinary course of business.

17

18

19

20

Executed on July 19, 2007, at Los Angeles, California

21

22     ☒    **(STATE)**  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23     ☐    **(FEDERAL)**  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

24

25

26

27                                              Jesse Rodriguez

28

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

**ATTACHED SERVICE LIST**

Ross W. Feinberg                          *Attorneys for Plaintiffs*
Bruce G. Mayfield
Joseph Kaneda
Feinberg Grant Mayfield Kaneda & Litt LLP
2 San Joaquin Plaza, Suite 180
Newport Beach, California 92660

William B. Curtis
Alexandra V. Boone
Miller Curtis & Weisbrod
11551 Forest Central Drive, Suite 300
Dallas, TX 75243

Anthony G. Brazil, Esq.                    *Attorneys for Defendant McKesson*
MORRIS POLICH & PURDY                      *Corporation*
1055 W. Seventh Street, Suite 2400
Los Angeles, CA  90017
Tel:  213 891-9100
Fax:  213 488-1178

NOTICE OF REMOVAL TO FEDERAL COURT

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28