Ross W Feinberg, Esq SBN 117940
Bruce G Mayfield, Esq SBN 57730
Joseph Kaneda, Esq SBN 160336
**FEINBERG GRANT MAYFIELD KANEDA & LITT, LLP**
2 San Joaquin Plaza, Suite 180
Newport Beach, California 92660
Phone (949) 554-0700
Facsimile (949) 554-0707

Of Counsel
William B Curtis, Esq TX SBN 00783918
Alexandra V Boone, Esq TX SBN 00795259
**MILLER CURTIS & WEISBROD**
11551 Forest Central Drive, Suite 300
Dallas, TX 75243
Telephone (214) 987-0005
Facsimile (214) 739-4732

*Attorneys for Plaintiffs*

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 18 2007

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
    EDUARDO CHANES

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ~~CARRIE SMITH~~, CORO PAXTON AND TOM PAXTON, NILDA STRANGE, ELLEN MASSENGILL, PEGGY CREECH, MARY BENTLEY, MARY FRIEDMAN, ELLA LUZIER, ANGELINA GRBAC, EILEEN RICHARDSON, ANN NELSON, PATRICE BALLUM, MARY ANN GUEMELATA, LAURETTA TEDFORD, LEE ANN OLSON, MARGARET SCHUELLER, MARILYN RUBENZER, <br><br> **PLAINTIFFS,** <br><br> MERCK & CO., INC. and McKESSON CORPORATION, <br><br> **DEFENDANTS** | Case No. BC374219 <br><br> **PERSONAL INJURY COMPLAINT FOR:** <br><br> 1. **PRODUCT LIABILITY FAILURE TO WARN;** <br> 2. **PRODUCT LIABILITY DANGEROUS PRODUCT;** <br> 3. **NEGLIGENCE;** <br> 4. **BREACH OF IMPLIED WARRANTY;** <br> 5. **BREACH OF EXPRESS WARRANTY;** <br> 6. **FRAUD;** <br> 7 **FRAUD BY CONCEALMENT, AND** <br> 8 **UNJUST ENRICHMENT.** <br><br> **DEMAND FOR JURY TRIAL** |

## PLAINTIFFS' ORIGINAL PERSONAL INJURY COMPLAINT

## AND DEMAND FOR JURY TRIAL

COME NOW the Plaintiffs, and for their Original Personal Injury Complaint and Demand for Jury Trial against Defendants Merck & Co , Inc and McKesson Corporation, allege and aver as follows

## PRELIMINARY STATEMENT

1      This is a proceeding brought by Plaintiffs seeking damages for personal injuries suffered as a result of the Plaintiffs' ingestion of a dangerous pharmaceutical product "Fosamax"® [1]    (alendronate sodium, hereinafter "Fosamax"), which was continuously manufactured, marketed, advertised, and distributed to the general public by Defendant Merck & Co , Inc and which was distributed through the actions and conduct of Defendant McKesson Corporation

## PARTIES

**PLAINTIFFS:**

2      Each Plaintiff, listed in the chart below, was prescribed and ingested Fosamax and thereafter suffered personal injury thereby   Plaintiffs are proper parties for a single action under California's permissive joinder statute (CAL CODE CIV PRO § 378) in that each was injured through the same transactions, occurrences or series of transactions or occurrences – the manufacture, marketing, distribution and sale of Fosamax – and common questions of law or fact exist as to all Plaintiffs  See Anaya v Superior Court, 160 Cal App 3d 228 (Cal App Div 3 1984) (allowing permissive joinder of 200 injured employees of Dow Chemical Company)

| First Name | Last Name | Hometown | State |
|------------|-----------|----------|-------|
| Carrie | Smith | Los Angeles | CA |

---

[1]  Fosamax is the registered trademark of Defendant Merck & Co , Inc

**PERSONAL INJURY COMPLAINT**                                        Page 2 of 28

| Cora | Paxton | San Antonio | TX |
|------|--------|-------------|-----|
| *Tom | Paxton | San Antonio | TX |
| Nilda | Strange | Kaufman | TX |
| Ellen | Massengill | Goldsboro | NC |
| Peggy | Creech | Whiteville | NC |
| Mary | Bentley | Reynolds | GA |
| Mary | Friedman | Sound Beach | NY |
| Ella | Luzier | Davis | WV |
| Angelina | Grbac | Princeton | WV |
| Eileen | Richardson | Janesville | WI |
| Ann | Nelson | Midland | MI |
| Patrice | Ballum | Ft Mohave | AZ |
| Mary Ann | Guemelata | Bellevue | OH |
| Lauretta | Tedford | Conway | AR |
| Lee Ann | Olson | Minneapolis | MN |
| Margaret | Schueler | Rushford | MN |
| Marilyn | Rubenzer | Boomer | WI |

