Norman C. Kleinberg
Theodore V. H. Mayer
William J. Beausoleil
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

Paul F. Strain
M. King Hill, III
David J. Heubeck
Randolph S. Sergent
VENABLE LLP
Two Hopkins Plaza, Suite 1800
Baltimore, MD 21201
(410) 244-7400

*Attorneys for Defendant Merck & Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
IN RE: Fosamax Products Liability    :
Litigation    :    No. 1:06-md-01789-JFK-JCF
    :
    :
-------------------------------------------------------x
*This document relates to*    :
    :
Carrie Smith, *et al.*, v. Merck & Co., Inc.    :
and McKesson Corporation,    :
Case No. 1:07-cv-09564-JFK    :
-------------------------------------------------------x

## DEFENDANT MERCK & CO., INC.'S OPPOSITION
## TO PLAINTIFFS' MOTION TO REMAND

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   PROCEDURAL HISTORY..................................................................................3

III.  FACTUAL BACKGROUND................................................................................3

      A.    The Plaintiffs' Complaint ......................................................................3

      B.    Plaintiffs' New Assertions In Their Remand Motion ..............................4

      C.    The Undisputed Facts Presented By Merck And McKesson...................5

IV.   ARGUMENT........................................................................................................7

      A.    This Court Has Diversity Jurisdiction And This Action Was Properly
            Removed Because McKesson Is Fraudulently Joined ...........................7

            1.    Plaintiffs' Conclusory, General Allegations Are Not
                  Sufficient To State A Claim Against McKesson ........................8

                  a.    Plaintiffs Allege No Facts To Show That
                        McKesson Caused Plaintiffs' Alleged Injuries................8

                  b.    Plaintiffs Cannot Rely On Generalized Allegations That
                        Do Not Specifically Refer To McKesson At All............11

            2.    Plaintiffs' Claims Have No Merit In Light Of The Facts
                  Set Forth By Merck And McKesson.........................................12

            3.    Plaintiffs' Claims Are Barred Because, Under
                  California Learned Intermediary Doctrine, A
                  Distributor Has No Duty To Warn.............................................14

      B.    Even If Plaintiffs Had Stated A Proper Claim Against McKesson,
            Removal Would Be Proper ...................................................................18

            1.    The Lone California Plaintiff's Claims Are Misjoined .............18

            2.    Removal Was Proper Under § 1441(b) Where The Lone
                  In-State Defendant, McKesson, Had Not Been Served
                  At The Time Of Removal ........................................................20

       C.      Limited Discovery Would Be Appropriate Before Any Remand..........................21

V.      CONCLUSION...................................................................................................................23

TABLE OF AUTHORITIES

Page

**Cases**

*Alabama S. Ry. Co. v. H.C. Thompson,* 200 U.S. 206, 218 (1906) ...............................................18

*Am. Mut. Liab. Ins. Co. v. Flintkote Co.,* 565 F.Supp. 843, 845 (S.D.N.Y.1983) .........................7

*Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 281 Cal. Rptr. 528 (1991) ..........15

*Aronis v. Merck & Co., Inc.*, No. S-05-0486 WBS DAD, 2005 WL 5518485

    (E.D. Cal. May 3, 2005)....................................................................................................1, 9

*Arseneault v. Congoleum Corp.,* No. 01 Civ. 10657 LMM, 2002 WL 472256

    (S.D.N.Y. March 26, 2002)..................................................................................................21

*Barlow v. Warner-Lambert Co.*, Case No. CV 03 1647 R (RZx)

    (C.D. Cal. April 28, 2003) ...............................................................................................1, 15

*Becraft v. Ethicon,* Civ. No. C00-1474 CRB, 2000 WL 1721056

    (N.D. Cal. Nov. 2, 2000)......................................................................................................10

*B.L.M. v. Sabo & Deitsch,* 55 Cal.App.4th 823, 64 Cal. Rptr. 2d 335 (1997)..............................10

*Brown v. Allstate Insur.*, 17 F. Supp. 2d 1134 (S.D. Cal. 1998)....................................................11

*Brown v. Superior Court*, 44 Cal. 3d 1049, 245 Cal. Rptr. 412 (1988)..........................................16

*Carlin v. Superior Court,* 13 Cal.4th 1104, 56 Cal. Rptr. 2d 162 (1996)......................................14

*Carmichael v. Reitz,* 17 Cal.App.3d 958, 95 Cal. Rptr. 381 (1971) ..............................................15

*Carriere v. Sears, Roebuck and Co.,* 893 F.2d 98 (5th Cir.),

    *cert. denied,* 498 U.S. 817 (1990)......................................................................................21

*Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256 (5th Cir. 1995) ....................................12

*Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514 (E.D. Pa. 2006) ...................................................17

*Cox v. Depuy Motech, Inc.*, Civ. No. 95-cv-3848-L(JA), 2000 WL 1160486

    (S.D. Cal. 2000) .....................................................................................................................9

*Durove v. Fabian Transp., Inc.*, No. 04-7000 RJH, 2004 WL 2912891

    (S.D.N.Y. Dec. 14, 2004).....................................................................................................21

*Fed. Ins. Co. v. Tyco Int'l, Ltd.*, 422 F.Supp. 2d 357, 384 (S.D.N.Y. 2006) ...................................2

*Frick v. Novartis Pharm. Corp.*, No. 05-5429 DRD, 2006 WL 454360 (D.N.J. 2006) ................21

*Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390 (S.D. W.Va. 2004) ...............................18, 20

*Helmke v. Unumprovident Corp.*, 2002 WL 90988 (N.D. Cal. 2002)..........................................21

*In re Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269 (D. Minn. 2002)............19

*In re Baycol Prods. Litig.*, MDL No. 1431, Case No. 139 (D. Minn. May 24, 2002) .................15

*In re Bextra and Celebrex Mktg. Sales Practices & Prod. Liab. Litig.,* No. M: 05-1699

      CRB, 2006 WL 2374742 (N.D. Cal. Aug. 16, 2006) ......................................................17

*In re Bridgestone/Firestone, Inc.*, 184 F. Supp. 2d 826 (S.D. Ind. 2002) ...................................21

*In re Diet Drugs*, No. A-98-20478, 1999 WL 554584 (E.D. Pa. July 16, 1999)...............18, 19, 20

*In re Rezulin Prods. Liab. Litig.*, 133 F.Supp. 2d 272 (S.D.N.Y. 2001) ................................7, 13

*In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136 (S.D.N.Y. 2001) ....................................20

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* MDL No. 1047,

      Civ. No. C02 423R, (W.D. Wash. Nov. 27 2002) ...........................................................11, 12

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217 (9th Cir. 2006) ..............19

*In re Vioxx Prods. Liab. Litig.*, 2007 WL 3332707 (E.D. La. 2007)............................................19

