Norman C. Kleinberg
Theodore V. H. Mayer
William J. Beausoleil
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

Paul F. Strain
M. King Hill, III
David J. Heubeck
Randolph S. Sergent
VENABLE LLP
Two Hopkins Plaza, Suite 1800
Baltimore, MD 21201
(410) 244-7400

*Attorneys for Defendant Merck & Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
IN RE:  Fosamax Products Liability        :
Litigation                                :        No. 1:06-md-01789-JFK-JCF
                                          :
-----------------------------------------------------x
*This document relates to*                :
                                          :
Carrie Smith, *et al.*, v. Merck & Co., Inc.    :
and McKesson Corporation,                 :
Case No. 1:07-cv-09564-JFK                :
-----------------------------------------------------x

## DECLARATION OF WILLIAM J. BEAUSOLEIL

WILLIAM J. BEAUSOLEIL declares as follows:

          1.      I am an attorney admitted to practice before this Court and a partner at

Hughes Hubbard & Reed LLP, attorneys for Defendant Merck & Co., Inc. ("Merck").  I am

familiar with the facts set forth herein.  I make this declaration based on my own personal

knowledge and the business records of the Firm.

2.      I make this declaration in support of Defendant Merck & Co., Inc.'s Opposition to Plaintiffs' Motion to Remand.

3.      A true and correct copy of the Order Denying Plaintiffs' Motion for Remand in *Barlow v. Warner-Lambert Co.*, No. CV 03 1647 R (RZx) (C.D. Cal. April 28, 2003) is attached hereto as Exhibit 1.

4.      A true and correct copy of the Order Denying Plaintiffs' Motion for Remand in *Skinner v. Warner-Lambert Co.*, Case No. CV 03 1643-R (RZx) (C.D. Cal. April 28, 2003) is attached hereto as Exhibit 2.

5.      A true and correct copy of the Letter from Megan S. Wynne, Counsel for McKesson Corporation, to Randolph Stuart Sergent, Counsel for Merck & Co., Inc., dated November 16, 2007, is attached hereto as Exhibit 3.

6.      A true and correct copy of the Declaration of Wendi J. Frisch in Support of Defendant Merck & Co, Inc.'s Opposition to Plaintiffs' Motion to Remand in *Smith v. Merck & Co., Inc.*, No. 1:07-CV-09564-JFK (S.D.N.Y. Nov. 15, 2007) is attached hereto as Exhibit 4.

7.      A true and correct copy of the Declaration of Jeffrey Rhodes in Support of Defendant Merck & Co., Inc's Opposition to Plaintiffs' Motion to Remand to State Court in *Morris v. Merck & Co., Inc.*, No. CV-06-5587 CAS (PLAx) (C.D. Cal. Nov. 10, 2006) is attached hereto as Exhibit 5.

8.      A true and correct copy of the Declaration of Gregory S. Yonko in Support of Defendant Merck & Co., Inc.'s Opposition to Plaintiffs' Motion to Remand in *Smith v. Merck & Co., Inc.*, No. 1:07-CV-09564-JFK (S.D.N.Y. Nov. 15, 2007) is attached hereto as Exhibit 6.

9.    A true and correct copy of the Declaration of Thomas Loose in Support of Defendant Merck & Co., Inc's Opposition to Plaintiffs' Motion to Remand for *In re Fosamax Prods. Liab. Litig.*, MDL No 1:06-md-1789 (JFK) (S.D.N.Y. Nov. 16, 2007) is attached hereto as Exhibit 7.

10.    A true and correct copy of the Order Denying Plaintiff's Motion for Remand for *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, Civ. No. C02-423R (W.D. Wash. Nov. 27 2002) is attached hereto as Exhibit 8.

11.    A true and correct copy of the Slip Opinion for *In re Baycol Prods. Litig.*, MDL No. 1431, Case No. 139 (D. Minn. May 24, 2002) is attached hereto as Exhibit 9

12.    A true and correct copy of the Order in *McNaughton v. Merck & Co., Inc.*, No. 04 Civ. 8297 (LAP) (S.D.N.Y. Dec. 17, 2004) is attached hereto as Exhibit 10.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
WILLIAM J. BEAUSOLEIL

Executed this
19th day of November, 2007

# Exhibit 1

APR 2 8 2003

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

1
2
3
4
5
6          UNITED STATES DISTRICT COURT
7          CENTRAL DISTRICT OF CALIFORNIA
8              WESTERN DIVISION
9   In re REZULIN LITIGATION                    CASE NO. CV 03-1647-R(RZx)
10
11  JACKIE BARLOW; CARMA DEKOVEN;        [PROPOSED] ORDER
    ERNESTINE DELAFONT, ZOE EGGER-       DENYING PLAINTIFFS'
12  MUKARVTZ, and SAMUEL                 MOTION FOR REMAND
    GODBOULDT,
13
         Plaintiffs,
14
    v.
15
    WARNER-LAMBERT CO.; PFIZER INC;
16  JERROLD OLEFSKY; McKESSON CORP.,
    et al.
17
             Defendants.
18
19      Defendants removed this action from state court to this Court alleging diversity
20  jurisdiction. Defendants asserted that Jerrold Olefsky and McKesson Corp., both of
21  whom are California residents, were fraudulently joined. Plaintiffs moved to remand
    to state court. The motions came on for hearing by the Court on April 21, 2003.
22
        Having considered the motions and other documents in support of and in
23  opposition to the motions, having heard the arguments of counsel, and being fully
24  advised in the matter, the Court denies the motion.
25
        The Court finds that Dr. Jerrold Olefsky ("Dr. Olefsky"), a patent-holder and
26  clinical investigator, owed no legal duty to any of the plaintiffs, and, therefore, there
27  is no possibility that the plaintiffs can prove a cause of action against Dr. Olefsky.
28  Thus, Dr. Olefsky must be disregarded for purposes of determining federal diversity

20184755.WPD                    [PROPOSED] ORDER

Exhibit B Page 16

1   jurisdiction.

2       The Court further finds that there is no possibility that plaintiffs could prove a

3   cause of action against McKesson, an entity which distributed this FDA-approved

4   medication to pharmacists in California. Pursuant to comment k of the Restatement

5   (Second) of Torts Section 402A and California law following comment k, a

6   distributor of a prescription drug is not subject to strict liability.

