IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>FOSAMAX PRODUCTS LIABILITY LITIGATION<br><br>*This Document Relates To*:<br><br>CARRIE SMITH, et al<br><br>           PLAINTIFFS,<br><br>    -vs.-<br><br>MERCK & CO., INC. and MCKESSON CORPORATION<br><br>           DEFENDANT. | 1:06-MD-1789 (JFK)<br><br><br>Cause No. <u>1:07-CV-09564-JFK</u> |

**PLAINTIFFS' REPLY TO DEFENDANT MERCK & CO., INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

In its response Merck relies on three principle arguments opposing remand. It argues that, as a matter of fact, McKesson has no liability to Plaintiffs. It argues that McKesson had not been served as of notice of removal. Finally it argues that *plaintiffs* are misjoined. None of these are valid objections to remand. Its burden is to show that there is no possibility whatsoever that plaintiffs will prevail, not that it can produce facts (before any discovery at all) on its side. Whether McKesson had been served as of the date Merck improperly removed the case is not of jurisdictional import. The Plaintiffs

may sue a California Defendant in California state court. The joint complaint by Plaintiffs is not a basis for removal.

## MERCK HAS NOT MET ITS BURDEN OF PROVING FRAUDULENT JOINDER

The burden of establishing the propriety of a removal petition falls squarely on the shoulders of the removing party – in this case, Merck. *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 141, 148 (4th Cir. 1994). Statutes conferring diversity and removal jurisdiction are to be strictly construed by the Federal courts. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Russell Corp. v. American Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001). Removal statutes are strictly construed because: (1) the exercise of removal is in derogation of state sovereignty; (2) jurisdictional allegations for removal are extremely simple for any lawyer to draft; (3) a liberal construction would promote uncertainty as to a court's jurisdiction in marginal cases; and (4) 28 U.S.C. §1446(b) is a statute of repose designed not to unduly delay trials. *Hill v. Gen. Motors Corp.*, 654 F.Supp. 61 (S.D. Fla.1987). For these reasons, a presumption exists against removal jurisdiction. *Russell Corp.*, 264 F.3d at 1050.

### Court Evaluates Removal in Light Most Favorable to Plaintiff

To determine whether a case should be remanded, a court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir 1997). The moving party carries it only by proving: (1) that there is no possibility that plaintiff would be able to establish a cause of action in state court or (2) outright fraud in the pleading of jurisdictional facts. *Hart v. Bayer Corp.*,

199 F.3d 239, 246-247 (5th Cir. 2000). *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp.2d 1005, 1008 (N.D. Cal. 2001). Claims of fraudulent joinder must be denied where, as here, there is any possibility that the plaintiff may prevail on the cause of action against the in-state defendant. *See Id.* at 1008, 1012.

> [I]t is not for the Court to decide whether 'the plaintiff will actually or even probably prevail on the merits, but [rather to] look only for a possibility that he may do so.' In short, claims against a defendant must be 'patently spurious' or provide 'no reasonable basis for imposing liability' before that defendant can be disregarded for purposes of determining jurisdiction.

*Mielke v. Conoco Phillips Co.,* Case 04-5502 (N.D. Cal. May 4, 2005)(Henderson, J.) (internal citations omitted). "In determining whether a defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" *Plute*, 141 F. Supp.2d at 1008 (quoting *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 (5th Cir. 1992)). The courts strictly construe the removal statutes in favor of remand and against removal. *Duncan v. Stretzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Brown v. Francis*, 75 F.3d 860, 864-65 (3rd Cir. 1996); *Diaz v. Shepard*, 85 F.3d 1502, 1505 (11th Cir. 1996); *Brinkley v. Univ. Health Serv., Inc.*, 194 F.Supp.2d 597 (S.D. Tex. 2002). Finally, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand. *Plute* and *Dodson, Id.*

**Remand is Required Where There is Any Possibility of Prevailing Over NonDiverse Defendant**

Further, joinder "is not fraudulent if plaintiffs' claims depend on fairly debatable issues of state law that require substantial analysis. 'A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.'" *Guyant v. Johnson &*

*Johnson, Inc.*, 2003 WL 1921819, *2 (S.D. Ind. 2003) citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3rd Cir. 1992). Likewise, the Eastern District of Louisiana, in considering the joinder of a physician who was procedurally barred at time of suit due to non-compliance with prior review requirement, remanded the case because it lacked subject matter jurisdiction. *Doe v. Cutter Biological*, 774 F. Supp. 1001, 1004 (E.D. La. 1991). In so ruling, the District Court observed: "Improperly joined, prematurely joined ... probably. But fraudulent joinder is composed of more serious stuff." *Id.*

Merck must prove that there is no possibility that Plaintiffs would be able to establish a cause of action in state court against McKesson. In meeting this burden, Merck must overcome significant presumptions in Plaintiffs' favor. "To prove their allegation of fraudulent joinder [removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against them in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned." *Hart v. Bayer Corp*. 199 F.3d 239, 246 (5th Cir. 2000), (italic and brackets in original).