**DEFENDANTS**

3    At all times mentioned, Defendant Merck & Co , Inc , (hereinafter "Merck") was and is a corporation incorporated, operating and existing under the laws of incorporation, of the State of New Jersey, with its principal place of business in Whitehouse Station, New Jersey, continuously doing business in the State of California for monetary profit, and within this judicial district    At all times herein mentioned, Defendant Merck, in interstate commerce and in this judicial district, purposefully marketed, designed, manufactured, tested, analyzed, distributed, recommended, merchandised advertised, promoted, supplied and sold to distributors, and retailers for resale to physicians, hospitals, medical practitioners and the general public, a certain pharmaceutical product, hereinafter referred to as Fosamax    At all times herein mentioned, the Defendant Merck was the actor engaged in the acts herein alleged, acting through its agents and employees, and at all times, the actions and omissions asserted in this pleading were committed by

**PERSONAL INJURY COMPLAINT**                                        Page 3 of 29

agents or employees acting within the purpose and scope of said agency and/or employment, and/or all of said acts and conduct were ratified and approved by said Defendant

According to records on file with the California Secretary of State, **Defendant Merck may be served with process by and through its registered agent:**

**CT Corporation System
818 West Seventh Street
Los Angeles, California 90017**

4    Defendant McKesson Corporation is a pharmaceutical company that exists as a corporation, partnership or other business entity licensed to do business in the State of California Incorporated under the laws of Delaware, Defendant McKesson is a California corporation in that it has its principal place of business in California  By Defendant McKesson's admission, its corporate headquarters are located at One Post Street, San Francisco, California 94104-5296  Additionally, Defendant McKesson is otherwise subject to general jurisdiction in California in that it is engaged in the business of distributing, selling, assembling, inspecting, marketing, promoting, packing and/or advertising numerous pharmaceutical products  The 16th largest industrial corporation in America, with over $800 billion in revenue every year, McKesson's own website states that "McKesson is everywhere" in healthcare    McKesson is the sole supplier of branded pharmaceuticals – including Fosamax – to many of the largest pharmacies and drug suppliers in the nation including pharmacies such as Wal-Mart, Safeway, and Valu-Rite, and numerous others  Upon information and belief, Defendant McKesson marketed, sold and distributed the Fosamax ingested by Plaintiffs by distributing Fosamax to the pharmacy or drug store where each Plaintiff purchased their Fosamax  At all times herein mentioned, the Defendant McKesson was the actor engaged in the acts herein alleged, acting through its agents and employees, and at all times, the

**PERSONAL INJURY COMPLAINT**                                             Page 4 of 28

actions and omissions asserted in this pleading were committed by agents or employees acting

within the purpose and scope of said agency and/or employment, and/or all of said acts and conduct

were ratified and approved by said Defendant

According to records on file with the California Secretary of State, **Defendant McKesson may be served with process by and through its registered agent:**

**The Prentice-Hall Corporation System, Inc.**
**P.O. Box 526036**
**Sacramento, CA 95852-6036**

## JURISDICTION AND VENUE

5    This Court has subject matter jurisdiction pursuant to California State Law, because the amount in controversy exceeds the minimum jurisdiction of this Court, which is the Court of primary trial jurisdiction in California

6    Venue is further proper in this Superior Court pursuant to California Law in that Defendant McKesson Corporation is a corporate citizen of California    Further, Defendant Merck operates in this District, has employed persons in this District, has advertised within this District, has received substantial compensation and profits from sales for the drug Fosamax within this District and has made material omissions and misrepresentations and breached warranties in this District    Venue is particularly proper in Los Angeles County in that Plaintiff Smith resides in Los Angeles County

## SUMMARY OF THE CASE

7    Defendants, either directly or through its agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and/or sold Fosamax for the treatment of osteoporosis, prevention of bone loss, Paget's Disease, among other uses

8    As a result of the defective nature of Fosamax, persons who were prescribed

**PERSONAL INJURY COMPLAINT**                                                      Page 5 of 28

and ingested Fosamax, including Plaintiffs, have suffered and may continue to suffer severe and permanent personal injuries, including without limitation, one or more of the following osteonecrosis and/or osteochemonecrosis of the jaw

9      Defendants concealed their knowledge of Fosamax's unreasonably dangerous risks from Plaintiffs, other consumers, and the medical community  Defendants failed to conduct adequate and sufficient post-marketing surveillance of Fosamax after it began marketing, advertising, distributing, and selling the drug.

10      As a result of Defendants' actions and inaction, Plaintiffs were injured due to ingestion of Fosamax, which has caused and will continue to cause Plaintiffs' various injuries and damages  Plaintiffs accordingly seek compensatory damages and other damages

## FACTUAL ALLEGATIONS

11      At all relevant times, Defendant Merck was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing and selling Fosamax, as detailed below, and Defendant McKesson was responsible for the distribution of Fosamax as detailed below

12      In September 1995, the United States Food and Drug Administration ("FDA") approved Merck's compound alendronate for various uses, including the treatment of osteoporosis and Paget's Disease  Alendronate is marketed by Defendant Merck as Fosamax

13      Fosamax falls within a class of drugs known as bisphosphonates  Bisphosphonates are used for treating bone conditions such as osteoporosis and Paget's Disease  Other drugs within this class, such as Aredia and Zometa, are used as chemotherapy and as adjunct chemotherapy but are not indicated for use in non-cancerous conditions such as osteoporosis