*Jaeger v. Schering Corp.*, No. 07-03465 DMC, 2007 WL 3170125 (D.N.J. Oct. 21, 2007)........21

*Keith v. Buchanan*, 173 Cal. App. 3d 13, 220 Cal. Rptr. 392 (1985).............................................10

*Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005)......................................................................13, 21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................................................9

*Lyons v. Am. Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677

      (S.D. Ala. Sept. 30, 1997)...........................................................................................11, 20

*Mktg. West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603,

      7 Cal. Rptr. 2d 859 (1992) ...................................................................................................9

*Massey v. Cassens & Sons, Inc.*, No. 05-CV-598 BRJ, 2006 WL 381942 (S.D. Ill. 2006) .........21

*McCabe v. Gen. Foods Corp.*, 811 F.2d 1336 (9th Cir. 1987).................................................7, 12

*McNaughton v. Merck & Co., Inc.,* Case No. 04 Civ. 8297 (LAP)

    (S.D.N.Y. Dec. 17, 2004) ...................................................................................18

*Morris v. Princess Cruises, Inc.,* 236 F.3d 1061 (9th Cir. 2001) ...............................8, 21

*Ott v. Consol. Freightways Corp.,* 213 F.Supp.2d 662 (S.D. Miss. 2002) ......................20

*Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459 (2d Cir. 1998) .........................7, 11, 12

*Republic W. Ins. Co. v. Int'l Ins. Co.,* 765 F. Supp. 628 (N.D. Cal. 1991) ....................20

*Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313 (9th Cir.),

    *cert. denied,* 525 U.S. 963 (1998) ..................................................................12

*Schaerrer v. Stewart's Plaza Pharmacy,* 79 P.3d 922 (Utah 2003) ...............................15

*Skinner v. Warner-Lambert Co.,* Case No. CV 03 1643-R (RZx)

    (C.D. Cal. April 28, 2003) ............................................................................1, 15

*Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.,* 314 F. Supp. 2d 177 (S.D.N.Y. 2003) .........21

*Stevens v. Parke, Davis & Co.,* 9 Cal.3d 51, 107 Cal. Rptr. 45 (1973) .........................14

*Sykes v. Glaxo-SmithKline,* 484 F. Supp. 2d 289 (E.D. Pa. 2007) .................................17

*Taylor AG Indus. v. Pure-Gro,* 54 F.3d 555 (9th Cir. 1995) .........................................10

*Test Drilling Serv., Co. v. Hanor Co.,* 322 F. Supp. 2d 953 (C.D. Ill. 2003) ...............21

*Tucker v. SmithKline Beecham Corp.,* 2007 WL 2726259 (S.D. Ind. 2007) ...............17

*United Computer Sys., Inc. v. AT&T Corp.,* 298 F.3d 756 (9th Cir. 2002) ....................2

*Waldon v. Novartis Pharm. Corp.,* No. C07-01988 MJJ, 2007 WL 1747128

    (N.D. Cal. June 18, 2007) ............................................................................1, 20

*Wensil v. E.I. Dupont de Nemours & Co.,* 792 F. Supp. 447 (D.S.C. 1992) ..................21

**Statutes, Rules, and Regulations**

21 U.S.C. § 331 (2007) ..................................................................................................16

28 U.S.C. § 1332 (2005) .............................................................................................1, 7

28 U.S.C. § 1407 (2007) ................................................................................................8

28 U.S.C. § 1441 (2007) ................................................................................................7

28 U.S.C. § 1441(a) (2007)............................................................................................4

28 U.S.C. § 1441(b) (2007) ....................................................................2, 8, 18, 20, 21

California Code of Civil Procedure § 378 ....................................................................19

Final Rule on *Requirements on Content and Format of Labeling for Human Prescription*

      *Drug and Biological Products*, 71 Fed. Reg. 3922, 3934-35 (Jan. 24, 2006) ..................17

Federal Rules of Civil Procedure

      Rule 20 ..................................................................................................................19

      Rule 21 ....................................................................................................................8

      Rule 56(b) ..............................................................................................................12

## I.    INTRODUCTION

Defendant Merck & Co., Inc. ("Merck"), by and through its undersigned attorneys, hereby files this memorandum in opposition to the Plaintiffs' Motion to Remand.  The Plaintiffs here seek to join 18 unrelated personal injury cases (only one of which involves a plaintiff who resides in California).  They filed those cases in Superior Court for Los Angeles, despite the lack of connection between all but one of the Plaintiffs and the State of California, and they have sought to prevent Merck from exercising its right to remove those cases by making spurious and conclusory claims against McKesson Corporation, with no proper basis for doing so.

The Plaintiffs' Motion to Remand should be denied for the same reasons that California federal district courts have denied similar motions where McKesson was named as a spurious defendant.  *See, e.g., Waldon v. Novartis Pharm. Corp.*, No. C07-01988 MJJ, 2007 WL 1747128 (N.D. Cal. June 18, 2007); *Aronis v. Merck & Co., Inc.*, No. S-05-0486 WBS DAD, 2005 WL 5518485 (E.D. Cal. May 3, 2005); *Barlow v. Warner-Lambert Co.*, Case No. CV 03 1647 R (RZx), Slip Op. at 2 (C.D. Cal. April 28, 2003) (Attached as Exhibit 1 to the November 19, 2007 Declaration of William J. Beausoleil ("Beausoleil Decl.")); *Skinner v. Warner-Lambert Co.*, Case No. CV 03 1643-R (RZx), Slip Op. at 2 (C.D.Cal. April 28, 2003) (Beausoleil Decl. Ex. 2).  Based on the Plaintiffs' own allegations, this Court has diversity jurisdiction under 28 U.S.C. § 1332 because the Plaintiffs and Merck are citizens of different states.  McKesson Corporation ("McKesson") – the only California resident named as a defendant in this case – has been fraudulently joined by the Plaintiffs and should be disregarded both for purposes of determining whether diversity jurisdiction exists under 28 U.S.C. § 1332 and for purposes of assessing the propriety of removal under 28 U.S.C. § 1441(b).[1]  The Plaintiffs have pled no facts upon which

---

[1] The joinder of McKesson in this action is the only basis upon which the Plaintiffs seek remand. Plaintiffs have not contended that this action falls below the minimum $75,000 jurisdictional amount-in-

they can base any proper claim against McKesson, there is no good faith basis for the speculative assertions that they make in their brief, and the unrebutted facts presented by the Defendants demonstrate that Plaintiffs could not, in good faith, present a proper claim against McKesson in this matter.[2]

Equally important, only *one* of the 18 disparate plaintiffs in this case is a California resident. Thus, even if McKesson were a proper party to this case, there is complete diversity between the defendants and 17 of the 18 Plaintiffs. These 18 plaintiffs are egregiously misjoined – each separate plaintiff presents his or her own distinct products liability case based upon his or her separate use of Fosamax. Even if McKesson were properly joined, which it is not, the claims of the lone California Plaintiff should be dropped under Rule 21 of the Federal Rules of Civil Procedure, and there is diversity jurisdiction between the Defendants and the remaining 17 Plaintiffs.