7       Accordingly, this Court has diversity jurisdiction over each of these actions.

8   The motion to remand is denied.

9       IT IS SO ORDERED.

10  Dated: April 28, 2003

11                                    MANUEL L. REAL

12                                    _____
                                      MANUEL L. REAL
13                                    UNITED STATES DISTRICT JUDGE

14  Submitted by:

15  O'DONNELL & SHAEFFER LLP
    633 West Fifth Street, Suite 1700
16  Los Angeles, California 90071
    Telephone:  (213) 532-2000
17  Facsimile:  (213) 532-2020

18  KAYE SCHOLER LLP
    1999 Avenue of the Stars
19  Los Angeles, California 90067
    Telephone:  (310) 788-1000
20  Facsimile:  (310) 788-1200

21  By: _____
        Robert Barnes
22  Attorneys for Defendants
    WARNER-LAMBERT COMPANY and PFIZER INC.

23

24

25

26

27

28

KAYE SCHOLER LLP

33104745.WPD

2

[PROPOSED] ORDER

Exhibit B  Page  17

# Exhibit 2

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re REZULIN LITIGATION | CASE NO. CV 03-1643-R(RZx) |
| DIANE SKINNER; and DIANE YBARRA, | [PROPOSED] ORDER |
| Plaintiffs, | DENYING PLAINTIFFS' MOTION FOR REMAND |
| v. | |
| WARNER-LAMBERT CO.; PFIZER INC.; JERROLD OLEFSKY; McKESSON CORP., et al. | |
| Defendants. | |

Defendants removed this action from state court to this Court alleging diversity jurisdiction. Defendants asserted that Jerrold Olefsky and McKesson Corp., both of whom are California residents, were fraudulently joined. Plaintiffs moved to remand to state court. The motions came on for hearing by the Court on April 21, 2003.

Having considered the motions and other documents in support of and in opposition to the motions, having heard the arguments of counsel, and being fully advised in the matter, the Court denies the motion.

The Court finds that Dr. Jerrold Olefsky ("Dr. Olefsky"), a patent-holder and clinical investigator, owed no legal duty to any of the plaintiffs, and, therefore, there is no possibility that the plaintiffs can prove a cause of action against Dr. Olefsky. Thus, Dr. Olefsky must be disregarded for purposes of determining federal diversity jurisdiction.

KAYE SCHOLER LLP

1

23104767.WPD                    [PROPOSED] ORDER

1   The Court further finds that there is no possibility that plaintiffs could prove a
2   cause of action against McKesson, an entity which distributed this FDA-approved
3   medication to pharmacists in California. Pursuant to comment k of the Restatement
4   (Second) of Torts Section 402A and California law following comment k, a
5   distributor of a prescription drug is not subject to strict liability.
6       Accordingly, this Court has diversity jurisdiction over each of these actions.
7   The motion to remand is denied.
8       IT IS SO ORDERED.
9   Dated: April 23, 2003

10                                          MANUEL L. REAL
11
12                                          MANUEL L. REAL
13                                          UNITED STATES DISTRICT JUDGE
    Submitted by:
13
14  O'DONNELL & SHAEFFER LLP
    633 West Fifth Street, Suite 1700
15  Los Angeles, California 90071
    Telephone: (213) 532-2000
16  Facsimile:  (213) 532-2020

17  KAYE SCHOLER LLP
    1999 Avenue of the Stars
18  Los Angeles, California 90067
    Telephone: (310) 788-1000
19  Facsimile:  (310) 788-1200

20  By: Robert Barnes
        Robert Barnes
21  Attorneys for Defendants
    WARNER-LAMBERT COMPANY and PFIZER INC.
22
23
24
25
26
27
28

KAYE SCHOLER LLP

                                    2
D104767.wpd                    [PROPOSED] ORDER

# Exhibit 3



**Morris
Polich &
Purdy** LLP

Landon Morris (1904-1991)

ATTORNEYS AT LAW

1055 West Seventh Street
Twenty Fourth Floor
Los Angeles, California
90017-2503
Ph: 213.891.9100
Fx: 213.488.1178
www.mpplaw.com

November 16, 2007

Writer's E-mail address:
mwynne@mpplaw.com

*Via Facsimile & U.S. Mail*

Randolph Stuart Sergent, Esq.
**VENABLE LLP**
Two Hopkins Plaza, Suite 1800
Baltimore, MD 21201-2978

Re:     **IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION**
         **Cause No.:  1:07-CV-09564-JFK**

Dear Mr. Sergent:

I am writing as counsel for Defendant McKesson Corporation ("McKesson") to advise you that McKesson joins in Defendant Merck & Co., Inc.'s Opposition to Plaintiffs' Motion to Remand to State Court in the above-referenced matter. As soon as counsel for McKesson receives authorization to electronically file documents in this matter, McKesson will file its Joinder to Merck's Opposition.

Please do not hesitate to contact me if you have any questions.

Very truly yours,

MORRIS POLICH & PURDY LLP

*for*

Megan S. Wynne

MSW/mpl

# Exhibit 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE:** )<br><br>**FOSAMAX PRODUCTS LIABILITY** )<br>**LITIGATION** )<br><br>*This Document Relates To*: )<br><br>**CARRIE SMITH, et al.** )<br><br>       **Plaintiffs,** )<br><br>**vs.** )<br><br>**MERCK & CO., INC. and MCKESSON** )<br>**CORPORATION,** )<br><br>       **Defendants.** )<br> | 1:06-MD-1789 (JFK)<br><br>Cause No.:  1:07-CV-09564-JFK<br><br>**DECLARATION OF WENDI J.**<br>**FRISCH IN SUPPORT OF**<br>**DEFENDANT MERCK & CO.,**<br>**INC.'S OPPOSITION TO**<br>**PLAINTIFFS' MOTION TO**<br>**REMAND** |

I, Wendi J. Frisch declare:

1.      I am an attorney at law licensed to practice before all the courts of California and all districts of the United States District Court in California. I am an attorney in the law firm of Morris Polich & Purdy LLP, attorneys of record for Defendant McKesson Corporation ("McKesson"), in the above-captioned action. I am familiar with the facts, pleadings, and records in this action, and if called upon to testify, I could and would competently testify as follows:

2.      Corporation Service Company accepts service of process on behalf of McKesson.

3.      On July 24, 2007, Corporation Service Company accepted personal service, in the case of *Smith, et al. v. Merck & Co., Inc., et al.*, on McKesson's behalf.

1

I declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct, and that this declaration was executed on this 15th day of November, 2007, in Los Angeles, California.

_____
Wendi J. Frisch, Declarant

# Exhibit 5

1  VENABLE LLP
2  Douglas C. Emhoff (Cal. Bar No. 151049)
   Jeffrey M. Tanzer (Cal. Bar No. 129437)
3  2049 Century Park East, Suite 2100
   Los Angeles, California 90067
   Telephone: (310) 229-9900
4  Facsimile:  (310) 229-9901

5  Attorneys For Defendant
6  MERCK & CO., INC.

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11 EDWARD A. MORRIS and RUTH P.          CASE NO.:  CV-06-5587 CAS
   MORRIS, husband and wife; HELEN F.    (PLAx)
12 TRACY, a single woman; JUDY C. PENN
   and BUDDY W. PENN, wife and husband,
13                                        DECLARATION OF JEFFREY
           Plaintiffs,                    RHODES IN SUPPORT OF
14                                        DEFENDANT MERCK & CO.,
   v.                                     INC.'S OPPOSITION TO
15                                        PLAINTIFFS' MOTION TO
   MERCK & CO., INC., a New Jersey        REMAND TO STATE COURT
16 corporation; McKESSON CORPORATION,
   a Delaware corporation; and DOES 1-50,
17
           Defendants.
18

19

20

21 I, Jeffrey Rhodes, declare as follows:

22

23     1.    I am employed by Merck & Co., Inc. ("Merck") and am the Senior Director

24 of the Merck Order Management Center.  Among other things, I am responsible for

25 managing direct purchase accounts with pharmaceutical distributors, including McKesson

26 Corporation ("McKesson").  Except as otherwise noted, I have personal knowledge of the

27 facts stated herein and, if called to testify as a witness, I could and would testify

28 competently thereto.