Where a defendant challenges the factual sufficiency of a cause of action, the court must resolve all doubts in favor of the party seeking remand. *See Plute*, 141 F. Supp.2d at 1010, n.4. Indeed, the court must remand even when the complaint fails to attribute particularly any wrongful conduct to the in-state defendant. *Id.* (remanding case and stating "[u]nder the liberal pleading requirements, these general allegations are sufficient to charge [Defendants] with the alleged wrongful conduct"); *see also Peloza v.*

*Capistrano Unified Sch. Dist.,* 37 F.3d 517, 521 (9th Cir.1994), *cert. denied,* 515 U.S. 1173, 115 S.Ct. 2640, 132 L.Ed.2d 878 (1995) (stating courts must interpret general allegations to "embrace whatever specific facts might be necessary to support them").

Merck appears to also argue, citing a number of mostly summary judgment cases, that the Plaintiffs must prove, at the remand stage, a causal connection.  But there has been no discovery, no experts, nothing beyond pleadings.  At this stage the Court must examine only whether there is some possibility of Plaintiffs' prevailing on their pleaded claims.  Because the nature of the claims, and the good-faith bases for them, is discussed at length in the original motion, they are not again discussed here.

**Learned Intermediary Defense Does Not Affect Remand**

It is also unavailing that McKesson's liability under California law may be debatable, depending on whose version of facts turn out to be right, for even where state learned intermediary doctrine could *potentially* dispose of case against non-diverse pharmacy defendant, remand is required.  *Brooks v. Merck & Co., Inc.*, 443 F. Supp.2d 994, 999-1000 (S.D. Ill. 2006).  In *Brooks* the movant, again Merck, argued that the learned intermediary doctrine shielded Walgreens, the nondiverse pharmacy, from liability.  Merck makes the same argument here.  As *Brooks* explains, "the learned intermediary doctrine clearly is an issue that goes not to the Court's jurisdiction but to the merits of Plaintiff's claims for relief."  *Id.* citing, among others, *Bertrand v. Aventis Pasteur Labs., Inc.*, 226 F.Supp.2d 1206, 1213 (D.Ariz.2002).

California US District Courts have remanded cases to the state court, notwithstanding the defendant's invocation of the California Learned Intermediary Rule or that the California defendant was just a distributor.  "The general rule is that strict

liability for failure to provide adequate warnings runs to distributors as well as manufacturers." *Arderson v. Owens-Corning Fiberglas Corp.,* 53 Cal.3d 987, 994, 281 Cal.Rptr. 528, 810 P.2d 549 (1991). Such liability may also extend to retailers." *Martin v. Merck & Co., Inc.* 2005 WL 1984483, *3 (E.D.Cal.) (E.D.Cal.,2005); citing *Soule v. Gen. Motors Corp.,* 8 Cal.4th 548, 560, 34 Cal.Rptr.2d 607, 882 P.2d 298 (1994).

*Martin* next considers McKesson itself and asks whether a bar to liability for failure to warn for pharmacists might apply to it. But this argument necessarily fails. "First, California's public policy justification for exempting pharmacists from strict liability is that pharmacists provide services." *Martin, Id.* citing *Murphy v. E.R. Sguibb & Sons, Inc.*, 13 Cal.4th 1104, 1117, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (1996). ('a key factor' in exempting pharmacies from liability is 'that the pharmacist who fills a prescription is in a different position from the ordinary retailer because he cannot offer a prescription for sale except by order of the doctor.... He is providing a service to the doctor.')." But, *Martin* continues, "McKesson, unlike pharmacists, does not provide the public with an analogous service." *Martin* at *4. Indeed, it provides a service **to Merck**. More importantly however, by relying primarily on public policy arguments, Merck effectively conceded that such a cause of action is not presently precluded under California law. Therefore, Merck failed to meet its heavy burden to show to "a near certainty" that McKesson's joinder was fraudulent in that case.