14      There are two classes of bisphosphonates  the N-containing (nitrogenous) and non-containing (non-nitrogenous) bisphosphonates  The nitrogenous bisphosphonates include the

---

**PERSONAL INJURY COMPLAINT**                                      Page 6 of 28

following pamidronate (Aredia), ibandronate (Bondronat), and alendronate (Fosamax) The non-nitrogenous bisphosphonates include the following etridonate (Didronel), clodronate (Bonefos and Loron), and tiludronate (Skelid) Alendronate contains a nitrogen atom The Physicians Desk Reference ("PDR") for Fosamax confirms that the molecule contains a nitrogen atom

15    Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis and/or osteochemonecrosis of the jaw within the nitrogenous bisphosphonates used for chemotherapy As with its reported and acknowledged side effects concerning irritation, erosion and inflammation of the upper gastrointestinal tract, Merck knew or should have known that Fosamax, as a nitrogenous bisphosphonate, shared a similar adverse event profile to the other drugs within this specific subclass of bisphosphonates (i e , those containing nitrogen)

16    Merck also knew or should have known[2] that bisphosphonates, including Fosamax, inhibit endothelial cell function Similarly, Merck knew or should have known that bisphosphonates also inhibit vascularization of the affected area and induce ischemic changes specific to patients' mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature

17    Merck also knew or should have known that these factors combine to create a compromised vascular supply in the affected area As a result, a minor injury or disease can turn into a non-healing wound That, in turn, can progress to widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow)

18    Dentists are now being advised by dental associations to refrain from using

---

[2] Throughout this Complaint, whenever Plaintiffs assert Merck "should have known", Plaintiffs are asserting that the dangerous propensity of Forsamax was knowable to one or both Defendants given the accepted scientific knowledge at the time of manufacturing and distribution

**PERSONAL INJURY COMPLAINT**                                    Page 7 of 28

any invasive procedure (such as drilling a cavity) for any patient on Fosamax

19      Once the osteonecrosis begins and becomes symptomatic, it is very difficult to treat and typically is not reversible

20      Shortly after Defendants began selling and distributing Fosamax, reports of osteonecrosis and/or osteochemonecrosis of the jaw and other dental complications among users began surfacing, indicating that Fosamax shared the class effects of the other nitrogenous bisphosphonates   Despite this knowledge, Merck failed to implement further study of osteonecrosis and/or osteochemonecrosis of the jaw relative to Fosamax   Rather than evaluating and verifying the safety of Fosamax with respect to osteonecrosis and/or osteochemonecrosis of the jaw, Defendant proposed further uses of Fosamax, such as Fosamax-D, and sought to extend the exclusivity period of Fosamax through 2018

21      Osteonecrosis and/or osteochemonecrosis of the jaw is a serious medical event and can result in severe disability and death

22      Rather than warn patients, and despite knowledge of an increased risk of osteonecrosis and/or osteochemonecrosis of the jaw on patients using Fosamax, Merck continued to defend Fosamax, mislead physicians and the public, and minimize unfavorable findings

23      Fosamax is one of Defendants' top selling drugs, averaging more than $3 billion a year in sales

24      Consumers, including Plaintiffs, who have used Fosamax for the treatment of osteoporosis, have several alternative safer products available to treat the conditions

25      Defendants knew of the significant risk of dental and oral complications caused by ingestion of Fosamax, but did not adequately and sufficiently warn consumers, including

**PERSONAL INJURY COMPLAINT**                                      Page 8 of 28

Plaintiffs, or the medical community, of such risks

26    In an elaborate and sophisticated manner, Merck aggressively marketed Fosamax in the United States and in this judicial district  This marketing was directed to consumers and medical professionals (including physicians and leading medical scholars) in order to leverage pressure on third party payers, medical care organizations, and large institutional buyers (e g , hospitals) to include Fosamax on their formularies  Faced with the increased demand for the drug by consumers and health care professionals that resulted from Merck's successful advertising and marketing blitz, third party payers were compelled to add Fosamax to their formularies  Merck's marketing campaign specifically targeted third party payers, physicians, and consumers, and was designed to convince them of both the therapeutic and economic value of Fosamax

27    As a direct result, Plaintiffs were prescribed Fosamax and have been permanently and severely injured, having suffered serious consequences from the ingestion of Fosamax  Plaintiffs require and will in the future require on-going medical care and treatment

28    Plaintiffs have suffered from mental anguish from the knowledge that Plaintiffs will have life-long complications as a result of the injuries they sustained from the use of Fosamax

29    Plaintiffs used Fosamax as prescribed and in a foreseeable manner

30    As a direct and proximate result of using Fosamax, Plaintiffs suffered severe osteonecrosis and/or osteochemonecrosis of the jaw

31    Plaintiffs, as a direct and proximate result of using Fosamax, suffered severe and physical pain and suffering and have sustained permanent injuries and emotional distress Plaintiffs' injuries and damages exceed the jurisdictional amount required by this Court

32    Plaintiffs used Fosamax, which had been provided to them in a condition that

**PERSONAL INJURY COMPLAINT**                                    Page 9 of 28

was substantially the same as the condition in which it was manufactured and sold