Removal was proper under 28 U.S.C. § 1441(b) because no California-resident defendant was "properly joined and served" at the time of removal. McKesson, the only California resident defendant, was not "properly joined and served" because (1) McKesson's joinder is fraudulent and (2) McKesson had not been served at the time of removal to federal court.

It is not necessary for McKesson to either join in or consent to removal, where McKesson was not served at the time of removal and where McKesson has been fraudulently joined as a party. *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002); *Fed. Ins.*

---

controversy required by 28 U.S.C. § 1332, and they do not contend that removal was untimely or otherwise procedurally defective.

[2] If the Court finds that the existing record does not definitively establish the Court's jurisdiction and the propriety of removal, which Merck believes that it already does, then Merck asks the Court to permit limited discovery tailored to the jurisdictional issues. It is entirely proper for this Court to consider deposition testimony and other evidence when addressing jurisdictional issues, and such evidence would provide additional proof that McKesson is fraudulently joined.

*Co. v. Tyco Int'l, Ltd.*, 422 F. Supp. 2d 357, 384 (S.D.N.Y. 2006). McKesson, however, joins in this opposition. Letter from Megan S. Wynne, Counsel for McKesson Corporation, to Randolph Stuart Sergent, Counsel for Merck & Co., Inc., dated November 16, 2007 (Beausoleil Decl. Ex. 3).

## II.     PROCEDURAL HISTORY

The Plaintiffs filed their Complaint in the Superior Court for the State of California, County of Los Angeles, on or about July 13, 2007. Merck removed to this Court on July 18, 2007. McKesson was served on July 24, 2007. *See* Declaration of Wendi Frisch in Support of Defendant Merck & Co., Inc.'s Opposition to Plaintiffs' Motion to Remand ("Frisch Decl.") ¶ 3 (Beausoleil Decl. Ex. 4). The United States District Court for the Central District of California (Real, U.S.D.J.) stayed this case on September 17, 2007. The case was transferred to the Fosamax MDL proceedings in this Court pursuant to Conditional Transfer Order CTO-32, which became final as to this case on October 26, 2007. On October 29, 2007, Plaintiffs filed their Motion to Remand.

## III.    FACTUAL BACKGROUND

### A.     The Plaintiffs' Complaint.

There are eighteen (18) distinct plaintiffs agglomerated together in this lawsuit, although their claims are separate and distinct from one another. Each Plaintiff alleges that he or she was injured as a result of using Fosamax, at his or her physicians' direction, and Plaintiffs allege that they (or in one case, a spouse) developed osteonecrosis of the jaw as a result of taking Fosamax prescribed by their physicians. Compl. ¶¶ 1, 27-30. Plaintiffs contend that Merck "did not adequately and sufficiently warn consumers . . . or the medical community" of the risk of osteonecrosis of the jaw, *id.* ¶ 25, and they assert claims for personal injury and punitive

damages. *Id.* ¶¶ 91, 95. Seventeen of the plaintiffs are citizens of either Arizona, Arkansas, Georgia, Michigan, Minnesota, New York, North Carolina, Ohio, Texas, West Virginia, or Wisconsin, and one plaintiff is a citizen of California. *Id.* ¶ 2.

Merck is a citizen of New Jersey; it is a New Jersey corporation and its principal place of business is in New Jersey. Compl. ¶ 3; Notice of Removal ¶ 19. In an effort to keep this case in California state court, the Plaintiffs have attempted to state claims against McKesson, one of many distributors of Merck products. Compl. ¶ 4. Plaintiffs allege that McKesson is a Delaware corporation with its principal place of business in San Francisco, California. *Id.* Plaintiffs fail, however, to present any specific allegation of any act by McKesson that relates to the Plaintiffs' alleged injuries.

In particular, the Complaint presents no specific factual allegations to show that McKesson distributed the Fosamax that these Plaintiffs received. McKesson is only mentioned by name in Paragraphs 1, 4, 6, and 11. Paragraphs 1 and 11 merely assert that McKesson distributed Fosamax. Paragraph 4 makes general allegations about McKesson's business as a distributor of pharmaceuticals, alleges in general terms that McKesson distributes drugs to large pharmacies and drug suppliers throughout the United States, and then asserts with no factual basis that "[u]pon information and belief, Defendant McKesson marketed, sold, and distributed the Fosamax ingested by Plaintiffs by distributing Fosamax to the pharmacy or drug store where each [of the eighteen] Plaintiff[s] purchased their Fosamax." Compl. ¶ 4. Paragraph 6 contains only venue allegations.

### B.    Plaintiffs' New Assertions In Their Remand Motion

Lacking any allegations in the Complaint that could support their claims against McKesson, the Plaintiffs' Motion to Remand seeks to rely upon rank speculation. Without any

basis for doing so, Plaintiffs in their Motion make new claims (not pled in the Complaint) that

McKesson and Merck are "operationally intertwined," that Merck "outsourced its marketing

response operations to McKesson," and that McKesson "clearly was not just a passive

distributor." Plfs' Mem. Supp. Mot. to Rem. at 2 to 4. These claims have been manufactured by

Plaintiffs' counsel out of whole cloth, and are based exclusively on two press releases that show

*only* that a former Merck employee once took a job at one of McKesson's subsidiaries:

- Plaintiffs assert that Robert J. Glaser was an executive for Merck until 1996, and
  that sometime in 1998, Mr. Glaser became an executive of McKesson HBOC, Inc.
  (a separate entity from Defendant McKesson Corporation). Plfs' Mem. Supp.
  Mot to Rem. at 2-3; Plfs' Ex. 3.[3] Plaintiffs submit nothing to show that Mr.
  Glaser had any responsibilities, while employed by non-party McKesson HBOC,
  Inc., that related in any way to Merck or to the distribution of Fosamax by
  Defendant McKesson Corporation.

- Plaintiffs assert that McKesson HBOC, Inc. provided "marketing and patient
  services" to Merck, based exclusively on two press releases that mention future
  plans by McKesson HBOC to provide services to the pharmaceutical industry, but
  do not mention either Merck or Fosamax at all. *Id.* at 3-4; Plfs' Ex. 3 & 4.
  Nothing in those documents shows that any such service was ever provided to
  Merck. Nor do any of these "facts" show any connection between services
  offered by non-party McKesson HBOC, Inc. and the distribution of Fosamax by
  Defendant McKesson Corporation.