2.    Merck has at least 100 distributors that it uses to distribute its products to pharmacies, hospitals, and other medical facilities across the country, any one of those distributors may distribute FOSAMAX® and FOSAMAX® Plus D (hereinafter "FOSAMAX®").  Merck does not assign territories to its distributors or otherwise limit their U.S. sales by geographic region or by State.  As far as Merck is aware, a particular pharmacy or medical facility in a particular state may purchase Merck products, including FOSAMAX®, from any of these distributors.

3.    McKesson is not an exclusive distributor of Merck products, and Merck uses many other suppliers to distribute pharmaceuticals such as FOSAMAX®.  McKesson is just one of many suppliers who could have supplied FOSAMAX® to any given pharmacy or medical facility throughout the United States.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on this 10th day of November, 2006, in Lansdale, Pennsylvania.

Jeffrey Rhodes

# Exhibit 6

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>**FOSAMAX PRODUCTS LIABILITY LITIGATION**<br><br>*This Document Relates To:*<br><br>**CARRIE SMITH, et al.**<br><br>　　　　　　　　**Plaintiffs,**<br><br>vs.<br><br>**MERCK & CO., INC. and MCKESSON CORPORATION,**<br><br>　　　　　　　**Defendants.** | ) <br> ) <br> ) <br> ) 1:06-MD-1789 (JFK) <br> ) <br> ) <br> ) Cause No.:　1:07-CV-09564-JFK <br> ) <br> ) **DECLARATION OF** <br> ) **GREGORY S. YONKO IN** <br> ) **SUPPORT OF DEFENDANT** <br> ) **MERCK & CO., INC.'S** <br> ) **OPPOSITION TO** <br> ) **PLAINTIFFS' MOTION TO** <br> ) **REMAND** <br> ) <br> ) |

I, Gregory Yonko, declare:

1.　　I am Senior Vice President – Purchasing for McKesson Corporation ("McKesson"), and make this declaration in support of Defendant Merck & Co., Inc.'s Opposition to Plaintiffs' Motion to Remand, based on my personal knowledge.

2.　　I have been in my current position since 1997, and have been employed by McKesson for over 25 years. As Senior Vice President – Purchasing, I am responsible for purchasing, prescription and non-prescription branded product management and investment purchasing.

3.　　McKesson is a wholesale distributor of pharmaceuticals, over-the-counter and health and beauty products to chain, independent pharmacy customers and

hospitals. As a wholesale distributor, McKesson distributes products manufactured by others. As to FOSAMAX®, McKesson does not manufacture, produce, process, test, encapsulate, label, package or repackage these products, nor does it make any representations or warranties as to the products' safety or efficacy.

        4.     McKesson distributed FOSAMAX®, manufactured by Merck & Co., Inc., along with many other products of other pharmaceutical companies, to certain drug stores, pharmacies, health care facilities and hospitals throughout the United States. As stated above, McKesson did not manufacture, produce, process, test, encapsulate, label, package or repackage FOSAMAX®, but only delivered the unopened boxes that contained the drug.

        5.     To my knowledge, there is no single state within the United States in which McKesson is or was the sole supplier of FOSAMAX®. McKesson is one of many suppliers who could have supplied FOSAMAX® to the numerous pharmacies throughout the United States.

        I declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct, and that this declaration was executed on this *15th* day of November, 2007, in San Francisco, California.

_____
Gregory S. Yonko, Declarant

# Exhibit 7

Theodore V. H. Mayer (TM 9748)
William J. Beausoleil (WB 5296)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000

*Attorneys for Defendant Merck & Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
IN RE:                                            :
Fosamax Products Liability Litigation    :        1:06-md-1789 (JFK)
                                                  :
------------------------------------------------------x

### DECLARATION OF THOMAS LOOSE IN SUPPORT OF DEFENDANT MERCK & CO., INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

I, Thomas Loose, declare as follows:

      1.      I am employed by Merck & Co., Inc. ("Merck") and was a Senior Director

of Marketing for the Osteoporosis Marketing Team from December 2004 until July 2007.

In that capacity I am knowledgeable about Merck's promotion of FOSAMAX® and am

familiar with the entities that Merck has engaged to promote FOSAMAX®.   Except as

otherwise noted, I have personal knowledge of the facts stated herein and, if called to

testify as a witness, I could and would testify competently thereto.

      2.      To the best of my knowledge, Merck has not engaged McKesson

Corporation, McKesson HBOC, Inc., McKesson Pharmaceutical Partners Group,

Healthcare Delivery Systems, McKesson Pharmaceutical Services Group, or McKesson

Pharmaceutical Services and International Group (hereinafter collectively "McKesson")

in relation to any marketing or advertising pertaining to FOSAMAX®.   To the best of my

knowledge, McKesson has not arranged for any such marketing or advertising relating to FOSAMAX®, and McKesson has not had any participation in the creation of such marketing or advertising.

3.      To the best of my knowledge, Merck has not engaged McKesson to communicate with physicians or patients relating to FOSAMAX®, or to have any communications directly with physicians or patients of any kind.  McKesson has not acted as a sales representative for Merck in any respect relating to FOSAMAX®.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on this _16th_ day of November, 2007 in Upper Gwynedd, Pennsylvania.

Thomas Loose

# Exhibit 8

_____✓___ FILED    _____ENTERED
_____LODGED    _____RECEIVED

**NOV 27 2002**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE
(PPA) PRODUCTS LIABILITY
LITIGATION,                                    MDL NO. 1407

                                              ORDER DENYING PLAINTIFF'S
—————————————————————————                      MOTION TO REMAND

This document relates to:

Barnett, et al. v. American
Home Products Corp., et al.,
No. C02-423R

THIS MATTER comes before the court on the motion of plain-
tiffs to remand the case to state court in Mississippi.  Having
reviewed the papers filed in support of and in opposition to this
motion, the court rules as follows:

                        I.   BACKGROUND

     Plaintiffs purchased a variety of over-the-counter drugs
including, but not limited to, products sold under the trade
names "Robitussin," "Alka-Seltzer Plus," "Dimetapp," "Tavist D,"
"BC," "Triaminic," "Contac," "Comtrex," and "Equate Tussin CF."
All of these products contained the ingredient phenylpro-
panolamine ("PPA").  The individuals later consumed the medica-
tion and suffered unidentified types of injuries.  In June 2001,
plaintiffs filed an amended complaint in Mississippi state court
linking the PPA in the medicine with the injuries sustained.