Other California Courts have reached the same result. See *Maher v. Novartis Pharmaceuticals Corp.*, NO. 07CV852 WQH (JMA), 2007 WL 2330713, *3 (S.D.Cal.) (S.D.Cal. 2007); *Sokarda v. Merck*, Slip Op., Case 8:05-cv-00177-JFW-MAN Document

29 Filed 04/22/2005 (C.D. Cal., April 25, 2005) (also granting remand where McKesson was joined as defendant); and *see Sconiers,* above.[1]

**That McKesson Functions in Part as a Distributor is Irrelevant**

Indeed Merck is wrong about the failure-to-warn claims too. Merck's argument has already been rejected by at least four other courts in California and most recently, in a case involving similar facts. *See Sconiers, et al. v. Eli Merck & Co., et al.*, Slip Op. at p. 2 (C.D. Cal. March 29, 2006), Case 2:06-cv-01466-PA-PJW Document 10 Filed 03/29/2006. The general rule under California law is that **both a manufacturer and a distributor can be strictly liable for injuries caused by a defective product**. *Bostick v. Flex Equipment Co.*, 147 Cal.App.4th 80, 88, 54 Cal.Rptr.3d 28 (2007); *Anderson v. Owens-Corning Fiberglass Corp.*, 53 Cal.3d 987, 994, 281 Cal.Rptr. 528, 810 P.2d 549 (1991); see also *Daly v. General Motors Corp.*, 20 Cal.3d 725, 739, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978); *Vandermark v. Ford Motor Co.*, 61 Cal.2d 256, 262-63, 37 Cal.Rptr. 896, 391 P.2d 168 (1964). Accordingly, Merck cannot satisfy its heavy burden of proving that there is no possibility that Plaintiffs will prevail on the merits, and this case should be remanded.

That McKesson may be, in some of its functions, a distributor does not necessarily alleviate it of responsibility. Not only is the weight of authority on the side of finding distributor liability, as noted above, the cases Merck cites are three slip opinions devoid of in-depth analysis on the point and *Aronis v. Merck & Co., Inc*. 2005 WL

---

[1] Some recent Merck cases involving McKesson have denied remand, but without prejudice, to allow the MDL Court to decide. *See, e.g.*, *Bernstine v. Merck & Co., Inc.*, (NO. S-07-0034 WBS KJM, S-07-0051 WBS KJM, S-07-0073 WBS KJM), 2007 WL 1217589 (E.D.Cal. Apr 24, 2007) (remand denied *without prejudice* to refilling to allow the MDL Panel or Court to resolve the issue); *Hardin v. Merck & Co., Inc.*, (NO. C 07 0070 SBA), 2007 WL 1056790 (N.D.Cal. Apr 05, 2007) (again, "prejudice to being reurged before the MDL court.").

5518485, *1 (E.D.Cal. 2006), itself weak on analysis.  It says only that *merely* alleging that a defendant is a distributor is not enough.

**Federal Pre-Emption is Similarly Irrelevant on Remand Motion**

Merck makes the peculiar argument that McKesson is bound by the FDA-approved label so that any failure-to-warn claim presumes a duty to violate federal law – and yet claims this is not a pre-emption argument.  Of course it is.  To argue that the FDA mandated warning is the floor and ceiling of permissible warnings is a pure pre-emption argument.

As a general matter, Merck cannot use its affirmative defense of federal preemption as a basis for removal. "[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987); *see also Ritchey,* 139 F.3d at 1319 (stating "[e]ven when the area involved is one where complete preemption is the norm, if the complaint relies on claims outside of the preempted area and does not present a federal claim on its face, the defendant must raise its preemption defense in state court").

In addition, courts have overwhelmingly rejected the notion that state law failure to warn claims are preempted by federal law. *See, e.g., Medtronic, Inc. v. Lohr,* 518 U.S. 470, 497-502 (1996) (plur. opn. of Stevens, J.) (holding negligence and strict liability claims based on failure to warn theory not preempted by federal regulations); *Brannan v. United Student Aid Funds, Inc.,* 94 F.3d 1260, 1265 (9th Cir. 1996) (citing *Medtronic* with approval); *Carlin v. Superior Court*, 13 Cal.4th 1104, 1113 (1996) (denying FDA

preemption of California failure to warn claims because state law failure to warn claims not inconsistent with federal policy); *Motus v. Pfizer, Inc.,* 127 F.Supp.2d 1085, 1091-1101 (C.D. Cal. 2000) (denying FDA preemption because federal regulations do not bar claims for strict liability under state law). Though pre-emption is lately hotly litigated as a result of a pre-amble inserted by the FDA into the Federal Register without public comment, courts have overwhelmingly rejected claims of pre-emption. See e.g. *In re Zyprexa Products Liability Litigation,* 489 F.Supp.2d 230, 271 (E.D.N.Y. 2007), *Sarli v. Mylan Bertek Pharmaceuticals, Inc.,* 2007 WL 2111577, *3 (M.D.N.C. 2007) and cases cited in each. Based on the foregoing, Merck cannot demonstrate that Plaintiffs will be unable to prevail on their claims against McKesson based on the affirmative defense of federal preemption.