33     Based upon information and belief, the physicians who supplied Fosamax to Plaintiffs reasonably relied on the representations made to them by Merck prior to the date of prescribing Fosamax for use   Based upon information and belief, the physicians reasonably relied on the representations regarding the safety of Fosamax and would have altered their prescription habits by considering alternative treatments, altering their informed consent, and/or would not have recommended Fosamax if he or she had known the true facts regarding the safety of Fosamax   Thus, based on information and belief, had Plaintiffs' physicians known the true facts, the drug would not have been prescribed to Plaintiffs because of one or more of the following  the physicians would not have recommended Fosamax to Plaintiffs and would have prescribed an alternative product, the Plaintiffs would have used the information provided by the physicians and chosen an alternative medicine   In either event, Defendants' failure to provide true and accurate information to Plaintiffs' physicians, by omission and/or commission, was the proximate cause of each of the Plaintiffs' injuries

34     Plaintiffs would not have used Fosamax had Defendants properly disclosed the risks associated with the drug   Alternatively, Plaintiffs would have known the precursor events of osteonecrosis and/or osteochemonecrosis of the jaw and would have been able to avoid the clinical manifestation of the symptoms as they currently exist

35     Prior to the dates upon which the aforesaid product was prescribed to Plaintiffs, Merck knew, or should have known, that Fosamax was extremely dangerous and unsafe for use by the general public for the treatment and prevention of osteoporosis   Yet, Merck, through its affirmative misrepresentations and omissions, failed to take appropriate action to cure the nature of its defects and actively concealed from Plaintiffs and their physicians the true and significant

**PERSONAL INJURY COMPLAINT**                                           Page 10 of 28

risks associated with taking Fosamax   The running of any applicable statute of limitations has been tolled by reason of Merck's fraudulent concealment

36     As a result of Defendants' actions, Plaintiffs and their prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendants' acts, omissions and misrepresentations

**FIRST CAUSE OF ACTION**

**[Strict Products Liability Failure to Warn – Both Defendants]**

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every allegation in paragraphs 1 through 36, inclusive, of this Original Complaint, and for cause of action state that Defendants' conduct makes them strictly liable in tort for failure to adequately warn

37     Defendants have engaged in the business of selling, distributing, supplying, manufacturing, marketing and/or promoting Fosamax, and through that conduct have knowingly and intentionally placed Fosamax into the stream of commerce with full knowledge that it would arrive in the judicial district where the Plaintiffs ingested it   Defendants did in fact sell, distribute, supply, manufacture, and/or promote Fosamax to Plaintiffs' pharmacies, Plaintiffs' prescribing physicians and ultimately, Plaintiffs   Additionally, Defendants expected the Fosamax it was selling, distributing and supplying, manufacturing and/or promoting to reach, and Fosamax did in fact reach, prescribing physicians and consumers in the State and throughout the United States, including Plaintiffs, and Plaintiffs' prescribing physicians, without substantial change in the condition of the product

38     At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture, and was so at the time it was distributed by Defendant and ingested by Plaintiffs

PERSONAL INJURY COMPLAINT                                      Page 11 of 28

Specifically, the Fosamax ingested by Plaintiffs was in a defective condition because Defendants distributed the product without adequate warning, failed to properly package the product and/or failed to label the product to give reasonable warnings of danger about the product. Given the severity of the adverse effects of Fosamax, the aforesaid product was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of Fosamax. Thus, Defendants failed to warn of a substantial danger not readily recognizable to an ordinary consumer, and the danger was known or knowable to Defendants given the accepted scientific knowledge at the time of manufacture and distribution. These defects caused serious injuries to the user when Fosamax was used in its intended and foreseeable manner, i.e., when it was ingested as prescribed by Plaintiffs' physicians and in the manner recommended and/or marketed by Defendants.

39      Defendants knew that the aforesaid product was to be used by the user without inspection for defects therein, and that the Plaintiffs were among the class of persons that might foreseeably be harmed by the product Fosamax after its prescription, purchase and ingestion.

40      The Plaintiffs used the product for its intended purpose.

41      The aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product, i.e., ingestion to aid in the treatment of osteoporosis, involved substantial dangers not readily recognizable by the ordinary, reasonably foreseeable user of the product. Defendants failed to warn of the known or knowable likelihood of injury including, but not limited to the likelihood the user would develop osteonecrosis and/or osteochemonecrosis.

42      Plaintiffs did not know, nor did Plaintiffs have reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing

**PERSONAL INJURY COMPLAINT**                                                    Page 12 of 28

described defects    These defects and/or the failure to warn of these defects caused the herein described injuries to Plaintiffs and the injuries from which the Plaintiffs continue to suffer

43    Defendants knew that the aforesaid product was to be used by the user without inspection for defects therein and that the aforesaid product was unaccompanied by adequate warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution

44    Plaintiffs neither knew, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects Thus, Defendants' failure to adequately warn Plaintiffs and/or Plaintiffs' physicians proximately caused Plaintiffs' injuries

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendants for damages in a sum in excess of the jurisdictional requirement of this Court, for Plaintiffs' costs herein incurred, for such other and further relief as this Court deems just and proper, and demands that the issues herein contained be tried by a jury