- Plaintiffs assert, on page 4 of their memorandum, that McKesson participated in a
  marketing program with Merck relating to Fosamax, but fail to cite any source for
  such claims.

Nothing in any of the materials submitted by the Plaintiffs show any contact between

McKesson and *any* patient or physician that relates to Fosamax. Nothing in any of those

materials shows that McKesson distributed the Fosamax that Plaintiffs allegedly used.

---

[3] Exhibits to the Plaintiffs' Motion to Remand will hereinafter be cited as "Plfs' Ex.," with a reference to the appropriate exhibit number.

C.    **The Undisputed Facts Presented By Merck And McKesson**

The declarations submitted by Merck and McKesson in support of this Opposition demonstrate that there is no basis for any claim against McKesson. The Declaration of Jeffrey Rhodes, the Senior Director of Merck's Order Management Center, shows that there is no basis to believe that McKesson distributed the Fosamax that the Plaintiffs allegedly ingested. Declaration of Jeffrey Rhodes ("Rhodes Decl.") ¶ 1 (Beausoleil Decl. Ex. 5). McKesson is only one of many distributors of Merck products. *Id.* ¶ 2. Merck has at least 100 different distributors that it uses to distribute Merck products, including Fosamax, nationwide. *Id.* McKesson is not an exclusive distributor of Merck products in any state. *Id.* ¶ 3. Merck does not assign territories to its distributors within the United States, and Merck does not prevent any of its 100 or more distributors from distributing Merck products, including Fosamax, in any state. *Id.* ¶ 2. As far as Merck is concerned, any pharmacy or medical facility may obtain Merck products, including Fosamax, from any of Merck's distributors. *Id.*

The declarations of McKesson Senior Vice President Gregory Yonko and Thomas Loose, Merck's former Senior Director of Marketing for Merck's Osteoporosis Marketing Team, demonstrate that McKesson had no role in advertising or promoting Fosamax, or in contacting physicians or patients. Declaration of Gregory S. Yonko ("Yonko Decl.") ¶ 1 (Beausoleil Decl. Ex. 6); Declaration of Thomas Loose ("Loose Decl.") ¶ 1 (Beausoleil Decl. Ex). As Mr. Yonko's declaration states, when McKesson distributes a product such as Fosamax, McKesson's role is limited to forwarding the unopened product, with its original packaging and label, to a pharmacy or health-care facility. Yonko Decl. ¶ 4. McKesson had no role in developing Fosamax, obtaining approval for sale of Fosamax from the FDA, or in developing or obtaining approvals of Fosamax labeling. *See id.* ¶ 3. McKesson did not manufacture, produce, process,

encapsulate, test, label, package, or repackage Fosamax, and McKesson has not made any
representations as to the efficacy or safety of Fosamax.  *Id.*

As Mr. Loose attests, Merck has not engaged McKesson Corporation (or any of the other
entities mentioned by Plaintiffs) to conduct any marketing or advertising for Fosamax.  Loose
Decl. ¶ 2.  Nor has Merck engaged McKesson to communicate with physicians or patients
relating to Fosamax.  *Id.* ¶ 3.  McKesson has not acted as a sales representative for Merck in any
respect relating to Fosamax.  *Id.*

## IV.    ARGUMENT

### A.    This Court Has Diversity Jurisdiction And This Action Was Properly Removed Because McKesson Is Fraudulently Joined.

McKesson has been fraudulently joined in this case, and therefore must be disregarded
both for purposes of determining jurisdiction under 28 U.S.C. § 1332 and the propriety of
removal under 28 U.S.C. § 1441.  "[A] plaintiff may not defeat a federal court's diversity
jurisdiction and a defendant's right of removal by merely joining as defendants parties with no
real connection with the controversy."  *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61
(2d Cir. 1998).  Joinder will be considered fraudulent where there "is 'no reasonable basis' for
predicting liability on the claims alleged."  *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272,
280 n.4 (S.D.N.Y. 2001) (citing *Pampillonia*, 138 F.3d at 461); *Am. Mut. Liab. Ins. Co. v.
Flintkote Co.*, 565 F. Supp. 843, 845 (S.D.N.Y. 1983) (noting that the test for fraudulent joinder
"has uniformly been at least whether there is any reasonable basis for predicting that state law
might impose liability in the non-diverse defendant," and cited by *In re Rezulin*, *supra*).  In
making this determination, it is appropriate to consider undisputed facts presented by declaration,
as discussed more fully in § IV.A.2, *infra*.  *See Pampillonia*, 138 F.3d at 461 (finding fraudulent
joinder on basis of affidavit submitted by defendant); *McCabe v. Gen. Foods Corp.*, 811 F.2d

1336, 1339 (9th Cir. 1987). Such evidence is not necessary, however, where a plaintiff has

failed to allege, in his complaint, sufficient facts to support his claims in the first place. *See e.g.,*

*Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir. 2001).

Here, the Plaintiffs' claims against McKesson fail for three separate reasons, each by

itself sufficient to warrant dropping McKesson as a party under *Fed. R. Civ. P.* 21. First, the

Plaintiffs have not made any specific factual allegations in their Complaint that tie McKesson to

Plaintiffs' individual claims, and Plaintiffs cannot properly cure this defect by making

generalized allegations directed to all "defendants." Second, the unrebutted facts set forth by

McKesson and Merck demonstrate that there is no basis for any claim against McKesson. Third,

under the learned intermediary doctrine, it was Merck, and not McKesson, that had the duty to

provide warnings to the Plaintiffs' physicians, and McKesson could not have modified the FDA-

approved labeling on the unopened packages of Fosamax that it sold.[4]

### 1.    Plaintiffs' Conclusory, General Allegations Are Not Sufficient To State A Claim Against McKesson.

#### a.    Plaintiffs Allege No Facts To Show That McKesson Caused Plaintiffs' Alleged Injuries.

The crux of the Plaintiffs' Complaint is an alleged failure by Merck to adequately warn

of the alleged side effects associated with the use of Fosamax, and the Plaintiffs seek damages

based upon the harm that they claim resulted from the use of Fosamax. McKesson is specifically

mentioned only four times in the entire Complaint. Paragraphs 1 and 11 merely assert that

---

[4] Plaintiffs' request for attorney's fees is frivolous. For all the reasons stated above, this action was properly removed to this Court, and Merck can cite precedent for its position from the Central District of California (where this case was removed), as well as the other extensive supporting law discussed above. Even if McKesson were not fraudulently joined, diversity jurisdiction lies with respect to seventeen of these unrelated Plaintiffs with or without McKesson, and removal was proper under § 1441(b) with or without McKesson because McKesson had not been served. Even if remand *were* appropriate in this case, which it is not, there was certainly a strong basis for Merck's removal of this case and assessment of attorneys' fees against Merck would be wholly unwarranted.