ORDER
Page - 1 -



CV 02-00423 - 00000043

1  The complaint alleges numerous causes of action against both
2  manufacturers and distributors of PPA-containing products, as
3  well as several retail stores that sold those products.  One of
4  the stores named as a defendant, Bill's Dollar Stores, Inc.,
5  d/b/a Bill's Dollar Store ("Bill's Dollar Store"), is a Missis-
6  sippi corporation.  Two of the six total plaintiffs purchased
7  PPA-containing products from Bill's Dollar Store.[1]

8  Defendants removed the complaint to federal court alleging
9  that plaintiffs fraudulently joined Bill's Dollar Store.  Plain-
10 tiffs moved to remand to state court.  The case was later trans-
11 ferred to this court as part of a multi-district litigation
12 ("MDL").

13                    II.  ANALYSIS

14 A plaintiff cannot defeat federal jurisdiction by fraudu-
15 lently joining a non-diverse party.  As an MDL court sitting in
16 the Ninth Circuit, this court applies the Ninth Circuit's fraudu-
17 lent joinder standard to the motion to remand.  See, e.g., In re
18 Diet Drugs Prods. Liab. Litig., 220 F. Supp. 2d 414, 423 (E.D.
19 Pa. 2002); In re Bridgestone/Firestone, 204 F. Supp. 2d 1149,
20 1152 n.2 (S.D. Ind. 2002); In re Tobacco/Gov'tal Health Care
21 Costs Litig., 100 F. Supp. 2d 31, 34 n.1 (D. D.C. 2000); In re

22 _____

23    [1] Defendants assert the misjoinder of these plaintiffs'
   claims and request that the court sever and deny remand as to the
24 four plaintiffs who did not purchase any products from Bill's
   Dollar Store, or from any other Mississippi store.  However,
25 because, as discussed below, the court denies remand as to all
   plaintiffs named in this action, the court need not address the
26 question of misjoinder at this time.

ORDER
Page - 2 -

1  *Ford Motor Co. Bronco II Prods. Liab. Litig.*, MDL-991, 1996 U.S.

2  Dist. LEXIS 6769, at *2-4 (E.D. La. May 16, 1996).[2]  Under this

3  standard, joinder of a non-diverse party is deemed fraudulent

4  "'[i]f the plaintiff fails to state a cause of action against a

5  resident defendant, and the failure is obvious according to the

6  settled rules of the state.'"  *Morris v. Princess Cruises, Inc.*,

7  236 F.3d 1061, 1067 (9th Cir. 2001) (quoting *McCabe v. General*

8  *Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).[3]

9       The propriety of removal to federal court is determined from

10  the allegations in the complaint at the time of removal.  See

11  *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)

12  However, in the case of fraudulent joinder, the defendant "'is

13  entitled to present the facts showing the joinder to be fraudu-

14  lent.'"  *Id.* (quoting *McCabe*, 811 F.2d at 1339).  See also *Morris*

15  _____

16       [2] See generally *Menowitz v. Brown*, 991 F.2d 36, 40-41 (2d
Cir. 1993); *In Re Korean Airlines Disaster*, 829 F.2d 1171, 1174-

17  76 (D.C. Cir. 1987).

18       [3] However, as a practical matter, application of the Fifth
Circuit's fraudulent joinder standard would not alter the court's

19  conclusion.  See *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393
(5th Cir. 2000) (remand is denied where there is "no reasonable

20  basis for predicting that plaintiffs might establish liability .
. . against the in-state defendants.")  For example, recent MDL

21  courts utilized fraudulent joinder standards similar, and in one
case identical, to the Fifth Circuit's standard in deeming

22  Mississippi pharmacies and their employees fraudulently joined
for reasons similar to those expressed in this opinion.  See *In*

23  *re Diet Drugs Prods. Liab. Litig.*, 220 F. Supp. 2d at 423-24
(noting that there had been "a pattern of pharmacies being named

24  in complaints, but never pursued to judgment, typically being

25  voluntarily dismissed at some point after the defendants' ability
to remove the case has expired"); *In re Rezulin Prods. Liab.*

26  *Litig.*, 133 F. Supp. 2d 272, 279 & n.3, 288-92 (S.D.N.Y. 2001).

ORDER
Page - 3 -

1 236 F.3d at 1067-68 (citing <u>Cavallini v. State Farm Mut. Auto.</u>
2 <u>Ins. Co.</u>, 44 F.3d 256, 263 (5th Cir. 1995) for the proposition
3 that the court may "'pierc[e] the pleadings'" and consider
4 "summary judgment-type evidence.")

5     Defendants allege that plaintiffs fraudulently joined Bill's
6 Dollar Store, while plaintiffs claim the existence of legitimate
7 causes of action against Bill's Dollar Store, including products
8 liability, negligence, misrepresentation, and implied warranty
9 claims.  The parties also argue as to the relevance of a bank-
10 ruptcy petition filed by Bill's Dollar Store prior to the filing
11 of this suit.

12 A.   <u>Products Liability</u>

13     The complaint contains failure to warn and design defect
14 allegations pursuant to the Mississippi Products Liability Act.
15 Miss. Code Ann. § 11-1-63.  Under the Products Liability Act,
16 plaintiff must show that at the time the product left the control
17 of the manufacturer or seller, it was defective in failing to
18 contain adequate warnings or instructions, and/or was designed in
19 a defective manner.  Miss. Code Ann. § 11-1-63 (a)(i)(2)-(3).
20 Plaintiff must also show that the manufacturers and sellers knew,
21 or in light of reasonably available knowledge or the exercise of
22 reasonable care should have known, about the danger that caused
23 the alleged damage.  Miss. Code Ann. § 11-1-63 (c)(i),(f)(i).[4]

24

25     [4] <u>See</u> <u>also</u> <u>Huff v. Shopsmith, Inc.</u>, 786 So.2d 383, 387 (Miss.
26 2001)("With the adoption of 11-1-63, common law strict liability,
as laid out in <u>State Stove Mfg. Co. v. Hodges</u>, 189 So.2d 113

ORDER
Page - 4 -

1    Plaintiffs allege in the complaint that "defendants" or "all
2  defendants" knew or should have known of dangers associated with
3  PPA.  Moreover, plaintiffs specifically aver this knowledge or
4  reason to know on the part of the retailer defendants, including
5  Bill's Dollar Store.  However, the court finds that no factual
6  basis can be drawn from the complaint that Bill's Dollar Store
7  had knowledge or reason to know of any dangers allegedly associ-
8  ated with PPA.