### MERCK'S REMOVAL BEFORE SERVICE DOES NOT CREATE FEDERAL JURISDICTION WHERE THERE WAS NONE

It has been the law for decades that where a *resident defendant* is alleged to be jointly liable, in that case "the fact that the resident defendant has not been served with process does not justify removal by the non-resident defendant." *Pullman Co. v. Jenkins*, 305 U.S. 534, 541, 59 S.Ct. 347, 350 (U.S. 1939). Compare *Cucci v. Edwards*, 510 F.Supp.2d 479, 484 (C.D.Cal. 2007), explaining that in *Pullman*, "the Supreme Court stated that a nondiverse defendant who has not been served defeats removal jurisdiction because complete diversity does not exist." Citation omitted; and see *Republic Western Ins. Co. v. Int'l Ins. Co.*, 765 F.Supp. 628, 629 (N.D.Cal.1991). "However, *Pullman* is irrelevant where, as here, there is complete diversity between Plaintiff and each of the Defendants." *Cucci, id.* According to *Cucci* "*Pullman* stands for the proposition that the presence of a nondiverse, unserved defendant will destroy removability unless that party

is dismissed from the action." *Id.* Recent cases, including those cited by Merck, tend to deal with whether removal before any service at all is permitted, but the *Pullman* holding, that a removing defendant cannot ignore an unserved nondiverse defendant, remains the rule, despite changes in the statute. "*Pullman* grounded its decision on the requirement … that a defendant seeking removal based on diversity of citizenship must show that it had a separable controversy which is wholly between citizens of different states." *Pecherski v. General Motors Corp.*, 636 F.2d 1156, 1160 (8th Cir. 1981), citing *Pullman* and *Morris, Inc. v. Vitek*, 412 F.2d 1174, 1176 n.1 (9th Cir. 1969) (rejecting the view that *Pullman* turned on a distinction between unserved nonresident and unserved resident defendants). As *Pecherski* explained, 28 U.S.C. §§ 1441(a) and 1332 [and 1446] now embody that requirement.

*Waldon v. Novartis Pharmaceuticals Corp.*, No. C07-0 1988 MJJ, 2007 WL 1747128 (N.D.Cal. 2007), relied upon by Merck, gets it wrong in concluding that the court may ignore all unserved defendants on removal. The Court suggests that the alternative is to do violence to the language of the statute by requiring defendants to wait until the Plaintiff serves everybody, if ever. But this is wrong. As the Supreme Court held, "It is always open to the non-resident defendant to show that the resident defendant has not been joined in good faith and for that reason should not be considered in determining the right to remove." *Pullman Co.,* 305 U.S. at 541, 59 S.Ct. at 350. The defendant is put at no disadvantage by doing exactly what Merck has done: file notice of removal and contend that the yet-to-be-served resident defendant is a sham. The opposite rule that Merck would have the Court adopt leads to a bizarre and unacceptable result. In a case where a non-resident is watching the filing, as Merck appears to have done, it can

pre-empt a resident's choice of local forum (since all served defendants must agree) by removing before the resident is ever served, depriving the resident of ability to bring a cross claim in his local court. The statute no where says that the citizenship of unserved defendants is ignored, though it does exclude consideration of "fictitious names" defendants. 28 U.S.C. § 1441(a). Clearly Congress could have, if it so intended, added "or unserved" to the last sentence of subsection (a). But it did not. What Congress did, however, is permit the district court to allow joinder of new, jurisdiction-destroying defendants *even after removal*. 28 U.S.C. § 1447(e). It seems clear then that Congress did not mean to create a new right of federal jurisdiction in derogation of state residents' rights to be sued where they live. Section 1441 (b) should be understood then as affecting the *timing* of removal (as soon as all the served, diverse defendants agree), not of establishing federal jurisdiction where it otherwise would not exist. *Pullman* is still the law.