## SECOND CAUSE OF ACTION

### [Strict Products Liability/Defective Product – Merck]

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every allegation in paragraphs 1 through 44, inclusive, of this Original Complaint, and for cause of action state that Defendant Merck's conduct creates strict liability in tort because the Fosamax purchased and ingested by Plaintiffs was a defective product

45    Defendant Merck has engaged in the business of selling, distributing, supplying, manufacturing, marketing and/or promoting Fosamax, and through that conduct has knowingly and intentionally placed Fosamax into the stream of commerce with full knowledge that

**PERSONAL INJURY COMPLAINT**

it would arrive where the Plaintiffs purchased and ingested it  Merck did in fact sell, distribute, supply, manufacture, and/or promote Fosamax to Plaintiffs and Plaintiffs' prescribing physicians  Additionally, Merck expected the Fosamax it was selling, distributing and supplying, manufacturing and/or promoting to reach, and did in fact reach, prescribing physicians and consumers in this State and within each of the Plaintiffs' home states, including Plaintiffs, and his or her prescribing physicians, without substantial change in the condition of the product

46     The Fosamax manufactured and/or supplied by Merck was placed into the stream of commerce in a defective condition in that the foreseeable risks exceeded the benefits associated with the design or formulation and/or that the Fosamax was in a condition (a) that failed to perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner, or (b) the risk of danger inherent in the design of Fosamax outweighed the benefit of its design

47     Alternatively, the Fosamax manufactured and/or supplied by Merck was defective in design or formulation in that when it was placed in the stream of commerce, it was more dangerous than an ordinary consumer would expect, and it was more dangerous than other forms of treatment

48     The Fosamax manufactured and/or supplied by Merck was defective because Merck knew or should have known that the product created a risk of harm to consumers and that Merck failed to adequately warn of said risks

49     The Fosamax manufactured and/or supplied by Defendant Merck was defective due to one or more of the following reasons

a     The product was not safe for ingestion as designed in that it caused permanent and/or progressive physical injury and other physical injuries,

**PERSONAL INJURY COMPLAINT**                                    Page 14 of 28

b     The product as designed and/or sold by Merck did not properly protect users from harm,

c     The product caused Plaintiffs to be exposed to harmful substances,

d     The product was not safe for its intended use,

e     The product as designed and/or distributed did not properly address various safety issues,

f     The product was not tested properly or adequately,

g     The risk of product usage for known and/or intended uses was outweighed by the risk of usage,

h     The product had an inadequate warning,

i     Merck failed its post-sale duty to warn of newly discovered harm,

j     The product failed to perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner,

k     The risk of danger inherent in the design of Fosamax outweighed the benefit of its design, and/or,

l     The product was otherwise in a defective condition under California law

50     As designed, the Fosamax contained dangerous design defects and was not reasonably safe as intended -- making the risks of Fosamax outweigh its benefits and subjecting Plaintiffs to risks which exceeded any alleged benefits of Fosamax

51     The Fosamax manufactured and/or supplied by Merck was defective due, inter alia, to inadequate post-marketing warning or instruction because after Merck knew or should have known of the risk of injury from Fosamax, it failed to provide adequate warnings to users or consumers of the product and continued to promote the product improperly

**PERSONAL INJURY COMPLAINT**                          Page 15 of 28

52     The Plaintiffs used the product for its intended and/or reasonably expected usage or purpose

53     As a proximate and legal result of the defective condition of this product manufactured and/or supplied by Merck, Plaintiffs were caused to suffer harm and the herein described injuries from which the Plaintiffs continue to suffer   Thus, Merck's conduct proximately caused Plaintiffs' injuries

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant Merck for damages in a sum in excess of the jurisdictional requirement of this Court, for Plaintiffs' costs herein incurred, for such other and further relief as this Court deems just and proper, and demands that the issues herein contained be tried by a jury

## THIRD CAUSE OF ACTION

### [Negligence - Merck]

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every allegation in paragraphs 1 through 53, inclusive, of this Original Complaint

54     At all times herein mentioned, Merck had a duty to properly design, manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings, and take such steps to assure that the product Fosamax did not cause users to suffer from unreasonable and dangerous side effects   Merck owed Plaintiffs this duty   Merck breached this duty by

a     failing to properly and thoroughly test Fosamax before releasing the drug to market,

b     failing to properly and thoroughly analyze the data resulting from the pre-marketing tests of Fosamax,

**PERSONAL INJURY COMPLAINT**                                    Page 16 of 28

c failing to conduct sufficient post-market testing and surveillance of Fosamax;

d designing, manufacturing, marketing, advertising, distributing and selling Fosamax to consumers, including Plaintiffs, without adequate warning of the significant and dangerous risks of Fosamax and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug;

e failing to exercise due care when advertising and promoting Fosamax; and

f negligently continuing to manufacture, market, advertise, and distribute Fosamax after Merck knew or should have known of its adverse effects without providing an adequate warning of the known or knowable side-effects of Fosamax

55 At all times herein mentioned, Merck knew, or in the exercise of reasonable care should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was likely to injure the product's user