McKesson distributed Fosamax, and Paragraph 6 contains only venue allegations. Paragraph 4 makes general allegations about McKesson's business as a nation-wide distributor of pharmaceuticals, such as a general claim that McKesson distributes drugs to large pharmacies and drug suppliers. With no factual basis, Plaintiffs then assert that "[u]pon information and belief, Defendant McKesson marketed, sold, and distributed the Fosamax ingested by Plaintiffs by distributing Fosamax to the pharmacy or drug store where each [of the eighteen] Plaintiff[s] purchased their Fosamax." Compl.

¶ 4. No facts are pled to support this sweeping conclusion, and nothing else has been alleged in the Complaint that could tie McKesson to the Plaintiffs' alleged injuries. Instead, the Plaintiffs make only general and conclusory assertions about "Defendants."

Plaintiffs' claims against McKesson for strict liability "failure to warn," implied warranty, and unjust enrichment require them to show that McKesson caused their alleged injuries. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (stating that plaintiff must allege a causal connection between injury and the defendant's conduct); *Aronis*, No. S-05-0486 WBS DAD, 2005 WL 5518488, at *1 (finding that plaintiff had not pled specific factual allegations on causation issues to justify joinder of McKesson); *Cox v. Depuy Motech, Inc.*, Civ. No. 95-cv-3848-L(JA), 2000 WL 1160486, at *5 (S.D. Cal. 2000) (finding that causation is an essential element of strict liability and negligence claims); *Mktg. West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612-13, 7 Cal. Rptr. 2d 859 (1992).

Without specific factual allegations to show a causal connection between Plaintiffs' alleged injuries and McKesson's distribution of Fosamax, Plaintiffs cannot maintain their claims against McKesson. *See Aronis v. Merck & Co., Inc.*, No. S-05-0486 WBS DAD, 2005 WL 5518485, at *1 (holding that McKesson was fraudulently joined in that action because "Plaintiff

makes no allegation that McKesson ever handled the specific pills that were allegedly the cause of her injuries," and denying motion for remand); *see also Becraft v. Ethicon*, Civ. No. C00-1474 CRB, 2000 WL 1721056, *3 (N.D. Cal. Nov. 2, 2000) (holding that a court may find that a distributor is fraudulently joined for purposes of removal unless the plaintiff can produce evidence or establish a good faith basis for believing that the product plaintiff received came from the defendant distributor). Plaintiffs present no specific, non-conclusory facts to support any allegation that McKesson caused their alleged injuries, that such injuries resulted from some act by McKesson, or that there was any privity between McKesson and the Plaintiffs. The Complaint's conclusory "information and belief" claims in paragraph 4 do not suffice, where the specific facts alleged by Plaintiffs provide no reason to believe that McKesson, as opposed to any of more than one hundred other Merck distributors, provided the Fosamax that Plaintiffs allegedly took.

Plaintiffs also have never alleged that McKesson had any contact with any of their various prescribing physicians. Plaintiffs' breach of warranty claim fails for this very reason: Plaintiffs present no non-conclusory allegations that McKesson made any specific representations or warranties to Plaintiffs or their prescribing physicians, or that Plaintiffs or their prescribing physicians relied on any such specific representation or warranty by McKesson. *See Keith v. Buchanan*, 173 Cal. App. 3d 13, 25, 220 Cal. Rptr. 392 (1985) (actual reliance is an element of implied warranty claim); *see also Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 558 (9th Cir. 1995) (dismissing breach of express warranty claim against distributor due to plaintiff's failure to identify any statements made by the distributor that were inconsistent with or went beyond either the product labels or the product guide provided by the manufacturer); *B.L.M. v. Sabo & Deitsch*, 55 Cal. App. 4th 823, 834, 64 Cal. Rptr. 2d 335 (1997) (to state a claim of

negligent misrepresentation, plaintiff must at least identify the alleged misrepresentation).  Given the Plaintiffs' plain strategic behavior in this case—seeking to use McKesson as a lever to avoid federal court—the Court should require Plaintiffs to support their conclusory assertions with specific facts.

        **b.**    **Plaintiffs Cannot Rely On Generalized Allegations That Do Not Specifically Refer To McKesson At All.**

Conclusory allegations directed to non-specific "defendants" cannot substitute for the specific allegations needed to state a cause of action against McKesson. *See Pampillonia*, 138 F.3d at 461 (finding fraudulent joinder where the "complaint fails to allege sufficient factual foundations to support either of [the plaintiff's] claims"); *see also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, MDL No. 1047, relating to Civ. No. C02-423R, Slip Op. at 5 (W.D. Wash. Nov. 27 2002) (rejecting general allegations directed to "defendants" and concluding that complaint failed to present any factual basis to believe that improperly joined defendant knew or had reason to know of alleged product defect) (hereinafter "*In re PPA*") (Beausoleil Decl. Ex. 8). For this reason, many courts have recognized that a failure to make any material allegations against a defendant such as McKesson demonstrates that the defendant's joinder is fraudulent. *See, e.g., Brown v. Allstate Insur.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (finding in-state defendants fraudulently joined where "no material allegations against [the in-state defendants] are made"); *Lyons v. Am. Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the plaintiff "to set forth any specific factual allegations" against them).

The Plaintiffs' general allegations, such as their claim that "Defendants" knew of the alleged risks associated with the use of Fosamax, are particularly deficient in this case. These

11

wholly conclusory assertions are both undermined and contradicted by Plaintiffs' more specific allegations that *Merck* purportedly concealed and misrepresented such information. *See, e.g.,* Compl. ¶¶ 16-20 (discussing interactions between Merck and FDA, and referring to actions that are only taken by drug manufacturer, not by distributors). These claims by the Plaintiffs are similar to those rejected by the District Court in *In re PPA, supra,* where the court found that an allegation that "manufacturer defendants concealed material facts regarding PPA through product packaging, labeling, advertising, promotional campaigns and materials, and other methods . . . directly undermines and contradicts the idea that [resident retail defendant] had knowledge or reason to know of alleged defects." *In re PPA,* MDL No. 1047, Slip Op. at 7. The Plaintiffs' allegations of Merck's purported concealment and misrepresentation of the alleged risks of Fosamax belie any inference that McKesson, a wholesale distributor, had knowledge of facts that Merck allegedly concealed. *See* Compl. ¶¶ 22, 35.