9    First, the complaint utilizes the plural "defendants" in a
10  number of allegations that one could not reasonably interpret to
11  include Bill's Dollar Store. See, e.g., Louis v. Wyeth-Ayerst
12  Pharm., Inc., No. 5:00CV102LN, slip op. at 5-9 (S.D. Miss. Sep.
13  25, 2000) (finding products liability allegations lodged against
14  "defendants" conclusory where there was no factual support for
15  conclusion that Mississippi pharmacies had knowledge or reason to
16  know of alleged dangers associated with various diet drugs).[5]

17  _____

18  (Miss. 1966), is no longer the authority on the necessary
    elements of a products liability action.")
19
        [5] See also In re Diet Drugs Prods. Liab. Litig., 220 F. Supp.
20  2d at 424 (finding complaints, including failure to warn,
    negligence, breach of warranty, and strict liability claims,
21  devoid of specific allegations against Mississippi pharmacies and
    "filled instead with general statements levied against all
22  defendants, which most properly can be read as stating claims
    against drug manufacturers."); In re Rezulin Products Liab.
23  Litig., 133 F. Supp. 2d at 291 (finding improper joinder in case
    where Mississippi pharmacies were lumped in with manufacturers
24  and acts alleged, including failure to warn, breach of warranty,
    and fraud, were attributed to "'defendants' generally", but
25  never connected to the pharmacies); accord Badon, 224 F.3d at
    391-93 ("While the amended complaint does often use the word
26

ORDER
Page - 5 -

1 For example, the complaint describes "defendants" as members of
2 the Non-Prescription Drug *Manufacturers* Association ("NDMA").
3 Through this association, "defendants" purportedly participated
4 in numerous discussions relating to the safety of PPA over the
5 past two decades, had representatives sit on the NDMA PPA Task
6 *Force*, and funded relevant studies.  In other words, plaintiffs,
7 in significant part, demonstrate "defendants'" knowledge as to
8 risks allegedly posed by PPA through activities engaged in by
9 manufacturer defendants alone.

10      Indeed, while "defendants" are alleged to have been aware or
11 to have had responsibility for awareness of numerous scientific
12 journal articles, incident reports, medical textbooks, and other
13 reports containing information as to risks of PPA consumption,
14 general medical practitioners are excluded from this awareness
15 and described as being not "fully informed."  The complaint
16 supplies no factual support for a conclusion that a dollar store
17 possessed medical and scientific knowledge beyond that possessed
18 by medical practitioners.

19      Second, the complaint specifically lays the responsibility
20 for allegedly concealing dangers posed by PPA on the manufacturer
21 defendants.  For example, the complaint alleges that the manufac-
22 turer defendants concealed material facts regarding PPA through
23 product packaging, labeling, advertising, promotional campaigns

24 ───────────

25 'defendants,' frequently it is evident that such usage could not
be referring to the 'Tobacco Wholesalers.'"; finding conspiracy
26 allegations against Louisiana defendants entirely general).

ORDER
Page - 6 -

1   and materials, and other methods.  This allegation directly
2   undermines and contradicts the idea that Bill's Dollar Store had
3   knowledge or reason to know of alleged defects.  See, e.g.,
4   Louis, slip op. at 4-5 (finding complaint's "major theme" to
5   consist of the "manufacturers' intentional concealment of the
6   true risks of the drug(s), coupled with dissemination through
7   various media of false and misleading information of the safety
8   of the drug(s) at issue, [which belied] any suggestion of knowl-
9   edge, or reason to know by [the] resident defendants.")  Cf. In re
10  Rezulin Products Liab. Litig., 133 F. Supp. 2d 272, 290 (S.D.N.Y.
11  2001) (finding Mississippi pharmacies facing failure to warn
12  claims fraudulently joined where "the theory underlying the
13  complaints [was] that the manufacturer defendants hid the dangers
14  of Rezulin from plaintiffs, the public, physicians, distributors
15  and pharmacists -- indeed from everyone.")

16      In sum, the court concludes that one could not reasonably
17  read the complaint to support the idea that the retailer defen-
18  dants had knowledge or reason to know of any dangers allegedly
19  associated with PPA.  Indeed, reading the complaint as a whole,
20  this allegation reveals itself as directed towards the manufac-
21  turer defendants alone.  As such, the court finds that plaintiffs
22  fail to state a products liability cause of action against Bill's
23  Dollar Store.[6]

24

25      [6] The complaint once alludes to an "alternative" breach of
    express warranty claim under the Products Liability Act.  See
26  Miss. Code Ann. § 11-1-63 (a)(i)(4) (requiring a showing that the

ORDER
Page - 7 -

1   B.   Negligence and Misrepresentation

2       The complaint alleges negligence and misrepresentation by

3   Bill's Dollar Store.   A negligence cause of action also requires

4   a showing of knowledge or reason to know on the part of the

5   seller.   See, e.g., R. Clinton Constr. Co. v. Bryant & Reaves,

6   Inc., 442 F. Supp. 838, 851 (N.D. Miss. 1977) ("The rule is well

7   settled that in order to fasten liability upon a party for

8   negligence, it must be shown by a preponderance of the evidence

9   that he knew or through the exercise of reasonable care should

10  have known that his selection of a [product] would cause damage

11  to his customer.")[7]   A misrepresentation cause of action requires

12  _____

13  seller breached an express warranty or failed to conform to other
    express factual representations upon which the claimant relied).
14  However, the products liability allegations go on to touch solely
    upon failure to warn and design defect claims.   Because the
15  complaint lacks any factual basis for support of a breach of
    express warranty claim against Bill's Dollar Store, the court
16  also finds this bare allegation insufficient to support remand.

17      [7]Accord Louis, slip op. at 3-4 & n.3 ("[K]nowledge, or a
18  reason to know, is also a necessary requisite for any claim of
    failure to warn or negligence that a plaintiff might undertake to
19  assert extraneous to a claim under the Products Liability Act
    itself (assuming solely for the sake of argument that such a
20  claim could exist)."); Cadillac Corp. v. Moore, 320 So.2d 361,
    365 (Miss. 1975) (discussing negligence in "vendor/purchaser"
21  context and stating that "fault on the part of a defendant so as
    to render him liable is to be found in action or nonaction,
22  accompanied by knowledge, actual or implied, of the probable
    result of his conduct.") Cf. Moore v. Memorial Hosp. of
23  Gulfport, 825 So.2d 658, 664-66 (Miss. 2002) (extending "learned
    intermediary" doctrine to pharmacists in case involving
24  prescription drug, and holding no actionable negligence claim
    could exist against a pharmacy unless a plaintiff indisputably
25  informed the pharmacy of health problems which contraindicated
    the use of the drug in question, or the pharmacist filled
26

ORDER
Page - 8 -

1  a plaintiff to show:

2        (1) a representation; (2) its falsity; (3) its materi-
       ality; (4) the speaker's knowledge of its falsity or
3        ignorance of its truth; (5) the speaker's intent that
       the representation should be acted upon by the hearer
4        and in the manner reasonably contemplated; (6) the
       hearer's ignorance of its falsity; (7) the hearer's
5        reliance on its truth; (8) the hearer's right to rely
       thereon; and (9) the hearer's consequent and proximate
6        injury.