Here nobody doubts that McKesson was served, answered and is a California resident and is before this Court. The import of section 1441(b) here is only that Merck's failure to include McKesson in a notice of removal is not a procedural bar to removal. That does not limit the jurisdictional effect of McKesson's California status on motion to remand. As courts of limited jurisdiction, the federal court cannot create jurisdiction. Nor can the parties themselves by agreement. Section 1441 does not pretend to establish jurisdiction. Rather it establishes rights to remove, pursuant to other provisions that do establish jurisdiction. Subsection (a) makes this clear: "any civil action brought in state court of which the courts **of the United States have original jurisdiction**, may be removed …." Emphasis added. Removal is a right only where jurisdiction otherwise

exists.  Subsection (b) tells us *when* the case can be removed: if a federal question, without regard to residence of parties; if diversity exists, "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  It does not expand *jurisdiction*, but allows *removal* if the domestic defendant has not been served.  It remains the duty of the federal court, on remand, to determine that it has jurisdiction.  See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94, 118 S.Ct. 1003, 1012 (1998);

### OUT-OF-STATE PLAINTIFFS MAY SUE IN STATE COURT

Lastly Merck contends that it is entitled to removal because not all the plaintiffs are from California.  But this can have no jurisdictional import at all.  An out-of-state plaintiff is certainly not required to sue a resident (McKesson in this case) in federal court.  In fact should an out-of-state plaintiff elect to sue only domestic defendants in what is presumed to be the resident's home court, the defendants cannot remove at all, diversity or not.  For, section 1441(b) limits right of removal in diversity cases only to cases where none of the defendants, properly joined and served, is a citizen.[2]  The presence of out-of-state Plaintiffs has no effect on the jurisdiction of this court at all.

### CONCLUSION

As demonstrated here and previously, Merck cannot meet its heavy burden of proving there is no possibility of Plaintiffs establishing a cause of action against McKesson in a California state court.  The timing of Removal does not create federal jurisdiction.  And that there are out-of-state Plaintiffs has no effect on either state or federal jurisdiction.  Accordingly, Plaintiffs respectfully request that this Court remand

---

[2] This does not, of course foreclose the right of Merck, a nonresident, to remove and argue that the domestic defendant is a sham.

this case to state court. Plaintiffs further request the Court grant Plaintiffs all other relief in law or equity as the Court deems just and right.

DATED: November 29, 2007

>Respectfully submitted,

>By:    /s/William B. Curtis
>William B. Curtis, Esq.,
>Texas State Bar No. 00783918
>wcurtis@mcwlawfirm.com
>Alexander V. Boone, Esq.
>Texas State Bar No. 00795259
>aboone@mcwlawfirm.com
>**MILLER CURTIS & WEISBROD, L.L.P.**
>11551 Forest Central Dr., Suite 300
>Dallas, TX 75243
>Tel: (214) 987-0005
>Fax: (214) 739-4732

**CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and additionally sent notification to counsel as follows:

| | |
|---|---|
| Anthony G. Brazil<br>Morris, Polich & Purdy, LLP<br>1055 West Seventh Street<br>24th Floor<br>Los Angeles, CA 90017-2503 | Bruce Mayfield<br>Feinberg, Grant, Mayfield, Kaneda & Litt<br>2 San Joaquin Plaza, Suite 180<br>Newport Beach, CA 92660 |
| Douglas C. Emhoff<br>Jeffrey M. Tanzer<br>Venable, LLP<br>2049 Century Park East<br>21st Floor<br>Los Angeles, CA 90067 | Christopher A. Seeger<br>Seeger Weiss<br>One William Street, 10th Floor<br>New York, NY 10004-2502 |
| Russel H. Beatie<br>Beatie & Osborn, LLP<br>34th Floor<br>521 5th Avenue<br>New York, NY 10175 | Terry O. Tottenham<br>Fulbright & Jaworski, LLP<br>600 Congress Avenue, Suite 2400<br>Austin, TX 78701-2011 |
| Katharine R. Latimer<br>Spriggs & Hollingsworth<br>1350 I Street, NW<br>9th Floor<br>Washington, DC 20005 | Christina L. Gaarder<br>Venable, LLP<br>Two Hopkins Plaza, Suite 1800<br>Baltimore, MD 21201-2978 |
| Timothy M. O'Brien<br>Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A.<br>316 South Baylen Street, Suite 600<br>Pensacola, FL 32502 | Vance Andrus<br>Andrus, Boudreaux, Lemoine & Tonore<br>1775 Sherman Street<br>Denver, CO 80203 |

/s/ William B. Curtis
**WILLIAM B. CURTIS**