56 Defendant Merck so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, and supplied the aforesaid product that it was dangerous and unsafe for the use and purpose for which it was intended

57 Defendant Merck negligently failed to warn of the nature and scope of dangers associated with Fosamax

58 Defendant Merck was aware of the probable consequences of the aforesaid conduct  Despite the fact that Merck knew or should have known that Fosamax caused serious injuries, it failed to disclose the known or knowable risks associated with the product as set forth

**PERSONAL INJURY COMPLAINT**       Page 17 of 28

above  Defendant Merck willfully and deliberately failed to avoid those consequences, and in doing so, Merck acted with a conscious disregard of the safety of Plaintiffs

59     In all the above actions, Merck had a duty to act as a reasonable and prudent pharmaceutical manufacturer of a prescription drug, breached this duty by failing to act as a reasonable and prudent pharmaceutical manufacturer of a prescription drug, and by breaching the standard of care proximately caused the Plaintiffs to suffer physical injuries and other damages  As a result of the carelessness and negligence of Defendant Merck alleged herein and in such other ways to be later shown, the aforesaid product caused Plaintiffs to sustain injuries as herein alleged WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant Merck for damages in a sum in excess of the jurisdictional requirement of this Court, for Plaintiffs' costs herein incurred, for such other and further relief as this Court deems just and proper, and demands that the issues herein contained be tried by a jury

## FOURTH CAUSE OF ACTION

### [Breach of Implied Warranty – Both Defendants]

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every allegation in paragraphs 1 through 59, inclusive, of this Original Complaint

60     At all times mentioned herein, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold the aforesaid product, and prior to the time it was provided to Plaintiffs, Defendants impliedly warranted to Plaintiffs that the product was of merchantable quality and safe for the use for which it was intended

61     Plaintiffs reasonably relied on the skill and judgment of the Defendants in using the aforesaid product

62    The product was unsafe for its intended use and was not of merchantable quality, as warranted by Defendants in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user  The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution  As a direct and proximate result of the Defendants' breach of warranty, the Plaintiffs sustained damages as alleged herein

63    The aforesaid product did cause Plaintiffs to sustain injuries and caused Plaintiffs to sustain damages as herein alleged

64    After Plaintiffs were made aware that Plaintiffs' injuries were a result of the aforesaid product, notice was impractical due to the nature of the injuries and thus, the filing of suit gives notice

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendants for damages in a sum in excess of the jurisdictional requirement of this Court, for Plaintiffs' costs herein incurred, for such other and further relief as this Court deems just and proper, and demands that the issues herein contained be tried by a jury

## FIFTH CAUSE OF ACTION

### [Breach of Express Warranty - Merck]

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every allegation in paragraphs 1 through 64, inclusive, of this Original Complaint

65    The aforementioned manufacturing, compounding, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandizing, advertising, promoting, supplying and selling of the aforesaid product was expressly warranted to be safe for use by Plaintiffs and other members of the general public

PERSONAL INJURY COMPLAINT                                    Page 19 of 28

66    Defendant Merck expressly warranted that Fosamax was safe    Upon information and belief, these warranties were included in numerous advertisements to the public, documents prepared for physicians, documents prepared for the public and were also spoken directly to physicians by agents of Defendant Merck    Upon information and belief, Defendant Merck knew or reasonably should have known that consumers would have directly reasonably relied on these representations and/or that consumers would have indirectly reasonably relied on these representations in that their physicians would reasonably rely on these representations, and that consumers would rely on the prescription advice of their physicians acting as either their agent, fiduciary or intermediary and who were directly acting based on these fraudulent representations

67    Fosamax failed to conform to the Defendant's warranties because Fosamax was not safe

68    At the time of the making of the express warranties, Defendant Merck had knowledge of the purpose for which the aforesaid product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose    The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution

69    Upon information and belief, Plaintiffs and Plaintiffs' physicians reasonably relied upon the skill and judgment of Defendant Merck, and upon said express warranty, in using the aforesaid product    The warranty and representations were untrue in that the product caused severe injury to Plaintiffs and was unsafe and, therefore, unsuited for the use for which it was intended    The aforesaid product could and did thereby cause Plaintiffs to sustain injuries and Plaintiffs sustained damages as herein alleged

70    As soon as the true nature of the product, and the fact that the warranty and

representations were false, were ascertained, notice was impractical due to the nature of the injuries and thus, the filing of suit gives notice to Merck of the breach of said warranty

71     As a direct and proximate result of the breach of these warranties, Plaintiffs sustained personal injuries and other damages as alleged herein

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant Merck for damages in a sum in excess of the jurisdictional requirement of this Court, for Plaintiffs' costs herein incurred, for such other and further relief as this Court deems just and proper, and demands that the issues herein contained be tried by a jury

## SIXTH CAUSE OF ACTION

### [Fraud - Merck]

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every allegation in paragraphs 1 through 71, inclusive, of this Original Complaint

72     Defendant Merck falsely and fraudulently represented to Plaintiffs, Plaintiffs' physicians and members of the general public, that the aforesaid product was safe for use to aid in treating osteoporosis and was safer than other readily available treatments  The representations by said Defendant were, in fact, false  The true facts, include, but are not limited to, the fact that the aforesaid product was not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiffs

73     The representations by Defendant Merck were, in fact, false  The true facts that the product was not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the product, including, but not limited to, osteonecrosis and/or osteochemonecrosis of the jaw  Defendant did not disclose or warn Plaintiffs or Plaintiffs' physicians about the known risk of injury in using the product

**PERSONAL INJURY COMPLAINT**                                           Page 21 of 28

Defendant misrepresented the safety of the product, represented that the product marketed was safe for treating osteoporosis, and concealed warnings of the known or knowable risks of injury in using the product

74    When Defendant Merck made these representations – about material facts - it knew that they were false  Defendant made said representations with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to act in the manner herein alleged  Upon information and belief, Defendant Merck knew or reasonably should have known that consumers would have directly reasonably relied on these representations and/or that consumers would have indirectly reasonably relied on these representations in that their physicians would reasonably rely on these representations, and that consumers would rely on the prescription advice of their physicians acting as either their agent, fiduciary or intermediary and who were directly acting based on these fraudulent representations

75    At the time Merck made the aforesaid representations, and at the time Plaintiffs took the actions alleged herein, upon information and belief, Plaintiffs and Plaintiffs' physicians were ignorant of the falsity of these representations, reasonably believed them to be true, and relied upon them  Upon information and belief, in reliance upon said representations, Plaintiffs were induced to, and did, use the aforesaid product as herein described  Plaintiffs' reasonable reliance on the deceptive statements resulted in Plaintiffs' injuries

76    If Plaintiffs had known the actual facts, Plaintiffs would not have taken such action

77    The reliance of Plaintiffs and Plaintiffs' physicians on Defendant Merck's representations was justified and reasonable because said representations were made by individuals and entities that appeared to be in a position to know the true facts

**PERSONAL INJURY COMPLAINT**                                          Page 22 of 28

78    As a result of Merck's fraud and deceit, Plaintiffs were caused to sustain the herein described injuries

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant Merck for damages in a sum in excess of the jurisdictional requirement of this Court, for Plaintiffs' costs herein incurred, for such other and further relief as this Court deems just and proper, and demands that the issues herein contained be tried by a jury

### SEVENTH CAUSE OF ACTION

### [Fraud by Concealment – Merck]

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every allegation in paragraphs 1 through 78, inclusive, of this Original Complaint, and for cause of action alleges as follows

79    At all times mentioned herein, Defendant Merck had the duty and obligation to disclose to Plaintiffs and to Plaintiffs' physicians, the true facts concerning the aforesaid product, specifically that said product was dangerous and defective and how likely it was to cause serious consequences to users, including injuries and death, and how unnecessary it was to use said product for the purposes indicated when considering alternative methods of treatment    Defendant made affirmative representations as set forth herein to Plaintiffs, Plaintiffs' physicians and the general public prior to the date Fosamax was provided to Plaintiffs, while concealing material facts mentioned herein

80    At all times mentioned herein, Defendant had the duty and obligation to disclose to Plaintiffs and Plaintiffs' physicians the true facts concerning the aforesaid product, that is, that use would cause injuries including but not limited to osteonecrosis and/or osteochemonecrosis

81    At all times herein mentioned, Defendant Merck intentionally, willfully and maliciously concealed or suppressed the facts set forth herein from Plaintiffs and Plaintiffs' physicians with the intent to defraud as herein alleged

82    At all times herein mentioned, neither Plaintiffs nor Plaintiffs' physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have used the product

83    As a result of the concealment or suppression of the facts set forth above, Plaintiffs suffered injuries as set forth herein

84    That at all times herein mentioned, Defendant intentionally and willfully concealed or suppressed the facts set forth herein from Plaintiffs' physicians and therefore from Plaintiffs, with the intent to defraud Plaintiffs as herein alleged

85    At all times herein mentioned, neither Plaintiffs nor Plaintiffs' physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, Plaintiffs would not have ingested Fosamax

86    As a result of the concealment or suppression of the facts set forth above, Plaintiffs suffered injuries as set forth herein

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs' favor and against Defendant Merck for damages in a sum in excess of the jurisdictional requirement of this Court, for Plaintiffs' costs herein incurred, for such other and further relief as this Court deems just and proper, and demands that the issues herein contained be tried by a jury

## EIGHTH CAUSE OF ACTION

### [Unjust Enrichment – Both Defendants]

Plaintiffs hereby incorporate by reference as if fully set forth herein each and every

1  allegation in paragraphs 1 through 86, inclusive, of this Original Complaint, and for cause of action

2  allege as follows

3      87    As a direct, proximate, and foreseeable result of Defendants' acts and

4  otherwise wrongful conduct, Plaintiffs were gravely harmed    Defendants profited and benefited

5

6  from the sale of Fosamax, even as it injured Plaintiffs

7      88    Defendants have voluntarily accepted and retained these profits and benefits

8  derived from consumers, including Plaintiffs, with full knowledge and awareness that, as a result of

9  its unconscionable and intentional wrongdoing, consumers, including Plaintiffs, were not receiving

10  products of the quality, nature, fitness or value that had been represented by Defendants or that