### 2.    Plaintiffs' Claims Have No Merit In Light Of The Facts Set Forth By Merck And McKesson.

Even if Plaintiffs' general allegations were sufficient, by themselves, to state more than a mere theoretical claim, which they are not, any such claim would fail in light of the unrebutted facts presented by Merck and McKesson. While the propriety of removal to federal court is usually based upon the allegations in the plaintiff's complaint, where fraudulent joinder is at issue, the defendant "is entitled to present the facts showing the joinder to be fraudulent." *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.), *cert. denied,* 525 U.S. 963 (1998); *see also Pampillonia,* 138 F.3d at 461 (considering affidavits submitted by the parties); *Cavallini v. State Farm Mut. Auto. Ins. Co.,* 44 F.3d 256, 263 (5th Cir. 1995) (stating that the court may "pierc[e] the pleadings" and consider "summary judgment type evidence") (cited by *McCabe, supra*). Thus, it is well established that fraudulent joinder may be established on the basis of

declarations such as those filed by Merck and McKesson in this case. *See, e.g., Pampillonia*, 138 F.3d at 461 (citing plaintiff's and defendants' declarations); *McCabe*, 811 F.2d at 1339 (citing same); *Legg v. Wyeth*, 428 F.3d 1317, 1322-23 (11th Cir. 2005) (finding fraudulent joinder of sales representatives and reversing trial court's refusal to consider representatives' affidavits).

The declarations submitted on behalf of Merck and McKesson in this action clearly demonstrate that Plaintiffs' claims lack any foundation. *In re Rezulin Prods. Liab. Litig.*, 133 F.Supp. 2d at 281 (finding fraudulent joinder of sales representatives where representatives' unrebutted declarations averred that they had not dealt with plaintiffs and had made no statements to the general public about the drug at issue). McKesson did not manufacture, produce, process, encapsulate, test, label, package, or repackage Fosamax, and McKesson has not made any representations as to the efficacy or safety of Fosamax. Yonko Decl. ¶ 3. Nor has McKesson been involved in Merck's promotion of Fosamax. McKesson has not promoted or advertised Fosamax, or contacted physicians or patients relating to Fosamax. Loose Decl. ¶¶ 2-3. McKesson's role was limited to forwarding the unopened product, with its original packaging and label, to a pharmacy or health-care facility. Yonko Decl. ¶ 4.

These declarations also show that there is no basis to believe that McKesson distributed the Fosamax that Plaintiffs claim to have ingested. There are at least 100 distributors of Merck products, all of whom may distribute Fosamax. Rhodes Decl. ¶ 2. Merck does not limit these distributors by territory – each is permitted to sell Merck products, including Fosamax, in any state in the United States. *Id.* ¶¶ 2-3. The Plaintiffs do not specify where they obtained Fosamax, and provide no basis to believe that they purchased this drug from a pharmacy or other provider (the Plaintiffs do not state which) that, in turn, bought its products from McKesson, as opposed to the roughly 100 or more other Merck distributors.

The materials submitted by the Plaintiffs in support of their Motion to Remand do not contradict or rebut any of the plain statements set forth in these declarations. Plaintiffs' unpled assertions that a former Merck executive became an executive for a company affiliated with McKesson, for example, does not relate to McKesson's distribution of Fosamax in any way. Plaintiffs' claim that companies or entities affiliated with McKesson may have provided services to the pharmaceutical industry also does not relate to Fosamax. There is no good faith basis whatsoever for Plaintiffs' wholly fabricated claims of a joint marketing venture between Merck and McKesson. As the attached Declarations state, Merck did not retain McKesson to advertise or promote Fosamax, to act as a sales representative for Merck relating to Fosamax, or to communicate with physicians or patients in any way relating to Fosamax. Loose Decl. ¶¶ 2-3. The Plaintiffs cannot rebut these declarations by engaging in pure speculation, and the materials submitted by the Plaintiffs do not support their claims. Based upon the unrebutted facts submitted by McKesson and Merck in this case, the Plaintiffs' claims against McKesson have no basis.

### 3. Plaintiffs' Claims Are Barred Because, Under California's Learned Intermediary Doctrine, A Distributor Has No Duty To Warn.

Even if Plaintiffs had directed specific factual allegations at McKesson, there still would be no legal basis for Plaintiffs' claims against McKesson because those claims are based on an alleged failure to warn and premised – as to McKesson – on a non-existent duty. Under California's well-established learned intermediary doctrine, the duty to warn runs from a drug's manufacturer to the physician who prescribes the drug. *See, e.g., Carlin v. Superior Court,* 13 Cal. 4th 1104, 1117, 56 Cal. Rptr. 2d 162 (1996); *Stevens v. Parke, Davis & Co.,* 9 Cal. 3d 51, 65, 107 Cal. Rptr. 45 (1973) ("In the case of medical prescriptions, if adequate warning of potential dangers of a drug has been given to doctors, there is no duty by the drug manufacturer

to insure that the warning reaches the doctor's patient for whom the drug is prescribed.")
(internal quotations omitted).  The duty to warn is limited in this manner because the physician is
in the best position to determine whether a patient should take a prescription medication, and the
patient's reliance on a physician's informed judgment would be undermined if duties were
imposed upon manufacturers or others, such as McKesson, to warn patients directly.  *See, e.g.,*
*Carmichael v. Reitz,* 17 Cal. App. 3d 958, 988-89, 95 Cal. Rptr. 381 (1971) (providing rationale
for duty running to doctor instead of patient).

Because the duty to warn is imposed upon a drug's manufacturer, who has the requisite
scientific knowledge, numerous courts, including courts applying California law, have found
distributors like McKesson to have been fraudulently joined in failure-to-warn cases such as this
one.  *See, e.g., Barlow v. Warner-Lambert Co.*, Case No. CV 03 1647 R (RZx), Slip Op. at 2
(C.D. Cal. April 28, 2003) ("The Court finds that there is no possibility that plaintiffs could
prove a cause of action against McKesson, an entity which distributed this FDA-approved
medication [Rezulin] to pharmacists in California;" motion to remand denied) (Ex. 1 hereto);
*Skinner v. Warner-Lambert Co.,* Case No. CV 03 1643-R (RZx), Slip Op. at 2 (C.D. Cal. April
28, 2003) (same) (Beausoleil Decl. Ex. 2); *In re Baycol Prods. Liab. Litig.*, MDL No. 1431, Case
No. 139, Slip Op. at 3-4 (D. Minn. May 24, 2002) (finding retail distributor of prescription drugs
fraudulently joined) (Beausoleil Decl. Ex. 9); *see also Schaerrer v. Stewart's Plaza Pharmacy*,
79 P.3d 922, 929 (Utah 2003) (declining to extend duty to warn to retail distributor of
prescription diet drug because distributor's "ability to distribute prescription drugs is limited by
the highly restricted FDA-regulated drug distribution system in this country").

The California state court decisions cited by Plaintiffs are inapposite, because those cases
do not involve either a pharmaceutical product *or* a learned intermediary.  *See* Plf's Mem. Supp.