7  Johnson v. Parke-Davis, 114 F. Supp. 2d 522, 525 (S.D. Miss.

8  2000) (citing Allen v. Mac Tools, Inc., 671 So.2d 636, 642 (Miss.

9  1996)).

10        Again, the court finds that the general and contradictory

11  allegations in the complaint do not support the existence of any

12  knowledge or reason to know on the part of Bill's Dollar Store to

13  support a negligence cause of action.   The court finds the

14  complaint similarly bereft of any factual support for the idea

15  that Bill's Dollar Store made any misrepresentations whatsoever

16  to plaintiffs regarding the PPA-containing products.   See, e.g.,

17  Johnson, 114 F. Supp. 2d at 525 ("Suffice it to say that Plain-

18  tiffs have no proof . . . that any of the named [Mississippi]

19  representatives made any representations directly to any of the

20  Plaintiffs.   Thus, none of the Plaintiffs was the 'hearer' of any

21  of the sales representatives' alleged misrepresentations.";

22  finding plaintiffs had no cause of action for misrepresentation).

23  Instead, as discussed above, the complaint attributes this

24

25  _____

26  prescriptions in quantities inconsistent with the recommended
    dosage guidelines).

ORDER
Page - 9 -

1  behavior to the manufacturing defendants alone.  As such, the
2  court also finds that plaintiffs fail to state negligence and
3  misrepresentation causes of action against Bill's Dollar Store.
4  C.    Implied Warranty
5      The complaint also alleges that Bill's Dollar Store breached
6  implied warranties of merchantability and fitness for particular
7  purpose.  See Miss. Code Ann. §§ 75-2-314, 315.  The complaint
8  accuses "defendants" of breaching the implied warranty of mer-
9  chantability in failing to adequately label containers and
10  packages containing PPA, and because the products sold failed to
11  conform to promises or affirmations of facts made on the contain-
12  ers or labels.  See Miss. Code Ann. § 75-2-314 (2)(e)-(f).  The
13  complaint accuses both manufacturers and sellers of breaching the
14  implied warranty of fitness for particular purpose where they had
15  reason to know of the particular use of the products, and the
16  purchasers relied on the sellers' skill or judgment in selecting
17  and furnishing suitable and safe products.  See Miss. Code Ann. §
18  75-2-315.
19      In order to recover for breach of implied warranty, a buyer
20  "must within a reasonable time after he discovers or should have
21  discovered any breach notify the seller of breach or be barred
22  from any remedy."  Miss. Code Ann. § 75-2-607 (3)(a); accord C.R.
23  Daniels, Inc. v. Yazoo Mfg. Co., 641 F. Supp. 205, 210-11 (S.D.
24  Miss. 1986); Gast v. Rogers-Dingus Chevrolet, 585 So. 2d 725,
25  730-31 (Miss. 1991).  Here, the complaint contains no indication
26  that plaintiffs provided Bill's Dollar Store with any notice as

ORDER
Page - 10 -

1  to an alleged breach of warranty prior to the institution of this
2  lawsuit.

3       Additionally, with respect to the merchantability claim, the
4  complaint contains no factual support for a conclusion that
5  Bill's Dollar Store was in any way involved with the labeling
6  and/or packaging of the products at issue.  Instead, the com-
7  plaint alleges that the manufacturer defendants concealed mate-
8  rial facts regarding PPA through product packaging and labeling.

9       The court likewise finds plaintiffs' fitness for particular
10 purpose allegation insufficient.  "Mississippi does not recognize
11 an implied warranty of fitness for a particular purpose when the
12 good is purchased for the ordinary purpose of a good of that
13 kind."  Farris v. Coleman Co., 121 F. Supp. 2d 1014, 1018 (N.D.
14 Miss. 2000) (fitness for particular purpose claim failed where
15 plaintiff purchased cooler to keep food and beverages cold - the
16 ordinary purpose for which a cooler is used).  Here, plaintiffs
17 attested that they purchased PPA-containing products to remedy
18 their "cold, flu, sinus and/or allergy symptoms" - the ordinary
19 purpose of these medications.

20      Therefore, for the reasons stated above, the court finds
21 that plaintiffs fail to state implied warranty causes of action
22 against Bill's Dollar Store.

23 D.    Bankruptcy

24      Bill's Dollar Store filed a bankruptcy petition in February
25 2001, several months prior to the filing of plaintiffs' com-
26 plaint.  The filing of the bankruptcy petition operates as a stay

ORDER
Page - 11 -

1    on judicial or other proceedings brought against Bill's Dollar

2    store that were or could have commenced prior to the commencement

3    of the bankruptcy proceeding.  See 11 U.S.C. § 362(a); In re

4    Cajun Elec. Power Co-Op, Inc., 185 F.3d 446, 457 (5th Cir. 1999).

5         Plaintiffs argue that the automatic stay poses no barrier to

6    relief given that they were unaware of the bankruptcy petition at

7    the time they filed their complaint, and because they anticipate

8    that the Bankruptcy Court will agree to their pending request to

9    lift the stay.  However, whether or not plaintiffs knew of the

10   petition and whether or not the stay may later be lifted, the

11   fact remains that, at the time plaintiffs filed their complaint,

12   the stay operated to prohibit their lawsuit.  As noted above, the

13   court determines jurisdiction based on the claims as stated at

14   the time of removal.  As such, the court finds the existence of

15   the stay at the time of filing serves as an additional reason to

16   deny remand of this matter to state court.  Cf. Ritchey, 139 F.3d

17   at 1319-20 (denying remand where the statute of limitations had

18   expired at the time plaintiff filed the complaint).[8]

19                          III.   CONCLUSION

20        The court concludes that plaintiffs fail to state a cause of

21   action against the only non-diverse defendant, and that the

22   _____

23        [8]Unlike in a number of other cases transferred to this MDL,
     the defendants here did not supply the court with any summary
24   judgment-type evidence to establish the retailer defendant's
     fraudulent joinder.  However, the court nonetheless finds that a
25   plain reading of the complaint does not allow a conclusion that
     plaintiffs state a cause of action against Bill's Dollar Store.
26

ORDER
Page - 12 -

1   failure is obvious according to the settled rules of Mississippi.

2   As such, the court finds Bill's Dollar Store fraudulently joined

3   and DENIES plaintiff's motion to remand the case to the state

4   courts of Mississippi.

5        DATED at Seattle, Washington this 26th day of November,

6   2002.

7        BARBARA JACOBS ROTHSTEIN

8        UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
Page - 13 -

# Exhibit 9

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: BAYCOL PRODUCTS LITIGATION          MDL No. 1431
                                           (MJD)

This Document also relates to:

Mary A. Smith v. Bayer Corporation et al.,     Case No. 02-139

---

Hugo N. Gerstl, Law Offices of Hugo N. Gerstl and Associates, for and on behalf of Plaintiff.