11  reasonable consumers expected    Plaintiffs purchased and ingested medicine that they expected

12  would improve their health, and instead found their health destroyed

13

14      89    By virtue of the conscious wrongdoing alleged in this Complaint, Defendants

15  have been unjustly enriched at the expense of Plaintiffs, who are entitled to in equity, and hereby

16  seek, the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the

17

18  extent, and in the amount deemed appropriate by the Court, and such other relief as the Court deems

19  just and proper to remedy Defendants' unjust enrichment

20      WHEREFORE, Plaintiffs respectfully request this Court enter judgment in Plaintiffs'

21  favor and against Defendants for damages in a sum in excess of the jurisdictional requirement of

22

23  this Court, for Plaintiffs' costs herein incurred, for such other and further relief as this Court deems

24  just and proper, and demands that the issues herein contained be tried by a jury

25              **PUNITIVE AND/OR EXEMPLARY DAMAGES**

26      90    Clear and convincing evidence exists that the above described actions of

27

28  Defendant Merck was committed oppressively, fraudulently or with malice or oppression    The

**PERSONAL INJURY COMPLAINT**                                   Page 25 of 28

wrongful conduct for which Plaintiffs seek punitive damages was committed knowingly and/or authorized or ratified by an officer, director or managing agent of the Corporation  Therefore, Plaintiffs specifically request that the Court submit jury questions on issues of Defendant Merck's conduct to support punitive and/or exemplary damages in the maximum amount allowed by California law

## COMPENSATORY DAMAGES

91    As a direct and proximate result of the actions of Defendants, Plaintiffs have suffered the following damages in excess of the jurisdictional requirements of this court

a    Medical expenses incurred in the past and those reasonable and necessary expenses to be incurred in the future,

b    Lost wages and earnings, past and future,

c    Physical pain and suffering endured in the past and that likely to be suffered in the future,

d    Mental anguish and emotional distress suffered in the past and that likely to be suffered in the future,

e    Physical impairment suffered in the past and that likely to be suffered in the future,

f    Disfigurement, past and future,

g    Purchase costs,

h    Such other damages to which Plaintiffs are entitled in law or equity

## LOSS OF CONSORTIUM

92    At all times relevant hereto, Plaintiff Tom Paxton was married to Plaintiff Cora Paxton and were and are now husband and wife

**PERSONAL INJURY COMPLAINT**                                              Page 26 of 28

93    Prior to the negligence and wrongful conduct of Defendants, and each of them as set forth above, Plaintiff Cora Paxton was able to and did perform her normal and typical duties as a wife   Subsequent to the severe and disabling injuries suffered by Plaintiff Cora Paxton as a result of said negligence and wrongful conduct, and as a direct and legal result of the injuries caused thereby, she has been unable to perform her normal and typical duties as wife   As a direct and legal result of Cora Paxton's inability to perform her duties, Plaintiff Tom Paxton has suffered a loss of consortium as defined by law, including the loss of his wife's physical assistance in the operation and maintenance of their home, and he has further been deprived of and will in the future be deprived of his wife's comfort, society, solace and support   By reason thereof, Plaintiff Tom Paxton has been deprived of Plaintiff Cora Paxton's necessary duties as a wife, all to his further damage in a sum in excess of the jurisdictional limits of this Court   Plaintiff Tom Paxton is informed and believes, and based thereon alleges, that the injuries sustained by Plaintiff Cora Paxton will result in some permanent deprivation of her work and services as a wife, all to his further damage

94    As an actual, legal and direct result of the negligence of the Defendant, Plaintiff Tom Paxton has suffered damage

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief from Defendant as follows

95    In support of said damages, Plaintiffs incorporate by reference all preceding and following paragraphs as if fully set forth herein and further allege as follows

    a)    For general damages in a sum in excess of the jurisdictional minimum of this Court,

    b)    For special damages in a sum in excess of the jurisdictional minimum of this

**PERSONAL INJURY COMPLAINT**

Court,

c)     For compensatory damages in excess of the jurisdictional minimum of this Court,

d)     For consequential damages in excess of the jurisdictional minimum of this Court, according to proof,

e)     Medical, incidental, and hospital expenses according to proof,

f)     Future medical, incidental and hospital expenses according to proof,

g)     Prejudgment and post judgment interest as provided by law,

h)     Full refund of all purchase costs Plaintiffs paid for Fosamax,

i)     Punitive damages,

j)     Attorneys' fees, expenses and costs of this action, and

k)     Such further relief as this Court deems necessary, just and proper

### DEMAND FOR JURY TRIAL

96     Plaintiffs demand a jury trial in this action

DATED  July 11, 2007

**FEINBERG GRANT MAYFIELD KANEDA & LITT, LLP**

By     _____

Joseph Kaneda, Esq  SBN 160336
2 San Joaquin Plaza, Suite 180
Newport Beach, CA 92660

*Of Counsel*

William B  Curtis, Esq , TX SBN 00783918
Alexandra V  Boone, Esq , TX SBN 00795259
MILLER CURTIS & WEISBROD, L L P
11551 Forest Central Dr , Suite 300
Dallas, TX 75243