Mot. Rem. at 10 (citing cases such as *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 281 Cal. Rptr. 528 (1991)). Nothing in *Anderson* or the other California cases cited by Plaintiffs suggests that a distributor such as McKesson has a duty to warn, where McKesson *cannot* change the warnings required by the FDA on product labeling, and the duty to warn the doctor is imposed upon the manufacturer who must obtain FDA approval for the product label and warning information. The Plaintiffs cite no case that applies California law to find a distributor liable for failing to modify the pre-printed and FDA-approved labeling on a regulated pharmaceutical product.

It is undisputed that Merck and the FDA prepared the information to be included with the prescription medication Fosamax through a collaborative process, with the FDA having final approval over the information that could be presented. *See* 21 U.S.C. § 331. Once the FDA determines the form and content of such prescribing and warning information, it is a violation of federal law to alter that information. *See* 21 U.S.C. § 331(k) (prohibiting drug manufacturers and distributors from causing the "alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling" of an FDA-approved drug held for sale); *Brown v. Superior Court*, 44 Cal. 3d 1049, 1069 n.12, 245 Cal. Rptr. 412 (1988) (FDA regulates the testing, manufacturing, and marketing of drugs, including the content of their warning labels). Even if McKesson had distributed the Fosamax that Plaintiffs claim to have ingested, which is not supported by any allegation in the Complaint, McKesson could not have changed the information it was given by Merck, as approved by the FDA, without violating federal law. This is not, as Plaintiffs contend, purely an argument of "preemption" by federal law. Rather, it is simply the common sense proposition that tort law does not impose duties that would require a party to violate the law in order to fulfill them.

However, even if such a duty did exist under California law, which it does not, that duty *would* be preempted by federal law. As noted above, distributors are prohibited from modifying packaging for FDA-approved drugs. The FDA itself has recently expressed concern that state law requiring additional or different warnings from those imposed by the FDA *does*, in fact, interfere with its statutory mandate to require appropriate labeling. *See* Final Rule on *Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products*, 71 Fed. Reg. 3922, 3934-35 (Jan. 24, 2006) (concluding that "the determination whether labeling revisions are necessary is, in the end, squarely and solely FDA's under the act," and efforts by plaintiffs "to impose additional warnings can lead to labeling that does not accurately portray a product's risks, thereby potentially discouraging safe and effective use of approved products . . . and undermining the objectives of the act").[5]

The preemption cases cited by the Plaintiffs discuss only the duties of *manufacturers*, who prepare a drug's labeling and obtain its approval from the FDA. Here, the question is whether a *distributor* that merely distributes an unopened, unaltered, regulated pharmaceutical, with its original FDA-mandated labeling, may be liable if the distributor does not modify that labeling to provide additional or different warnings. Federal law clearly states that a distributor should not make such modifications and if California *did* impose such a duty on a distributor (which it does not) that duty would be preempted.[6] Because no duty runs from a prescription

---

[5] *See also Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514 (E.D. Pa. 2006) (finding state failure to warn claims to be preempted and observing that "it is abundantly clear that the FDA's position is entitled to significant deference"); *In re Bextra and Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, No. M: 05-1699 CRB, 2006 WL 2374742 (N.D. Cal. Aug. 16, 2006) (same); *Sykes v. Glaxo-SmithKline*, 484 F. Supp. 2d 289 (E.D. Pa. 2007) (same); *Tucker v. SmithKline Beecham Corp.*, 2007 WL 2726259, at *10 (S.D. Ind. 2007).

[6] The Plaintiffs disingenuously assert that a case may not be removed on the basis of a federal defense to liability, citing only cases that state that a federal defense does not create *federal question* jurisdiction. Plfs' Mem. Supp. Mot to Rem. at 11-12. This case, of course, has been removed on the basis of diversity jurisdiction, and there is complete diversity between Merck and the Plaintiffs. The

drug distributor to a consumer and because a prescription drug distributor has no ability to alter the warning of a prescription drug, no claim can be stated by Plaintiffs against McKesson based on an alleged failure to warn.

**B.    Even If Plaintiffs Had Stated A Proper Claim Against McKesson, Removal Would Be Proper.**

Even assuming that McKesson were properly joined in this case, which it is not for the reasons discussed in § IV.A, above, this case should not be remanded because (1) the claims of the single Plaintiff who is a California resident are misjoined to the claims of the other seventeen Plaintiffs and there is diversity jurisdiction between the remaining seventeen Plaintiffs and the Defendants (including McKesson), and (2) removal was proper under 28 U.S.C. § 1441(b) because McKesson had not been served at the time of removal, and hence no California-resident defendant was "properly joined and served."

**1.    The Lone California Plaintiff's Claims Are Misjoined.**

Numerous federal courts have found that diversity jurisdiction cannot properly be defeated by misjoining unrelated claims by multiple plaintiffs. *See, e.g., McNaughton v. Merck & Co., Inc.,* Case No. 04 Civ. 8297 (LAP) (S.D.N.Y. Dec. 17, 2004) (Preska, U.S.D.J.) (Beausoleil Decl. Ex. 10); *Grennell v. W. S. Life Ins. Co.,* 298 F. Supp. 2d 390 (S.D. W.Va. 2004) (denying motion to remand after finding that claims by nondiverse plaintiffs were not properly joined with claims by diverse plaintiffs, where claims arose under differing state laws and at different times); *In re Diet Drugs,* No. Civ.A-98-20478, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999) (denying plaintiffs' motion to remand, and finding that non-diverse plaintiffs in pharmaceutical product liability case were misjoined to claims of other plaintiffs, where

---

Plaintiffs have no reasonable claim against McKesson, both because McKesson cannot be liable for failure to warn in this context and because any such duty would be preempted if California sought to impose one.

"[p]laintiffs attempt to join persons from seven different states into one civil action who have absolutely no connection to each other except that they each ingested [the drugs at issue in that case]"); *see also Alabama S. Ry. Co. v. H.C. Thompson*, 200 U.S. 206, 218 (1906) (stating that "[f]ederal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the [f]ederal courts of the protection of their rights in those tribunals").[7]

According to the Plaintiffs' own allegations, the only common element in these Plaintiffs' claims is that, at some point in time, each Plaintiff or his or her spouse took Fosamax. This use of Fosamax took place in different states and was subject to different state laws. Plaintiffs took Fosamax at different times and in different prescribed amounts, and the Fosamax was prescribed for different periods of time, for Plaintiffs with different medical conditions and histories, and on the basis of advice and consultation with different physicians. Simply put, these cases do not arise out of the same transaction or occurrence, as required for proper joinder of parties under Federal Rule of Civil Procedure 20.