Peter Sipkins, Dorsey & Whitney, Philip S. Beck, Ada L. Hoeflich and Tarek Ismail, Barlit Beck Herman Palencher & Scott, Susan A. Weber and Sara J. Gourley, Sidley Austin Brown & Wood and Richard K. Dandrea, Eckert Seamans Cherin & Mellott, LLC, for and on behalf of Bayer Corporation.

---

This matter is before the Court upon Plaintiff Smith's motion to remand. Bayer Corporation ("Bayer") opposes the motion on the basis that Plaintiff has fraudulently joined Longs Drug Stores, Inc. ("Longs Drug") in an effort to defeat diversity jurisdiction.

Background

Plaintiff filed her Complaint in California state court on September 7, 2001. In her Complaint, Plaintiff asserted claims of products liability and negligence against Longs Drug. Plaintiff is a citizen of California. Defendant Bayer Corporation is an Indiana corporation, with its principal place of business in Pennsylvania. Defendant Longs Drug has its principal place of business in California. Thus, for purposes of diversity jurisdiction, the parties do not dispute that Longs Drug is a citizen of California.

On October 11, 2001, Defendant Bayer Corporation filed a notice of removal

1

with the United States District Court, Northern District of California. In its removal petition, Bayer asserts that Plaintiff failed to state a cause of action against Longs Drug, and that the court therefore had jurisdiction over Plaintiff's Complaint based on diversity of citizenship under 28 U.S.C. § 1332(a). Bayer contends that fraudulently joined defendants will not defeat diversity jurisdiction.

On October 12, 2001, Plaintiff filed a First Amended Complaint in California state court. In the Amended Complaint, Plaintiff withdrew her products liability claim against Longs Drug, adding a professional negligence claim in its place.

**Standard**

Remand to state court is proper if the district court lacks subject matter jurisdiction over the asserted claims. 28 U.S.C. § 1447(c). In reviewing a motion to remand, the court must resolve all doubts in favor of a remand to state court, and the party opposing remand has the burden of establishing federal jurisdiction by a preponderance of the evidence. In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1983)(citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3rd Cir. 1987) cert. dismissed 484 U.S. 1021 (1988)).

Fraudulently joined defendants will not defeat diversity jurisdiction. Ritchey v. Upjohn Drug Company, 139 F.3d 1313, 1318 (9th Cir. 1998). "Fraudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant." Anderson v. Home Insurance Company, 724 F.2d 82, 84 (8th Cir. 1993). Dismissal of fraudulently joined non-diverse defendants is appropriate. Wiles v. Capitol Indemnity Corp., 280 F.3d 868, 871 (8th Cir. 2002).

Initially, in determining the propriety of remand, the Court must review plaintiff's pleading at the time of the petition for removal. Pullman Co. v. Jenkins, 305

2

U.S. 534, 537 (1939). In addition, a plaintiff may not amend her complaint in order to state a claim against a nondiverse defendant in order to divest the federal court of jurisdiction. Cavallini v. State Farm Mutual Auto-Insurance Co., 44 F.3d 256, 265 (Fed. Cir. 1995). See also, Henderson v. Shell Oil Co., 173 F.2d 840, 842 (8th Cir. 1949)(federal court has power to amend petition after removal, but such power does not extend to elimination of jurisdictional defects present in the state court action). The Court will thus look to the original Complaint to determine whether Longs Drug has been fraudulently joined.[1]

If a plaintiff fails to state a cause of action against a non-diverse defendant, and the failure is obvious according to settled rules of law of the state in which the action was brought, the joinder of the non-diverse defendant is deemed to be fraudulent. Ritchey v. Upjohn Drug Company, 139 F.3d 1313, 1318 (9th Cir. 1998). Bayer argues that a retail pharmacy cannot be held strictly liable for injuries caused by a defective drug pursuant to California law. Murphy v. E.R. Squibb & Sons, Inc., 40 Cal.3rd 672, 675-681 (1985). It appears that Plaintiff does not dispute this principle, as is evidenced by the fact that Plaintiff attempted to amend her Complaint to withdraw this cause of action against Longs Drug. In addition, Bayer argues that Plaintiff's negligence claim against Longs Drug also fails to state a claim. The Complaint alleges that Longs Drug was negligent in failing to provide adequate warnings of the dangers posed by Baycol and that Longs Drug concealed specific knowledge concerning Baycol from Plaintiff. Complaint ¶ 35. However, the Complaint further states that Longs Drug dispensed

---

[1] Plaintiff provides the Court no authority for her argument that the Court should look to pleadings filed in state court after the case has been removed. Because Plaintiff attempted to file the First Amended Complaint in state court, after the case was removed to federal court, the filing was ineffective. Also, as an answer has been filed, Plaintiff must now seek leave of the Court to file the First Amended Complaint. Plaintiff has not done so, however.

3

Baycol to Plaintiff on March 24, 2001. Id. ¶¶ 15 and 16. The Complaint further alleges that prior to May 21, 2001, Bayer did not advise physicians and drugstores of the problems it encountered with Baycol, and did not advise physicians or drugstores that the 0.8 mg. dosage of Baycol was potentially dangerous, even fatal. Id. ¶ 13. Thus, the allegations in the Complaint defeat her negligence claim against Longs Drug, as a defendant cannot be held liable for failing to warn of unknown risks. Merrill v. Navegar, Inc., 26 Cal.4th 465, 485 (2001).

Based on the above, the Court finds that Bayer has met its burden of showing that Longs Drug was fraudulently joined, as it is obvious based on the face of the Complaint, that no cause of action was alleged against Longs Drug.[2]

Accordingly, IT IS HEREBY ORDERED that:

1.     Plaintiffs' Motion to Remand is DENIED.

2.     Defendant Longs Drug Stores, Inc. is DISMISSED.

Date: May 24, 2002

_____/s/_____
Michael J. Davis
United States District Court

---

[2] Because the Court finds that Longs Drug was fraudulently joined, Longs Drug's failure to consent to removal does not render the petition to remove ineffective. Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193, n. 1 (9th Cir. 1988); Seagate Technology LLC v. Dalla China Express Int'l Corp. Ltd., 189 F.Supp. 2d 1146, 1152, (N.D. Cal. 2001).