The single California Plaintiff is also not properly joined under California law. *See, e.g., In re Diet Drugs*, 1999 WL 554584, at *3 n.9 (noting, when dropping claims of nondiverse plaintiffs from suit and denying motion to remand, that nondiverse plaintiffs were not properly joined under Alabama law or federal law). Like Federal Rule of Civil Procedure 20, California Code of Civil Procedure § 378, titled "Permissive Joinder," provides that "all persons may join in one action as plaintiffs if: they assert any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or

---

[7] Courts managing multidistrict litigation have addressed this problem by requiring individual plaintiffs to refile their own, individual complaints. *See, e.g., In re Vioxx Prods. Liab. Litig.*, 2007 WL 3332707, at *1 n.1 (E.D. La. 2007); *In re Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269 (D. Minn. 2002); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1243-44 (9th Cir. 2006).

occurrences and if any question of law or fact common to all these persons will arise in the action." The Plaintiffs do not meet this standard here.

"[W]hen faced with removed, nondiverse, misjoined plaintiffs, the proper course of action for a district court is to sever the claims of the nondiverse plaintiffs so as to protect the right of the removing defendant to litigate in a federal forum." *Grennell*, 298 F. Supp. 2d at 396 *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 147-48 (S.D.N.Y. 2001) (same); *Lyons*, 1997 WL 809677, at *5 (severing both misjoined plaintiffs and fraudulently joined defendants, and denying motion to remand). Thus, even if McKesson were a proper party to this case, which it is not, the claims of the lone California Plaintiff do not affect this Court's diversity jurisdiction over this suit, and that Plaintiff should be dropped as a party from this case under Federal Rule of Civil Procedure 21. *In re Diet Drugs*, 1999 WL 554584, at *3.

**2.      Removal Was Proper Under § 1441(b) Where The Lone In-State Defendant, McKesson, Had Not Been Served At The Time Of Removal.**

Section 1441(b) provides for removal to this Court where diversity jurisdiction lies and no "properly joined and served" defendant is from California. Even assuming that McKesson were properly joined, which it is not, removal would still be proper under § 1441(b) because McKesson had not been served on the date of removal. "[W]here, as here, [complete] diversity does exist between the parties, an unserved resident defendant may be ignored in determining removability." *Ott v. Consol.Freightways Corp.*, 213 F. Supp. 2d 662, 665 (S.D. Miss.2002). Defendants who have not been served at the time of removal are disregarded. *See Waldon v. Novartis Pharm. Corp.*, No. C07-01988 MJJ, 2007 WL 1747128 (N.D. Cal. June 18, 2007) (finding that removal was proper where case was removed to California federal courts before McKesson was served); *Republic W. Ins. Co. v. Int'l Ins. Co.*, 765 F. Supp. 628, 629 (N.D. Cal. 1991) (stating that, "[b]ecause [defendant] had not yet been served at the time that [another

defendant] filed its removal petition, the language of § 1441(b) mandates the finding that this case was properly removed").[8]

Merck removed this case on July 18, 2007.  McKesson was served on July 24, 2007.  *See* Frisch Decl. ¶ 3.  For this reason, McKesson was not "properly joined and served" at the time of removal, and McKesson's presence in this lawsuit would not prevent removal under § 1441(b), even if McKesson's joinder were not fraudulent.[9]

### C.    Limited Discovery Would Be Appropriate Before Any Remand.

Plaintiffs' Motion to Remand should be denied, and McKesson dropped as a party from this action.  If the facts set forth above are not dispositive of these issues, however, the Court should not grant Plaintiffs' motion without first permitting Merck to engage in limited discovery directed to the remand issues.

Deposition testimony may be appropriately considered in assessing whether a defendant has been fraudulently joined.  *See Arseneault v. Congoleum Corp.,* No. 01 Civ. 10657 LMM, 2002 WL 472256, at *6 (S.D.N.Y. March 26, 2002) (considering deposition testimony and other material outside pleadings in order to resolve claim of fraudulent joinder); *Morris,* 236 F.3d at

---

[8] Many other decisions have similarly applied the plain language of § 1441(b) to find that an in-state defendant who has not been served does not prevent removal. *See Jaeger v. Schering Corp.,* No. 07-03465 DMC, 2007 WL 3170125 (D.N.J. Oct. 21, 2007); *Frick v. Novartis Pharm. Corp.,* No. 05-5429 DRD, 2006 WL 454360 (D.N.J. Feb. 23, 2006); *Massey v. Cassens & Sons, Inc.,* No. 05-CV-598 BRJ, 2006 WL 381943 (S.D. Ill. Feb. 26, 2006) (same); *see also Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.,* 314 F. Supp. 2d 177, 180 (S.D.N.Y. 2003); *Test Drilling Serv., Co. v. Hanor Co.,* 322 F. Supp. 2d 953, 957 (C.D. Ill. 2003); *In re Bridgestone/Firestone, Inc.,* 184 F. Supp. 2d 826, 828 (S.D. Ind. 2002); *Wensil v. E.I. Dupont de Nemours & Co.,* 792 F. Supp. 447, 448 (D.S.C. 1992).

[9] As noted above, a defendant who has not been served at the time of removal does not need to join in or consent to removal. *See, e.g., Durove v. Fabian Transp., Inc.,* No. 04-7000 RJH, 2004 WL 2912891, at 1 n.5 (S.D.N.Y. Dec. 14, 2004); *Helmke v. Unumprovident Corp.,* No. 05-5429 DRD, 2002 WL 90988, at 1 (N.D. Cal. Jan. 18, 2002).

1068.[10] Merck believes that the Motion to Remand should be denied based upon the lack of any

specific allegations tying McKesson to Plaintiffs' claims, the specific, unrebutted facts presented

in the declarations submitted with this opposition, and the other issues set forth above. Should

the Court disagree, however, Merck requests that it be permitted to take limited discovery of the

Plaintiffs, for purposes of further establishing that Plaintiffs have no basis for their claims against

McKesson.

---

[10] *See also Legg*, 428 F.3d at 1322-23 (stating that "[t]he proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)," and that depositions are properly considered) (internal quotations omitted); *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990) ("When determining fraudulent joinder, the district court may look to the facts established by summary judgment evidence as well as the controlling state law. Hence, the trial court properly considered affidavits and depositions in ruling on the plaintiffs' motion to remand.").

## V.    CONCLUSION

For all of the foregoing reasons, Merck respectfully asks that Plaintiffs' Motion to Remand be denied.  In the alternative, Merck asks that it be permitted to engage in limited discovery with respect to these remand issues, should the Court feel that further information is necessary to establish jurisdiction.

DATED:  November 19, 2007

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By: _____

Norman C. Kleinberg
Theodore V. H. Mayer
William J. Beausoleil
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

Paul F. Strain
M. King Hill, III
David J. Heubeck
Randolph S. Sergent
VENABLE LLP
Two Hopkins Plaza, Suite 1800
Baltimore, MD 21201
(410) 244-7400

*Attorneys for Defendant Merck & Co., Inc.*