4

# Exhibit 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
WALTER McNAUGHTON, Individually,    :
et al., on behalf of himself and    :
all others similarly situated,      :
                                    :
                Plaintiffs,         :    04 Civ. 8297 (LAP)
                                    :
            -against-               :    ORDER
                                    :
MERCK & CO., INC.,                  :
                                    :
                Defendant.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LORETTA A. PRESKA, United States District Judge:

        Plaintiff, Walter McNaughton, moves for leave to
supplement his complaint by adding 64 additional plaintiffs who
have (or their spouses have), like McNaughton, allegedly suffered
serious health consequences or death as a result of taking the
drug VIOXX.  McNaughton makes his request to add additional
plaintiffs pursuant to Rule 15(d) of the Federal Rules of Civil
Procedure.  Under Rule 15(d), a court may "permit the party to
serve a supplemental pleading setting forth transactions or
occurrences or events which have happened since the date of the
pleading sought to be supplemented."  Fed. R. Civ. P 15(d).
Here, the addition of new plaintiffs is not relevant to facts
that transpired after the original filing and is not related to
McNaughton's original claims.  Instead, an amendment to add new
plaintiffs necessarily entails the addition of new individuals,
each with his or her own claims, and McNaughton's motion is more

M00333262

properly considered a motion to amend pursuant to Rule 15(a) and will be evaluated accordingly.  Fed. R. Civ. P. 15(a).

A motion to amend under Rule 15(a) will not be permitted if it is futile.  See Foman v. Davis, 371 U.S. 178 (1962); Ricciardi v. Kone, Inc., 215 F.R.D. 455, 456 (E.D.N.Y. 2003).  The proper mechanism for joining additional plaintiffs under these circumstances is pursuant to Rule 20, governing permissive joinder, and, therefore the question is whether joinder is proper pursuant to Rule 20.  Fed. R. Civ. P. 20.  If joinder of the additional 64 plaintiffs is improper under Rule 20, then amending the complaint would be futile and should be denied pursuant to Rule 15(a).

Rule 20(a) states "[a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action."  Fed. R. Civ. P. 20(a). Therefore, Rule 20(a) has two distinct requirements for the joinder of plaintiffs: (1) a right to relief must be asserted by each plaintiff relating to or arising out of the same transaction or occurrence, and (2) there must be some question of law or fact common to all plaintiffs.  See 7 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1653.  In this case, McNaughton

2

M003338270

submits that, like himself, all of the proposed plaintiffs took
VIOXX, they were all improperly warned of the alleged dangers of
the drug by defendant, Merck & Co., Inc. ("Merck"), and they all
suffered serious medical ills as a result. Yet, although Merck
does not dispute that these similarities give rise to common
questions of law or fact, Merck contends that these similarities
do not satisfy the same transaction or occurrence requirement
imposed by Rule 20(a). Upon reviewing the parties' arguments and
the relevant caselaw, I agree with Merck that McNaughton has not
proffered evidence sufficient to support the contention that he
and the 64 potential plaintiffs assert a right to relief arising
out of the same transaction or occurrence.[1]

    The mere existence of common questions of law or fact
does not satisfy the same transaction or occurrence requirement.
See In re Asbestos II Consol. Pretrial, Nos. 86 C 1739, 89 C 452,
1989 WL 56181, at *1 (N.D. Ill. May 10, 1989) ("Distinct claims
cannot be properly joined under Rule 20 merely because they have
common theoretical underpinnings."). In particular, drug
liability cases have held that related factual or legal issues,
such as a similar injury allegedly caused by the same drug, are

---

    [1]Because the parties do not dispute that there are some
factual and legal similarities among all potential plaintiffs'
claims, and because the same transaction or occurrence requirement
is clearly not met, I do not reach the question of whether the
common question requirement is met and do not mean to suggest in
this Order that the common question requirement of Rule 20(a) has
been satisfied.

3

M000338271

insufficient for Rule 20 joinder purposes. In this district, for example, the Honorable Lewis A. Kaplan held that although all of the plaintiffs were exposed to the drug Rezulin, because the plaintiffs "do not allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time" the same transaction or occurrence requirement of Rule 20(a) was not satisfied. In re Rezulin Prods. Liab. Litig., 168 F. Supp. 2d 136, 145-46 (S.D.N.Y. 2001).[2] Numerous courts in other districts have reached similar conclusions in drug liability cases. See Graziose v. American Home Prods. Corp., 202 F.R.D. 638, 640 (D. Nev. 2001) ("The only concrete similarity among the various Plaintiffs are that they (or their spouse) took a medicine containing PPA . . . and they allegedly suffered an injury. This is insufficient to justify joinder . . . ."); In re Diet Drugs, No. Civ. A. 98-20478, 1999 WL 554584, at *4 (E.D. Pa. July 16, 1999) ("[T]he claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, did not satisfy the transaction or occurrence requirement."); In re Orthopedic Bone Screw Prods. Liab. Litig., MDL No. 1341, 1995 WL 428683, at *1-2

---

[2] Also relevant to Judge Kaplan's decision was the fact that, like here, specific injuries suffered by each plaintiff were not detailed so that the commonality of injuries was difficult to assess and, also like here, variables such as exposure to the drug and the patient's physical state at the time of ingestion of the drug were issues relating to each specific individual. Id. at 146.

4

M003338272

(E.D. Pa. July 15, 1995) ("[J]oinder based on the belief that the same occurrence or transaction is satisfied by the fact that claimants have the same or similar device of a defendant manufacturer implanted in or about their spine is . . . not a proper joinder.").

Unlike the majority of cases, in In re Norplant Contraceptive Products Liability Litigation, 168 F.R.D. 579 (E.D. Tex. 1996), the court held that the Rule 20 joinder requirements are met if plaintiffs' claims arise out of the same acts and omissions of defendants. See also Kemp v. Metabolife Intern., Inc., No. Civ. A. 00-3513, 2003 WL 22272186, at *3 (E.D. Pa. Oct. 1, 2003). However, the Norplant decision has not been widely followed and has been criticized by some district courts. See In re Baycol Prods. Liab. Litig., MDL No. 1431, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002). Without citing to the Norplant case in particular, at oral argument on the motion, counsel for McNaughton put forth a similar position and argued that because Merck's conduct in allegedly failing to warn consumers and doctors of the potential harms of VIOXX is common to all 65 of the potential plaintiffs, the requirements of Rule 20 were satisfied. I decline to follow the Norplant case and am persuaded by the interpretation of Rule 20 espoused by Judge Kaplan and others. Accordingly, while Merck's actions certainly give rise to some factual and legal questions relevant to all of

M0003338273

the potential plaintiffs, Merck's actions do not satisfy the same transaction or occurrence requirement. See id., at *2 (Holding that the fact that defendant's conduct is common to all plaintiffs' claims is insufficient for Rule 20 purposes.).

The claims asserted by McNaughton and the 64 other potential plaintiffs against Merck are based upon the plaintiffs' ingestion of the drug VIOXX and the injuries they allegedly sustained as a result of that ingestion. The claims are not otherwise related, and joinder under these circumstances would be improper. To group the plaintiffs together primarily for filing convenience does not satisfy the requirements of Rule 20. See id.

Accordingly, because joinder of the additional 64 plaintiffs would be improper under Rule 20, McNaughton's motion to amend his complaint to add an additional 64 plaintiffs, pursuant to Rule 15, is denied.


SO ORDERED
December 17, 2004

_Loretta A. Preska_
LORETTA A. PRESKA, U.S.D.J.

6

M000338274